# Mississippi Electronic Courts
## Eighth Chancery Court District (Harrison Chancery Court - Gulfport)
### CIVIL DOCKET FOR CASE #: 24CH1:25-cv-00687-MA

PAUL B. CALDARERA v. PHH MORTGAGE SERVICES et al

Assigned to: Margaret Alfonso

**Upcoming Settings:**
Hearing: 05/22/2025 - 09:00 AM - Gulfport Chancery Courtroom 2

Date Filed: 04/07/2025
Current Days Pending: 45
Total Case Age: 45
Jury Demand: None
Nature of Suit: Injunction or Restraining Order (56)

---

**Plaintiff**

**PAUL B. CALDARERA**
105 SOUTH SEASHORE AVENUE
LONG BEACH, MS 39560

represented by **James B Wright, Jr**
Mississippi Center for Legal Services Corp
520 E.Pass Rd., Suite J
GULFPORT, MS 39507
228-896-9148
Fax: 228-896-7970
Email: jwright@mslegalservices.org
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AS TRUSTEE FOR MORTGAGE ASSETS MANAGEMENT SERIES 1 TRUST**
240 GREENWICH STREET
NEW YORK, NY 10286

represented by **John T. Rouse**
McGlinchey Stafford
1020 Highland Colony Parkway
Suite 702
RIDGELAND, MS 39157
769-524-2329
Fax: 601-608-7871
Email: jrouse@mcglinchey.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**PHH MORTGAGE CORPORATION C/O CORPORATION SERVICE COMPANY**
109 EXECUTIVE DRIVE, SUITE 3
MADISON, MS 39110

| Date Filed | # | Docket Text |
|------------|---|-------------|

| | | |
|---|---|---|
| 04/07/2025 | 1 | PAUPER'S AFFIDAVIT by PAUL B. CALDARERA. (KH) (Entered: 04/07/2025) |
| 04/07/2025 | 3 | Civil Cover Sheet. (KH) (Entered: 04/07/2025) |
| 04/07/2025 | 4 | COMPLAINT FOR DECLARATORY JUDGMENT, TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION, filed by PAUL B. CALDARERA. (KH) (Entered: 04/07/2025) |
| 04/07/2025 | 5 | ATTORNEY'S AFFIDAVIT by James B Wright, Jr. (KH) (Entered: 04/07/2025) |
| 04/07/2025 | | Set/Reset Hearings: Return on TRO set for 4/17/2025 09:00 AM in Gulfport Chancery Courtroom 2 before Margaret Alfonso. (Danzey, Joy) (Entered: 04/07/2025) |
| 04/07/2025 | 6 | TEMPORARY RESTRAINING ORDER. COPY GIVEN. Signed by Judge Margaret Alfonso on 4/7/2025. (KH) (Entered: 04/07/2025) |
| 04/07/2025 | 7 | CASH BOND in the amount of $250.00. Posted by PAUL B. CALDARERA. Check Number 3249. (KH) (Entered: 04/07/2025) |
| 04/08/2025 | 8 | SUMMONS Issued for service upon BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AS TRUSTEE FOR MORTGAGE ASSETS MANAGEMENT SERIES 1 TRUST. (LS) (Entered: 04/08/2025) |
| 04/08/2025 | 9 | SUMMONS Issued for service upon PHH MORTGAGE SERVICES. (LS) (Entered: 04/08/2025) |
| 04/08/2025 | 10 | Rule 81 SUMMONS Issued for service upon BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AS TRUSTEE FOR MORTGAGE ASSETS MANAGEMENT SERIES 1 TRUST. (LS) (Entered: 04/08/2025) |
| 04/08/2025 | 11 | Rule 81 SUMMONS Issued for service upon PHH MORTGAGE SERVICES. (LS) (Entered: 04/08/2025) |
| 04/15/2025 | | Set/Reset Hearings: Return on TRO set for 5/22/2025 09:00 AM in Gulfport Chancery Courtroom 2 before Margaret Alfonso. (Danzey, Joy) (Entered: 04/15/2025) |
| 04/17/2025 | 13 | AGREED ORDER RESETTING CASE. COPIES MAILED. Signed by Judge Margaret Alfonso on 4/17/25. (Vancleef, Jenna) (Entered: 04/17/2025) |
| 04/22/2025 | 14 | Rule 81 SUMMONS Returned Executed by PAUL B. CALDARERA. *Re:* ** 11 Rule 81 SUMMONS Issued for service upon PHH MORTGAGE SERVICES. (LS)** PHH MORTGAGE SERVICES served on 4/16/2025. Service type: Certified Mail (Wright, James) (Entered: 04/22/2025) |
| 04/22/2025 | 15 | SUMMONS Returned Executed by PAUL B. CALDARERA. *Re:* ** 9 SUMMONS Issued for service upon PHH MORTGAGE SERVICES. (LS)** Service type: Certified Mail (Wright, James) (Entered: 04/22/2025) |
| 05/13/2025 | 16 | Rule 81 SUMMONS Issued for service upon BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AS TRUSTEE FOR MORTGAGE |

| | | |
|---|---|---|
| | | ASSETS MANAGEMENT SERIES 1 TRUST. (LS) (Entered: 05/13/2025) |
| 05/13/2025 | 17 | SUMMONS Issued for service upon BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AS TRUSTEE FOR MORTGAGE ASSETS MANAGEMENT SERIES 1 TRUST. (LS) (Entered: 05/13/2025) |
| 05/13/2025 | 18 | Rule 81 SUMMONS Issued for service upon PHH MORTGAGE CORPORATION C/O CORPORATION SERVICE COMPANY. (LS) (Entered: 05/13/2025) |
| 05/13/2025 | 19 | SUMMONS Issued for service upon PHH MORTGAGE CORPORATION C/O CORPORATION SERVICE COMPANY. (LS) (Entered: 05/13/2025) |
| 05/13/2025 | 20 | AMENDED COMPLAINT against BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AS TRUSTEE FOR MORTGAGE ASSETS MANAGEMENT SERIES 1 TRUST, PHH MORTGAGE CORPORATION C/O CORPORATION SERVICE COMPANY, filed by PAUL B. CALDARERA. (Wright, James) (Entered: 05/13/2025) |
| 05/21/2025 | 21 | NOTICE of Notice of Removal by BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AS TRUSTEE FOR MORTGAGE ASSETS MANAGEMENT SERIES 1 TRUST (Attachments: # 1 Exhibit A - Notice of Removal,) (Rouse, John) (Entered: 05/21/2025) |

**IN THE CHANCERY COURT OF HARRISON COUNTY, MISSISSIPPI**
**FIRST JUDICIAL DISTRICT**

**FILED**

APR - 7 2025

ANGELA THRASH
CHANCERY CLERK

BY_____D.C.

CIVIL ACTION NO.: 25-687(3)

**PAUL B. CALDARERA,**
    **Plaintiff,**

**v.**

**PHH MORTGAGE SERVICES and**
**BANK OF NEW YORK MELLON**
**TRUST COMPANY, N.A., AS TRUSTEE**
**FOR MORTGAGE ASSETS**
**MANAGEMENT SERIES I TRUST,**
    **Defendants.**

<u>**PAUPER'S AFFIDAVIT**</u>

**STATE OF MISSISSIPPI**
**COUNTY OF HARRISON**

    **PERSONALLY APPEARED BEFORE ME**, the undersigned authority, a Notary Public in and for and for the aforesaid jurisdiction, PAUL CALDARERA who being first duly sworn by me, deposes and says that he is a citizen of the State of Mississippi and, because of his poverty, he is not able to pay the costs or give security for the same in the Complaint filed herein, which he is about to commence, and that, to the best of his belief, he is entitled to the redress which he seeks by such suit.

_Paul B. Caldarera_
**PAUL CALDARERA**

    **SWORN TO AND SUBSCRIBED BEFORE ME**, on this the 7 day of April, 2025.

_____
**NOTARY PUBLIC**

**MY COMMISSION EXPIRES:**

_____

JAMES B. WRIGHT, Jr.
Commission Expires
Oct. 29, 2026
STATE OF MISSISSIPPI
NOTARY PUBLIC
STONE COUNTY

# COVER SHEET
## Civil Case Filing Form
*(To be completed by Attorney/Party Prior to Filing of Pleading)*

**Court Identification Docket #**

| County # | Judicial District | Court ID (CH, CI, CO) | Case Year | Docket Number |
|---|---|---|---|---|
| 2 4 | 1 | C H | 2 0 2 5 | 0 6 8 7 (3) |

Local Docket ID

**This area to be completed by clerk**

Month `0 4` Date `0 7` Year `2 5`

Mississippi Supreme Court — Form AOC/01
Administrative Office of Courts (Rev 2009)

Case Number if filed prior to 1/1/94

In the _____ Court of **HARRISON** County — **FIRST** Judicial District

## Origin of Suit (Place an "X" in one box only)
- [X] Initial Filing
- [ ] Reinstated
- [ ] Remanded
- [ ] Reopened
- [ ] Foreign Judgment Enrolled
- [ ] Joining Suit/Action
- [ ] Transfer from Other court
- [ ] Appeal
- [ ] Other

## Plaintiff - Party(ies) Initially Bringing Suit Should Be Entered First - Enter Additional Plaintiffs on Separate Form

**Individual** Caldarera (Last Name)    Paul (First Name)    Maiden Name, if applicable    B (M.I.)    Jr/Sr/III/IV

____ Check ( x ) if Individual Plaintiff is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style: Estate of _____

____ Check ( x ) if Individual Plaintiff is acting in capacity as Business Owner/Operator (d/b/a) or State Agency, and enter entity D/B/A or Agency _____

**Business** _____
Enter legal name of business, corporation, partnership, agency - If Corporation, indicate the state where incorporated
____ Check ( x ) if Business Plaintiff is filing suit in the name of an entity other than the above, and enter below:
D/B/A _____

**Address of Plaintiff** 105 South Seashore Ave, Long Beach, MS 39560

**Attorney (Name & Address)** James B. Wright 520 East Pass Rd., Suite J, Gulfport, MS 39507    MS Bar No. 8791

____ Check ( x ) if Individual Filing Initial Pleading is NOT an attorney
Signature of Individual Filing: _____

## Defendant - Name of Defendant - Enter Additional Defendants on Separate Form

**Individual** (Last Name)    (First Name)    Maiden Name, if applicable    M.I.    Jr/Sr/III/IV

____ Check ( x ) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style: Estate of _____

____ Check ( x ) if Individual Defendant is acting in capacity as Business Owner/Operator (d/b/a) or State Agency, and enter entity: D/B/A or Agency _____

**Business** PHH MORTGAGE SERVICES and  BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AS TRUSTEE FOR MORTGA
Enter legal name of business, corporation, partnership, agency - If Corporation, indicate the state where incorporated
____ Check ( x ) if Business Defendant is acting in the name of an entity other than the above, and enter below:
D/B/A _____

**Attorney (Name & Address) - If Known** _____    MS Bar No. _____

**Damages Sought:** Compensatory $ _____    Punitive $ _____    ____ Check ( x ) if child support is contemplated as an issue in this suit.*
*If checked, please submit completed Child Support Information Sheet with this Cover Sheet

## Nature of Suit (Place an "X" in one box only)

### Domestic Relations
- [ ] Child Custody/Visitation
- [ ] Child Support
- [ ] Contempt
- [ ] Divorce:Fault
- [ ] Divorce: Irreconcilable Diff.
- [ ] Domestic Abuse
- [ ] Emancipation
- [ ] Modification
- [ ] Paternity
- [ ] Property Division
- [ ] Separate Maintenance
- [ ] Termination of Parental Rights
- [ ] UIFSA (eff 7/1/97; formerly URESA)
- [ ] Other _____

### Appeals
- [ ] Administrative Agency
- [ ] County Court
- [ ] Hardship Petition (Driver License)
- [ ] Justice Court
- [ ] MS Dept Employment Security
- [ ] Worker's Compensation
- [ ] Other _____

### Business/Commercial
- [ ] Accounting (Business)
- [ ] Business Dissolution
- [ ] Debt Collection
- [ ] Employment
- [ ] Foreign Judgment
- [ ] Garnishment
- [ ] Replevin
- [ ] Other _____

### Probate
- [ ] Accounting (Probate)
- [ ] Birth Certificate Correction
- [ ] Commitment
- [ ] Conservatorship
- [ ] Guardianship
- [ ] Heirship
- [ ] Intestate Estate
- [ ] Minor's Settlement
- [ ] Muniment of Title
- [ ] Name Change
- [ ] Testate Estate
- [ ] Will Contest
- [ ] Other _____

### Children/Minors - Non-Domestic
- [ ] Adoption - Contested
- [ ] Adoption - Uncontested
- [ ] Consent to Abortion Minor
- [ ] Removal of Minority
- [ ] Other _____

### Civil Rights
- [ ] Elections
- [ ] Expungement
- [ ] Habeas Corpus
- [ ] Post Conviction Relief/Prisoner
- [ ] Other _____

### Contract
- [ ] Breach of Contract
- [ ] Installment Contract
- [ ] Insurance
- [ ] Specific Performance
- [ ] Other _____

### Statutes/Rules
- [ ] Bond Validation
- [ ] Civil Forfeiture
- [ ] Declaratory Judgment
- [X] Injunction or Restraining Order

### Real Property
- [ ] Adverse Possession
- [ ] Ejectment
- [ ] Eminent Domain
- [ ] Eviction
- [ ] Judicial Foreclosure
- [ ] Lien Assertion
- [ ] Partition
- [ ] Tax Sale: Confirm/Cancel
- [ ] Title Boundary or Easement
- [ ] Other _____

### Torts
- [ ] Bad Faith
- [ ] Fraud
- [ ] Loss of Consortium
- [ ] Malpractice - Legal
- [ ] Malpractice - Medical
- [ ] Mass Tort
- [ ] Negligence - General
- [ ] Negligence - Motor Vehicle
- [ ] Product Liability
- [ ] Subrogation
- [ ] Wrongful Death
- [ ] Other _____

IN THE CHANCERY COURT OF HARRISON COUNTY, MISSISSIPPI
FIRST JUDICIAL DISTRICT    FILED

PAUL B. CALDARERA,
        Plaintiff,

v.

PHH MORTGAGE SERVICES and
BANK OF NEW YORK MELLON TRUST
COMPANY, N.A., AS TRUSTEE FOR
MORTGAGE ASSETS MANAGEMENT SERIES I
TRUST,
        Defendants.

APR - 7 2025

ANGELA THRASH
CHANCERY CLERK
BY_____D.C.

CIVIL ACTION NO.: 25-687(3)

## COMPLAINT FOR DECLARATORY JUDGMENT, TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION

**COMES NOW**, the Plaintiff, Paul B. Caldarera, by and through undersigned counsel, and files this Complaint for Declaratory Judgment, Temporary Restraining Order (TRO), Preliminary Injunction, and Permanent Injunction against PHH Mortgage Services and Bank of New York Mellon Trust Company, N.A., as Trustee for Mortgage Assets Management Series I Trust (collectively, "Defendants"), to prevent the wrongful foreclosure of Plaintiff's property and seek clarification of the rights and obligations under the mortgage agreement

### I. PARTIES AND JURISDICTION

1. Plaintiff, PAUL B. CALDARERA, is an adult resident citizen of Harrison County, Mississippi, residing at 105 South Seashore Avenue, Long Beach, Mississippi 39560.

2. Defendant, PHH MORTGAGE SERVICES, is a mortgage servicing company authorized to do business in the State of Mississippi and may be served with process C T CORPORATION SYSTEM, 631 Lakeland East Drive, Flowood, MS 39232.

3. Defendant, BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AS
TRUSTEE FOR MORTGAGE ASSETS MANAGEMENT SERIES I TRUST, is a
financial institution and may be served with process at 240 Greenwich Street, New York,
New York 10286.

4. This Court has jurisdiction pursuant to Miss. Code Ann. § 9-5-81 and venue is proper in
Harrison County, Mississippi, where the subject property is located.

## II. FACTS

5. On October 26, 2011, Plaintiff obtained a reverse mortgage from Generation Mortgage
Company, secured by a Deed of Trust on his property located at 105 South Seashore
Avenue, Long Beach, Mississippi 39560. The Reverse Mortgage Loan Agreement and the
Deed of Trust are attached as Exhibits "A" and "B" respectively.

6. Paragraph 3 of the Deed of Trust is entitled "Fire, Flood and Other Hazard Insurance." It
requires the borrower to insurance the property against "hazards, casualties, and
contingencies, including fire," as do most all similar deeds of trust. However, absent from
that paragraph is any requirement that the borrower maintain wind damage insurance,
notwithstanding that wind damage insurance was available at the time of the origination
of this mortgage. In fact, nowhere in the document is there a single mention of the word
"wind," nor is there any express provision that would require the borrow to secure wind
damage insurance. Since wind damage is a significant and material issue to be considered

for property located on the Gulf Coast, it becomes evident that the parties did not intend

to require such coverage.

7. Section 15 of the Deed of Trust provides in part:

> *The covenants and agreements of this Security Instrument shall bind and
> benefit the successors and assigns of Lender.*

8. At the time of loan origination, Plaintiff was not required to obtain wind damage

insurance, nor was he asked to secure such insurance coverage. Frankly, he most likely

would not have entered into the reverse mortgage agreement in the first place, had such a

requirement existed due to financial constraints, being his inability to afford such

insurance coverage from the very beginning of the reverse mortgage.

9. Generation Mortgage Company was certainly aware of this situation since it required

financial statements from the borrow as a condition to making the loan.

10. On September 21, 2021, the Deed of Trust was assigned From Generation Mortgage

Company to Mortgage Assets Management, LLC. Exhibit "C."

11. At some point in time subsequent to the assignment of the Deed of Trust, the servicing

responsibility was transferred to PHH MORTGAGE SERVICES.

12. On June 29, 2023, Mr. Calderara received a letter dated June 20, 2023 from PHH's

insurance department, advising that his wind insurance had "expired," that it is required,

and that PHH will purchase force-placed wind insurance coverage if Mr. Calderara did

not himself secure such coverage. PHH also demanded that the coverage should be effect

as of June 19, 2022.

13. On July 29, 2023, Mr. Calderara received a letter dated July 20, 2023 from PHH advising

again that the wind damage insurance had "expired," and that it intends to purchase such

coverage for $1,213.00. Mr. Calderara called PHH and objected to the proposed action by PHH.

14. In response to Mr. Calderara's objection, PHH sent a letter dated August 17, 2023 advising that it had completed its investigation of the wind damage insurance issue, stating that wind insurance coverage is required on all loans.

15. On April 16, 2024, Plaintiff received an unsigned letter from PHH, dated April 11, 2024, regarding the wind insurance requirement. In this letter, PHH stated that the determination of insurance was a state requirement, and that Plaintiff must obtain the appropriate coverage as mandated by the state. This claim is unsupported by both the original deed of trust and the mortgage agreement, as no such provision explicitly requires wind insurance. That is simply false and a fraudulent misrepresentation of the insurance laws of Mississippi designed to force Mr. Calderara to purchase insurance that he was not required to purchase. Exhibit "D."

16. PHH further implied that the wind damage insurance may be required by the Secretary of Housing and Urban Development. That is likewise untrue and a fraudulent misrepresentation to Mr. Calderara, asserted to induce him to bear a risk of exposure, and to incur a substantial expense that he simply cannot afford to incur and should not be forced to incur.

17. On May 20, 2024, the Deed of Trust was subsequently assigned to BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AS TRUSTEE FOR MORTGAGE ASSETS MANAGEMENT SERIES I TRUST. See Exhibit "E."

18. On July 22, 2024, Mr. Calderara received a *Notice of Acceleration and Foreclosure* dated July 18, 2024 from Rubin Lublin, LLC, attorneys for Generation Mortgage Company. The letter advised that a foreclosure sale had been set for August 28, 2024.

19. After being engaged as Mr. Calderara's attorneys, our Corporation sent on August 20, 2024, a "Cease and Desist Demand" and a separate RESPA "notice of error/request for information" to PHH Mortgage and Rubin Lublin, LLC, attached as Exhibits "F" and "G," respectively.

20. On August 23, 2024, Michael Baringer, Esq., Senior Foreclosure Attorney with Rubin Lublin LLC, attorneys for defendants, sent an email to our Corporation advising that the foreclosure sale is cancelled. Exhibit "H."

21. On March 4, 2025, our Corporation received by certified mail from Rubin Lublin, LLC, dated February 28, 2025, a second *Notice of Acceleration and Foreclosure*, with respect to Mr. Calderara' mortgage. Exhibit "I."

22. On March 5, 2025, our Corporation sent, via certified mail and email, an second Qualified Written Request, including a Notice of Error and Request for Information with respect to the force-placed wind damage insurance purchased by PHH. Exhibit "J." PHH sent a confirmation of receipt of the request via email, attached as Exhibit "K."

23. Plaintiff contends that the Defendants' actions constitute a breach of the mortgage loan agreement, violations of the Real Estate Settlement Procedures Act (RESPA) and Mississippi Code Section 81-18-55, that such actions are unconscionable, and contrary to numerous tenets of Mississippi law, including the duty of good faith and fair dealing.

## III. CAUSES OF ACTION

### COUNT ONE: DECLARATORY JUDGMENT

11. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

12. Plaintiff seeks a declaratory judgment that Defendants have no right to require wind insurance under the original mortgage agreement, that even if there might be implied such a requirement, such requirement was knowingly and voluntarily waived, and that Defendants' attempt to impose such a requirement is invalid and contrary to law.

### COUNT TWO: TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF

13. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

14. Plaintiff will suffer immediate and irreparable harm if the foreclosure scheduled for April 9, 2025, is allowed to proceed.

15. Plaintiff has a substantial likelihood of success on the merits, as Defendants are attempting to impose a new obligation that was never part of the original agreement or has been was knowingly and voluntarily waived.

16. Plaintiff has no adequate remedy at law, and the balance of equities favors preventing foreclosure pending resolution of this matter.

### COUNT THREE: BREACH OF CONTRACT AND UNCONSCIONABILITY

17. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

18. The Defendants' actions in requiring wind insurance constitute a material and unilateral modification of the original reverse mortgage agreement. Such modification was never agreed upon by Plaintiff, and enforcing this term after more than a decade of non-enforcement is not only unconscionable but also represents a violation of Plaintiff's reasonable expectations under the original contract.

19. Plaintiff seeks a permanent injunction to prohibit defendants from requiring wind damage insurance on the property.

20. Plaintiff seeks damages, including actual damages, attorneys' fees, and statutory penalties as permitted under Mississippi law.

## COUNT FOUR: VIOLATION OF MISSISSIPPI CODE § 81-18-55

20. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

21. Defendants have imposed fees and costs that are not authorized by the original contract, in violation of the Mississippi S.A.F.E. Act, specifically, Mississippi Code § 81-18-55.

22. Plaintiff seeks damages, including actual damages, attorneys' fees, and statutory penalties as permitted under Mississippi law.

## COUNT FIVE: VIOLATION OF RESPA (12 U.S.C. § 2605, 12 C.F.R. § 1024.37)

23. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

24. Defendants improperly imposed force-placed wind insurance without compliance with RESPA's notice requirements, are contrary to state contract law and are in violation of RESPA.

25. Defendants' failure to properly respond to Plaintiff's Notice of Error and Request for Information violated RESPA, causing Plaintiff to incur significant harm, including unnecessary costs and delay. Defendants' failure to address the error compounded Plaintiff's financial and emotional distress, and Plaintiff seeks statutory damages as well as actual, consequential, and compensatory damages for these violations.

26. Plaintiff seeks statutory damages pursuant to RESPA, actual, consequential and compensatory damages, attorney's fees, and costs, and granting any other relief this Court deems just and proper.

## COUNT SIX: VIOLATION OF TILA (15 U.S.C. § 1639g)

26. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

27. Defendants included unauthorized charges for wind insurance in Plaintiff's payoff statement, violating TILA's disclosure requirements.

28. Plaintiff seeks statutory damages pursuant to TILA, actual, consequential and compensatory damages, attorney's fees, and costs, and granting any other relief this Court deems just and proper.

## COUNT SEVEN: VIOLATION OF FDCPA (15 U.S.C. § 1692e, 1692f)

28. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

29. Defendants made false representations regarding the necessity of wind insurance, since enforcement of such provisions have been waived, and engaged in unfair debt collection practices, in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692e and § 1692.

30. Defendants' actions in sending misleading letters regarding the necessity of wind insurance and their false representation of the contractual obligations under the mortgage agreement constitute violations of the **Fair Debt Collection Practices Act (FDCPA)**, specifically 15 U.S.C. § 1692e and § 1692f, which prohibit false representations and unfair practices in debt collection.

31. Plaintiff seeks statutory damages pursuant to FDCPA, actual, consequential and compensatory damages, attorney's fees, and costs, and granting any other relief this Court deems just and proper.

## COUNT EIGHT: VIOLATION OF UDAAP (12 U.S.C. § 5531)

30. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

31. Defendants engaged in deceptive mortgage servicing practices by misrepresenting Mississippi law and contract terms regarding wind insurance, contrary to 12 U.S.C. § 5531, the Unfair, Deceptive, or Abusive Acts or Practices Act.

32. Plaintiff seeks statutory damages pursuant to UDAAP, actual, consequential and compensatory damages, attorney's fees, and costs, and granting any other relief this Court deems just and proper.

### IV. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court:

A. Issue a Temporary Restraining Order Enjoining Defendants from proceeding with the foreclosure sale of Plaintiff's property pending further order of the Court;

B. Enter a Preliminary and Permanent Injunction prohibiting Defendants from enforcing the wind insurance requirement and foreclosing on Plaintiff's property;

C. Declare that Defendants' actions in imposing wind insurance are unenforceable and a violation of the original mortgage agreement;

D. Award Plaintiff statutory penalties, actual damages, consequential and compensatory damages, attorneys' fees, and costs as permitted under RESPA, TILA, FDCPA, and all other applicable federal and state laws;

E. Grant such other and further relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED**, this ___ day of March 2025.

BY: _____

**James B. Wright – Managing Attorney at Mississippi Center for Legal Services**

9

**James B. Wright, MSB# 8791**
Mississippi Center for Legal Services Corp.
520 East Pass Rd., Suite J
Gulfport, MS 39507
PH: 228-896-9148 Ext. 2559
Fax: 228-896-9345
jwright@mslegalservices.org

**W. David Watkins**
(MSB # 6986)
Foreclosure Defense Staff Attorney
Post Office Box 951
Jackson, MS 39205-0951
(601) 427-3650
wwatkins@mslegalservices.org

**Schedule of Exhibits to Calderara Complaint**

A.  The Reverse Mortgage Loan Agreement

B.  Deed of Trust

C.  Assignment of Deed of Trust from Generation Mortgage to Mortgage Assets Management, LLC

D.  April 11, 2024 letter from PHH to Calderara

E.  May 20, 2024 Assignment of Deed of Trust to Bank of New York Mellon Trust

F.  August 20, 2024 Cease and Desist

G.  August 20, 2024 Qualified Written Request

H.  8/23/24 email from Rubin cancelling sale

I.  3/4/2025 – Notice of Acceleration and Foreclosure

J.  3/5/2025 – second QWR from MCLSC to PHH

K.  3/5/2025 email confirmation from PHH

# Exhibit A

### CLOSED-END FIXED RATE
### HOME EQUITY CONVERSION MORTGAGE LOAN AGREEMENT

FHA Case No.  281-3919575-951
Loan No.         1061101579

THIS AGREEMENT is made this  26TH   day of  OCTOBER, 2011           , among
PAUL B CALDARERA

GENERATION MORTGAGE COMPANY                                                                              ("Borrower"),

                                                                                                                             ("Lender")

and the Secretary of Housing and Urban Development ("Secretary").

### Article 1 - Definitions

1.1.   **Expected Average Mortgage Interest Rate** means the amount indicated on the attached payment plan (Exhibit 1). It is a constant interest rate used to calculate monthly payments to the Borrower throughout the life of the loan.

1.2.   **Loan Advances** means all funds advanced from or charged to Borrower's account under conditions set forth in this Loan Agreement, whether or not actually paid to Borrower. To the extent Borrower prepays any outstanding balance under the Note, such amounts will no longer be available to be advanced under this Loan Agreement.

1.3.   **Loan Documents** means the Note, Second Note, Security Instrument and Second Security Instrument.

1.4.   **Maximum Claim Amount** means the lesser of the appraised value of the property, as determined by the appraisal used in underwriting the loan, or the sales price of the property being purchased for the sole purpose of being the principal residence, or the national mortgage limit for a one family residence under section 305(a)(2) of the Federal Home Loan Mortgage Corporation Act (as adjusted where applicable under section 214 of the National Housing Act) as of the date of loan closing. Closing costs must not be taken into account in determining appraised value.

1.5.   **Note** means the promissory note signed by Borrower together with this Loan Agreement and given to Lender to evidence Borrower's promise to repay, with interest, Loan Advances by Lender or Lender's assignees.

1.6.   **Principal** or **Principal Balance** means the sum of all Loan Advances made as of a particular date, including interest and mortgage insurance premiums.

1.7.   **Principal Limit** means the amount indicated on the attached payment plan (Exhibit 1) when this Loan Agreement is executed, and increases each month for the life of the loan at a rate equal to the sum of the applicable monthly interest rate charge, plus one-twelfth the annual MIP. The Principal Limit is calculated by multiplying the Maximum Claim Amount by a factor supplied by the Secretary, which is based on the age of the youngest Borrower and the Expected Average Mortgage Interest Rate.

1.8.   **Principal Residence** means the dwelling where the Borrower shall maintain his or her permanent place of abode, and typically spends the majority of the calendar year. A person may have only one principal residence at any one time. The Property shall be considered to be the Principal Residence of any Borrower who is temporarily or permanently in a health care institution as long as the Property is the Principal Residence of at least one other Borrower who is not in a health care institution.

1.9.   **Property** means Borrower's property identified in the Security Instrument.

1.10.  **Second Note** means the promissory note signed by Borrower together with this Loan Agreement and given to the Secretary to evidence Borrower's promise to repay, with interest, Loan Advances by the Secretary secured by the Second Security Instrument.

1.11.  **Second Security Instrument** means the mortgage, deed of trust, security deed or other security instrument which is signed by Borrower together with this Loan Agreement and which secures the Second Note.

1.12.  **Security Instrument** means the mortgage, deed of trust, security deed or other security instrument which is signed by Borrower together with this Loan Agreement and which secures the Note.

### Article 2 - Loan Advances

2.1.   **General.** Lender agrees to make Loan Advances under the conditions set forth in this Loan Agreement in consideration of the Note and Security Instrument given by Borrower on the same date as this Loan Agreement.

2.2.   **Initial Advances.**

2.2.1.   Loan Advances shall be used by Lender to pay, or reimburse Borrower for, closing costs listed in the Schedule of Closing Costs (Exhibit 2) attached to and made a part of this Loan Agreement, except that Loan Advances will only be used to pay origination fees in an amount not to exceed the greater of $2,500 or 2% of the maximum claim amount of the mortgage, up to a maximum claim amount of $200,000, plus one percent of any portion of the maximum claim amount this is greater than $200,000, nor shall the Lender charge the Borrower an origination fee in excess of $6,000.

2.2.2.   Loan Advances shall be used by Lender to discharge the liens on the Property listed in the Schedule of Liens/HECM for Purchase Disbursements to Seller (Exhibit 2) attached to and made a part of this Loan Agreement.

1051101579

   2.2.3.   Lender shall pay an initial Loan Advance to Borrower in the amount indicated on the attached payment plan (Exhibit 1).

   2.2.4.   Initial advances required by this Section 2.2. shall be made as soon as such advances are permitted by the applicable provisions of 12 CFR Part 226 (Truth in Lending) governing Borrower's right of rescission, but not before that time.

2.3.   Set Asides.

   2.3.1.   Amounts set aside from the Principal Limit shall be considered Loan Advances to the extent actually disbursed or earned by Lender.

   2.3.2.   Lender shall initially set aside from the Principal Limit the amount indicated on the attached payment plan (Exhibit 1) for repairs to be made in accordance with a Repair Rider attached to and made a part of this Loan Agreement (Exhibit 3).

   2.3.3.   Lender shall initially set aside from the Principal Limit the amount indicated on the attached payment plan (Exhibit 1) to be applied to payments due for first year property charges consisting of taxes, hazard insurance, ground rents and assessments.

   2.3.4.   Lender shall initially set aside from the Principal Limit the amount indicated on the attached payment plan (Exhibit 1) to be applied to payment due for a fixed monthly charge for servicing activities of Lender or its servicer. Such servicing activities are necessary to protect Lender's interest in the Property. A servicing fee set aside, if any, is not available to the Borrower for any purpose, except to pay for loan servicing.

2.4.   Charges and Fees.  Borrower shall pay to Lender reasonable and customary charges and fees as permitted under 24 CFR 206.207(b). Such amounts shall be considered Loan Advances when actually disbursed by Lender.

2.5.   Monthly Payments.

   2.5.1.   Borrower may request Loan Advances as Monthly Payments wherein Loan Advances shall be paid directly to Borrower in equal monthly payments.

   2.5.2.   Monthly payments shall be calculated for either the term payment plan or the tenure payment plan, as requested by Borrower.

   2.5.3.   Monthly payments under the term payment plan are made only during a term chosen by Borrower and shall be calculated so that the sum of (i) or (ii) added to (iii), (iv), (v) and (vi) shall be equal to or less than the Principal Limit at the end of the term:

       (i) Initial Advances under Section 2.2, plus any initial servicing fee set aside under Subsection 2.3.4.; or

       (ii) The Principal Balance at the time of a change in payments under Sections 2.8. and 2.9. plus any remaining servicing fee set aside under Subsection 2.3.4.; and

       (iii) The portion of the Principal Limit set aside as a line of credit under Section 2.7., including any set asides for repairs (Subsection 2.3.2.) and first year property charges (Subsection 2.3.3.); and

       (iv) All monthly payments due through the payment term, including funds withheld for payment of property charges under Section 2.10.; and

       (v) All mortgage insurance premiums, or monthly charges due to the Secretary in lieu of mortgage insurance premiums, which are due through the payment term (Subsection 2.13.); and

       (vi) All interest through the payment term. The Expected Average Mortgage Interest Rate shall be used for this purpose.

   2.5.4.   Monthly payments under the tenure payment plan shall be calculated as in Subsection 2.5.3. as if there were a payment term with the number of months in the term equal to the sum of 100 minus the age of the youngest Borrower multiplied by 12, but payments shall continue until the loan becomes due and payable as provided in the Loan Documents.

   2.5.5.   Monthly payments shall be paid to Borrower on the first business day of a month.

   2.5.6.   If Borrower has requested monthly payments, payments shall be indicated on the attached payment plan (Exhibit 1). The payment plan may be changed by Borrower as provided in Sections 2.8. and 2.9.

2.6.   Line of Credit without Monthly Payments.

   2.6.1.   Borrower may request (i) a single Loan Advance under a line of credit payment plan to be paid in a lump sum disbursement upon settlement of the Loan or (ii) Loan Advances under a line of credit payment plan in amounts and at times determined by Borrower, if the Principal Balance of the loan after the Loan Advance is made is less

1061101579

then or equal to the applicable Principal Limit, excluding any portion of the Principal Limit set aside under Sections 2.3.2. or 2.3.4. The line of credit amount increases at the same rate as the total Principal Limit increases under Section 1.7.

2.6.2.  Line of credit payments shall be paid to Borrower within five business days after Lender has received a written request for payment by Borrower.

2.6.3.  Lender may specify a form for line of credit payment requests.

2.6.4.  Lender shall provide Borrower with a statement of the account every time a line of credit payment is made. The statement shall include the current interest rate, the previous Principal Balance, the amount of the current Loan Advance, the current Principal Balance after the Loan Advance, and the current Principal Limit.

2.7.  Line of Credit with Monthly Payments.

2.7.1.  Borrower may receive monthly payments under either a term or tenure payment plan combined with a line of credit, as indicated on the attached payment plan (Exhibit 1).

2.7.2.  Subsections 2.6.2., 2.6.3. and 2.6.4. apply to a line of credit combined with term or tenure payments.

2.7.3.  If Borrower combines a line of credit with a term or tenure payment plan, the Principal Limit is divided into: (a) an amount for the line of credit payments, including repair and property charge set asides, (b) an amount for monthly payments which shall be calculated under Subsections 2.5.3. or 2.5.4. and (c) an amount for a servicing fee set aside, if required by Lender under Subsection 2.3.4. Amounts designated for line of credit payments and monthly payments increase independently at the same rate as the total Principal Limit increases under Section 1.7. Borrower can request Loan Advances in amounts and at times determined by Borrower, if the requested amount is less than or equal to the difference between (a) the Principal Limit applicable to the line of credit set aside and (b) the portion of the outstanding Principal Balance attributable to draws on the line of credit, including accrued interest and mortgage insurance premium or monthly charge due to the Secretary, but excluding any portion of the Principal Limit set aside under Subsections 2.3.2. and 2.3.4.

2.7.4.  A Borrower receiving monthly payments in combination with a line of credit may prepay the outstanding mortgage balance in accordance with the terms of the Note.

2.8.  Change in Payments Generally.

2.8.1.  Whenever the Principal Balance of the loan is less than the Principal Limit, Borrower may change from any payment plan allowable under this Loan Agreement to another.

2.8.2.  If Borrower requests that monthly payments be made after a change in payment plan, Lender shall recalculate future monthly payments in accordance with Subsections 2.5.3. or 2.5.4.

2.8.3.  Lender may charge a fee not to exceed twenty dollars, whenever payments are recalculated and in any other circumstances in which Borrower is required to sign a form acknowledging a change in payment plan as provided in Subsection 2.8.5.

2.8.4.  Loan Advances under a new payment plan shall be paid to Borrower in the same manner and within the time period required under Sections 2.5., 2.6. or 2.7.

2.8.5.  Changes in the payment plan must be acknowledged by Borrower by signing a form containing the same information as the attached payment plan (Exhibit 1). Lender shall provide a copy of the completed form to Borrower.

2.9.  Change in Payments Due to Initial Repairs.

2.9.1.  If initial repairs after closing, made in accordance with the Repair Rider, are completed without using all of the repair set aside, Lender shall inform Borrower of the completion and the amount then available to the Borrower to be drawn under a line of credit.

2.9.2.  If initial repairs after closing, made in accordance with the Repair Rider, cannot be fully funded from the repair set aside, any additional Loan Advances needed to complete repairs shall be made in the manner provided under Section 2.16.

2.9.3.  If initial repairs are not completed when required by the Repair Rider, Borrower shall not request and Lender shall not make any further payments, except as needed to pay for repairs required by the Repair Rider and mandatory Loan Advances under Section 4.5. In order to complete the required repairs, Loan Advances shall be made first from the repair set aside, and then in the manner provided under Section 2.16.

1061101579

2.10.    Payment of Property Charges.

2.10.1.    Borrower may elect to require Lender to use Loan Advances to pay property charges consisting of taxes, hazard insurance premiums, ground rents and special assessments if indicated on the attached payment plan (Exhibit 1). If Borrower has elected to have Lender pay property charges, Borrower may change this election by notifying Lender and at that time Lender shall pay to Borrower any amounts withheld from the Loan Advances to pay property charges.

2.10.2.    If Borrower has made the election under Subsection 2.10.1. and Borrower is receiving monthly payments, Lender shall withhold amounts from each monthly payment and use the amounts withheld to make timely payments of property charges. The amounts withheld shall be calculated as provided in Subsection 2.10.3. Amounts withheld from monthly payments shall not be treated as Loan Advances and shall not bear interest except to the extent actually disbursed by Lender.

2.10.3.    Lender shall withhold from each monthly payment an amount to pay (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for fire, flood and other hazard insurance required by the Security Instrument. Each monthly withholding for items (a), (b) and (c) shall equal one-twelfth of the annual amounts, as reasonably estimated by Lender. The full annual amount for each item shall be paid by Lender before an item would become delinquent. Lender shall add the amounts for items (a), (b) and (c) to the Principal Balance when paid. If at any time the withholding for item (a), (b), or (c) exceeds the amount of actual property charges, Lender shall pay the excess withholding to Borrower and add it to the Principal Balance. If the total of the withholding for item (a), (b), or (c) is insufficient to pay the item when due, the amount necessary to make up the deficiency on or before the date the item becomes due shall be paid as a Loan Advance in the manner provided under Section 2.16.

2.10.4.    If Borrower has made the election under Subsection 2.10.1 and Borrower is not receiving monthly payments, Lender shall make Loan Advances under the line of credit payment plan as needed to make timely payments of property charges, provided that no such Loan Advance shall exceed the amount permitted by Section 2.6.1.

2.10.5.    If Borrower fails to pay the property charges in a timely manner, and has not elected to have Lender make the payments, Lender shall pay the property charges as a Loan Advance as required under Section 2.16. If a pattern of missed payments occurs, Lender may establish procedures to pay the property charges from Borrower's funds as if Borrower elected to have Lender pay the property charges.

2.10.6.    Lender shall immediately notify any Borrower who has made the election under Subsection 2.10.1, whenever Lender determines that amounts available from monthly payments or line of credit payments will be insufficient to pay property charges.

2.11.    Insurance and Condemnation Proceeds. If insurance or condemnation proceeds are paid to Lender, the Principal Balance shall be reduced by the amount of the proceeds not applied to restoration or repair of the damaged Property and the available loan funds shall be recalculated. At the same time, the Principal Limit also shall be reduced by the amount of the proceeds applied to reduce the Principal Balance.

2.12.    Interest.

2.12.1.    Interest shall be calculated as provided in the Loan Documents.

2.12.2.    Interest shall accrue daily and be added to the Principal Balance as a Loan Advance at the end of each month.

2.13.    Mortgage Insurance Premium (MIP); Monthly Charge.

2.13.1.    Monthly MIP shall be calculated as provided in HUD Mortgagee Letter 2010-34 (Sept. 21, 2010). If the Security Instrument is held by the Secretary or if the Secretary makes Loan Advances secured by the Second Security Instrument, a monthly charge shall be due to the Secretary and shall be calculated in the same manner as MIP.

2.13.2.    The full amount of monthly MIP or monthly charge, including any portion of the MIP provided for by a Lender under 24 C.F.R. 206.109, shall be considered to be a Loan Advance to Borrower on the later of the first day of the month or the day Lender pays the MIP to the Secretary, if any MIP is due to the Secretary. In the event that the Note becomes due and payable or the Note is prepaid in full after the first day of the month, Lender may add the accrued MIP to the Principal Balance or the Secretary may add the accrued monthly charge to the Principal Balance.

2.14.    Manner of Payment. For purposes of this Section "Borrower" shall not include any person who signed this Loan Agreement but who has a Principal Residence different from the Property. Only a Borrower has a right to receive Loan Advances. Borrowers shall choose to receive Loan Advances by either electronic funds transfer to a bank account designated by all Borrowers or by check mailed to an address designated by all Borrowers, except where all Borrowers agree that payment should be made directly to a third party for the benefit of the Borrowers. Borrowers may change the manner of payment by notifying Lender.

2.15.    Protection of Property.

2.15.1.    If Borrower vacates or abandons the Property, or if Borrower is in default under the Security Instrument, then Lender may make reasonable expenditures to protect and preserve the Property and these expenditures will be considered Loan Advances as required under Section 2.16.

CoreLogic Document Services
©2010 CoreLogic, Inc.
CLDS# MUHECMLAT2010-4 Rev. 09-30-10                                    Page 4

Multistate HECM Loan Agreement  02/2010

1061101979

2.15.2. If Borrower fails to pay governmental or municipal charges, fines or impositions that are not included in Section 2.10. or if there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property. These expenditures will be considered Loan Advances as required under Section 2.16.

2.16.    Unscheduled Payments. Loan Advances made pursuant to Sections 2.4., 2.9.2., 2.9.3., 2.10.3., 2.10.5., and 2.15. shall be made from a line of credit under Section 2.6. or 2.7. to the extent possible. If no line of credit sufficient to make the Loan Advances exists, any future monthly payments must be recalculated in accordance with Subsection 2.5.3. or 2.3.4. to create a line of credit sufficient to make the Loan Advances.

## Article 3 – Late Charge

3.1.    Amount Due.    Lender shall pay a late charge to Borrower for any late payment. If Lender does not mail or electronically transfer a scheduled monthly payment to Borrower on the first business day of the month or mail or electronically transfer a line of credit payment to Borrower within 5 business days of the date Lender received the request, the late charge shall be 10 percent of the entire amount that should have been paid to the Borrower for that month or as a result of that request. For each additional day that Lender fails to make payment, Lender shall pay interest on the late payment at the interest rate stated in the Loan Documents. If the Loan Documents provide for an adjustable interest rate, the rate in effect when the late charge first accrues shall be used. In no event shall the total late charge and interest exceed five hundred dollars. Any late charge shall be paid from Lender's funds and shall not be added to the unpaid Principal Balance.

3.2.    Waiver. The Secretary may waive a late charge where the Secretary determines that the late payment resulted from circumstances beyond Lender's control and that no act or omission of Lender contributed to the late payment. At the time Lender requests a waiver, Lender shall inform Borrower that a waiver of late charge has been requested from the Secretary and that the late charge will be sent to Borrower if the waiver is denied. If the Secretary denies the waiver, Lender shall pay to Borrower the late charge and interest that accrued from the date the payment was late until the date the waiver was requested.

## Article 4 – Termination of Lender's Obligation to Make Loan Advances

4.1.    Loan Due and Payable.    Lender shall have no obligation to make Loan Advances if Lender has notified Borrower that immediate payment in full to Lender is required under one or more of the Loan Documents unless and until the notice is rescinded by Lender.

4.2.    Loan Advances by Secretary. If the Security Instrument has been assigned to the Secretary or the Secretary notifies Lender and Borrower that Loan Advances are secured by the Second Security Instrument, Lender shall have no further obligation to make Loan Advances under this Loan Agreement, unless the Secretary accepts later reimbursement by the Lender for all Loan Advances made, earned or disbursed by the Secretary. The Secretary may establish procedures for handling requests for payments and changes in payment plans during the interval between Lender's notification of intent to assign the Security Instrument to the Secretary and completion of the assignment. Borrower shall be informed of such procedures by Lender and/or the Secretary, and Borrower shall comply with such procedures.

4.3.    Lien Status Jeopardized.    Lender shall have no obligation to make further Loan Advances if the Lender or the Secretary determines that the lien status of the Security Instrument or the Second Security Instrument is jeopardized under State laws as described in Paragraph 12(a) of the Security Instrument or Second Security Instrument and the lien status is not extended in accordance with Paragraph 12(a).

4.4.    Bankruptcy.    Lender shall have no obligation to make further Loan Advances on or following the date that a petition for bankruptcy of Borrower is filed.

4.5.    Mandatory Loan Advances. Notwithstanding anything in Sections 4.1. through 4.4., all Loan Advances under Sections 2.10. (property charges), 2.12. (interest), 2.13. (MIP or monthly charge), 2.15. (protection of Property) or 2.3.4. (servicing fee) shall be considered mandatory Loan Advances by Lender.

4.6.    Prepayment in Full.    Lender shall not make Loan Advances if Borrower has paid the Note in full (or the Second Note, if the Secretary has assumed the Lender's rights and obligations under Article 5).

## Article 5 – HUD Obligation

If the Lender has no further obligation to make payments to Borrower because of Section 4.2., the Secretary shall assume the rights and obligations of Lender under this Loan Agreement, except the Secretary shall not assume any obligation of paying flood, fire and other hazard insurance from Loan Advances. If the Secretary makes Loan Advances to Borrower under the Second Security Instrument, the portion of the Principal Limit available for Loan Advances shall be the difference between the current Principal Limit and the combined Principal Balances on the Security Instrument less accrued interest and the Second Security Instrument.

## Article 6 – Miscellaneous

6.1.    Forbearance Not a Waiver.    Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

First American Loan Production Services
©2001 First American Real Estate Solutions LLC
FALPS# MUHECMLAPT0105 Rev. 03-26-10                                          Page 5

Multistate HECM Loan Agreement  03/2010

1061102579

6.2.   Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Loan Agreement shall bind and benefit the successors and assigns of Lender. An assignment made in accordance with the regulations of the Secretary shall fully relieve the Lender of its obligations under this Loan Agreement. Borrower may not assign any rights or obligations under this Loan Agreement. Borrower's covenants and agreements shall be joint and several.

6.3.   Notices.   Any notice to Borrower provided for in this Loan Agreement shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. This notice shall be directed to the property address shown in the Security Instrument or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice to the Secretary shall be given by first class mail to the HUD National Servicing Center or any other place designated by the Secretary. Any notice provided for in this Loan Agreement shall be deemed to have been given to Borrower, Lender or the Secretary when given as provided in this Section.

6.4.   Governing Law; Severability. This Loan Agreement shall be governed by Federal law and the law of the jurisdiction in which the Property is located. The Lender in this Loan Agreement must comply with the Fair Housing Act, 42 U.S.C. §§3601 - 3619, which prohibits discrimination on the basis of race, color, religion, sex, handicap familial status, or national origin. In the event that any provision or clause of this Loan Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Loan Agreement which can be given effect without the conflicting provision. To this end the provisions of this Loan Agreement are declared to be severable.

6.5.   Copies.   Lender, Borrower and the Secretary shall each receive one original executed copy of this Loan Agreement when signed by the Secretary.

6.6.   When Agreement Becomes Binding. This Loan Agreement shall bind Lender and Borrower when both Lender and Borrower have signed. This Loan Agreement shall bind the Secretary only when the lender signs on behalf of the Secretary of Housing and Urban Development and a Mortgage Insurance Certificate is issued for the Security Instrument.

BY SIGNING BELOW the parties accept and agree to the terms contained in this Loan Agreement and its exhibits.

_Paul R. Caldarera_ _____ (Seal)
PAUL B CALDARERA                                              - Borrower

GENERATION MORTGAGE COMPANY
                                                          (Name of Lender)
By: _____
       Jackiryah Thompkins - Funding Analyst

By: _____ (Seal)
       Secretary of Housing and Urban Development

By: _____ (Seal)

# Exhibit B

*1061101579*    SCANNED

 REVIEWED



1st Judicial District
Instrument 2011  9971 T –J1
Filed/Recorded 11/14/2011  10:10 A
Total Fees $    21.00
11 Pages Recorded

——————— [Space Above This Line For Recording Data] ———————

This Document Prepared By: Aileen Lugo    1 of 2  order #2301-49613
GENERATION
MORTGAGE COMPANY,    Indexing: lots 6 to 10
3565 PIEDMONT ROAD, NE, STE 300 SUITE 300    Inc Blk 1 Sea Shore
ATLANTA, GA 30305    Subd Sec 22-8-12
PHONE: 404-995-5500    Return/Mail To: NCS    Sea Shore SUBD
5814 Lonetree Blvd.
Rocklin, CA 95765
When Recorded Mail To:
GENERATION
MORTGAGE COMPANY 888-958-8060
3 PIEDMONT CENTER - 3565 PIEDMONT ROAD, SUITE 300
ATLANTA, GA 30305
PHONE: 404-995-5500
State of Mississippi

FHA Case No. 281-3919575-951
Loan No.   1061101579
MERS MIN  100916410611015795

## CLOSED-END FIXED RATE
## HOME EQUITY CONVERSION DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on OCTOBER 26, 2011    . The trustor is
PAUL B CALDARERA

whose address is  105 S SEASHORE AVE
LONG BEACH, MISSISSIPPI 39560-5706    ("Borrower"). The trustee is
PREMIER REVERSE CLOSINGS, LA PALMA
5828 LONETREE BLVD, ROCKLIN, CA 95765    ("Trustee"). The beneficiary is
Mortgage Electronic Registration Systems, Inc. ("MERS"), which is organized and existing under the laws
of Delaware, and whose address is P.O. Box 2026, Flint MI 48501-2026, Tel. (888) 679-MERS.
GENERATION MORTGAGE COMPANY

("Lender")
is organized and existing under the laws of  THE STATE OF CALIFORNIA    , and has an address of
3565 PIEDMONT ROAD, NE, STE 300 SUITE 300, ATLANTA, GA 30305

CoreLogic Document Services    Mississippi HECM Security Instrument
©2010 CoreLogic, Inc.
CLDS# MSHECM1SIFM Rev. 03-13-09    Page 1

1061101579    10
Name: Caldarera    Location: KASOTA
Customer: GENR    Pool: GNMAHECM-GNMA

1061101579

Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest and all renewals, extensions and modifications of the Note, up to a maximum principal amount of

**TWO HUNDRED TWENTY SIX THOUSAND EIGHT HUNDRED AND NO /100**

Dollars (U.S. $ 226,800.00    ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. The full debt, including amounts described in (a), (b), and (c) above, if not due earlier, is due and payable on **FEBRUARY 16, 2095**    . For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in **HARRISON**                County, Mississippi:

**See Attached Exhibit A**

which has the address of  **105 S SEASHORE AVE**
                                                       [Street]
**LONG BEACH**                     , **MISSISSIPPI**                 39560-5706        ("Property Address");
          [City]                                [State]                      [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1.    **Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.
    2.    **Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall

CoreLogic Document Services                                                Mississippi HECM Security Instrument
©2010 CoreLogic, Inc.
CLDS# MSHECM1SIF-2 Rev. 03-13-09                    Page 2

3

*1061101579*

provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

    **3.    Fire, Flood and Other Hazard Insurance.**  Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

    In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

    In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

    **4.    Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

    Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

    **5.    Charges to Borrower and Protection of Lender's Rights in the Property.**  Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

    If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal

1061101579

proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6.  **Inspection.**  Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property.  If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7.  **Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender.  The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument.  Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

8.  **Fees.**  Lender may collect fees and charges authorized by the Secretary.

9.  **Grounds for Acceleration of Debt.**

   (a) **Due and Payable.**  Lender may require immediate payment in full of all sums secured by this Security Instrument if:

      (i)  A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

      (ii)  All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

   (b) **Due and Payable with Secretary Approval.**  Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

      (i)  The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

      (ii)  For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

      (iii)  An obligation of the Borrower under this Security Instrument is not performed.

   (c) **Notice to Lender.**  Borrower shall notify Lender whenever any of the events listed in this Paragraph (a) (ii) or (b) occur.

   (d) **Notice to Secretary and Borrower.**  Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a) (ii) or (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

      (i)  Correct the matter which resulted in the Security Instrument coming due and payable; or

5

1061101579

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

(e) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

(f) *Mortgage Not Insured.* Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within SIXTY DAYS          from the date hereof, if permitted by applicable law Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to SIXTY DAYS           from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, *this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.*

10. **No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

11. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

12. **Lien Status.**

(a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the *original lien status of the Security Instrument is* jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit

1061101579

the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

13. **Relationship to Second Security Instrument.**

(a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

(i) This Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

(d) **No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

14. **Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

15. **Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

16. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any

CoreLogic Document Services
©2010 CoreLogic, Inc.
CLDS# MSHECM1SIF-6 Rev. 03-13-09                    Page 6

Mississippi HECM Security Instrument

1061101579

notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

17.  **Governing Law; Severability.**  This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.

18.  **Borrower's Copy.**  Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

19.  **Assignment of Rents.**  Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach.  Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender.  This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

20.  **Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give Borrower, in the manner provided in Paragraph 16, notice of Lender's election to sell the Property. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at such time and place in HARRISON                    County as Trustee designates in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.**

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys'

CoreLogic Document Services                                          Mississippi HECM Security Instrument
©2010 CoreLogic, Inc.
CLDS# MSHECM1$1F-7 Rev. 03-13-09                    Page 7

1061101579

fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**21. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

**22. Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances for interest, MIP, Servicing Fees, and other charges shall be obligatory.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. If Trustee is requested to cancel this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which the Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider          ☐ Planned Unit Development Rider

☐ Other (Specify)

**26. Nominee Capacity of MERS.** MERS serves as mortgagee of record and secured party solely as nominee, in an administrative capacity, for Lender and its successors and assigns and holds legal title to the interests granted, assigned, and transferred herein. All payments or deposits with respect to the Secured Obligations shall be made to Lender, all advances under the Loan Documents shall be made by Lender, and all consents, approvals, or other determinations required or permitted of Mortgagee herein shall be made by Lender. MERS shall at all times comply with the instructions of Lender and its successors and assigns. If necessary to comply with law or custom, MERS (for the benefit of Lender and its successors and assigns) may be directed by Lender to exercise any or all of those interests, including without limitation, the right to foreclose and sell the Property, and take any action required of Lender, including without limitation, a release, discharge or reconveyance of this Mortgage. Subject to the foregoing, all references herein to "Mortgagee" shall include Lender and its successors and assigns.

1061101579

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Paul B. Caldarera_ _____ (Seal)
PAUL B CALDARERA                                 - Borrower

10

1061101579

———————— [Space Below This Line For Acknowledgment] ————————

STATE OF MISSISSIPPI

COUNTY OF Harrison

Personally appeared before me, the undersigned authority in and for the said county and state, on this 26th day of October , 20 11 , within my jurisdiction, the within named
**PAUL B CALDARERA**

who acknowledged that (he) (she) (they) executed the above and foregoing instrument.

JAMIE M FUNDERBURK
NOTARY PUBLIC
ID No. 97394
My Comm Expires
Oct 28, 2014
HARRISON COUNTY
STATE OF MISSISSIPPI

_Jamie M Funderburk_
(NOTARY PUBLIC)

My commission expires: _____

(Affix official seal, if applicable)

Order No.   2301-49613
Version 3
UPDATE

**EXHIBIT "A"**
**LEGAL DESCRIPTION**

THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF MISSISSIPPI, COUNTY OF HARRISON, AND IS DESCRIBED AS FOLLOWS:

THE FOLLOWING DESCRIBED LAND SITUATED IN THE CITY OF LONG BEACH, HARRISON COUNTY, FIRST JUDICIAL DISTRICT, MISSISSIPPI, TO WIT:

LOTS 6, 7, 8, 9 AND 10, BLOCK 1, SEA SHORE SUBDIVISION, A SUBDIVISION ACCORDING TO THE OFFICIAL MAP OR PLAT THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE CHANCERY CLERK OF HARRISON COUNTY, MISSISSIPPI, FIRST JUDICIAL DISTRICT, WITH ALL IMPROVEMENTS THEREON AND APPRUTENANCES THEREUNTO BELONGING.

PARCEL NUMBER(S): 0512H-02-091.000

VM.COMMIT.LEGAL

# Exhibit C



J1 - GULFPORT DISTRICT
INSTRUMENT 2021-0027938-T-J1
FILED/RECORDED 9/30/2021 2:23:01 PM
TOTAL FEES $37.00
2 PAGES RECORDED

Prepared By and Return To:
**Murat Deniz**
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(239) 351-2442

Space above for Recorder's use



15418117

Loan No: 4094907

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR GENERATION MORTGAGE COMPANY, ITS SUCCESSORS AND ASSIGNS,** whose address is 1901 E. VOORHEES ST., SUITE C, DANVILLE, IL 61834; P.O. BOX 2026, FLINT, MI 48501-2026, PHONE#: 800-646-6377, (ASSIGNOR), does hereby grant, assign and transfer to **MORTGAGE ASSETS MANAGEMENT, LLC**, whose address is 12345 N LAMAR BLVD STE 125, AUSTIN, TX 78753, PHONE#: N/A, (ASSIGNEE), its successors, transferees and assigns forever, all interest, all liens, and any rights due or to become due thereon under that certain deed of trust described below.

Date of Deed of Trust: 10/26/2011
Original Loan Amount: $226,800.00
Executed by (Borrower(s)): PAUL B CALDARERA
Original Trustee: PREMIER REVERSE CLOSINGS, LA PALMA
Original Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR GENERATION MORTGAGE COMPANY, ITS SUCCESSORS AND ASSIGNS**
Filed of Record:  In Book N/A, Page N/A
Document/Instrument No: 2011 9971 T-J1 in the Recording District of Harrison 1st Judicial District (Gulfport), MS, Recorded on 11/14/2011.

Property more commonly described as: 105 S SEASHORE AVE, LONG BEACH, MISSISSIPPI 39560-5706

MIN# 100916410611015795        MERS PH# 1-888-679-MERS

4094907 Project Clover Whole 15418117

Instrument# 20210027938
TRUST BOOK - J1 - GULFPORT DISTRICT

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: SEP 2 1 2021

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR GENERATION MORTGAGE COMPANY, ITS SUCCESSORS AND ASSIGNS

By: Kim Gentry

Title: Assistant Secretary

Witness Name: Kelli Thompson

---

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

---

State of Texas
County of Denton

On SEP 2 1 2021, before me, Valencia Metcalf, a Notary Public, personally appeared Kim Gentry, Assistant Secretary of/for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR GENERATION MORTGAGE COMPANY, ITS SUCCESSORS AND ASSIGNS, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of Texas that the foregoing paragraph is true and correct. I further certify Kim Gentry, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal

(Notary Name): Valencia Metcalf

My commission expires: FEB 2 8 2023

VALENCIA METCALF
Notary Public, State of Texas
Comm Expires 02-28-2023
Notary ID 128535414

4094907 Project Clover Whole 15418117

**PHH**®

**MORTGAGE**

**Exhibit D**

PO Box 24606, West Palm Beach, FL 33416

April 11, 2024

Paul B Caldarera
105 S Seashore Ave.,
Long Beach, MS 39560-5706

|  |  |
|---|---|
| Loan Number: | 1061101579 |
| Reference Number: | 224346 |
| Mortgagor: | Paul B Caldarera |
| Property: | 105 S Seashore Ave., |
|  | Long Beach, MS 39560-5706 |

Dear Customer,

Thank you for the recent communication regarding the account referenced above in which you requested documentation supporting the necessity of wind insurance for your property.

The determination of insurance is a state requirement that must be strictly followed. The state determines whether wind insurance is required for your property, and you must meet this requirement by obtaining the appropriate coverage.

While there may not be specific documentation mandating windstorm insurance for your property, the mortgage agreement explicitly requires the borrower to obtain insurance for **all** current and future property improvements, safeguarding against a range of risks **including hazards, casualties, and contingencies like fire.**

This insurance must be maintained in the amounts and for the periods required by the lender or the Secretary of Housing and Urban Development. This information is found in Section 3: Fire, Flood, and Other Insurance. We have enclosed the mortgage agreement for your careful review.

Should you have questions, you may contact Marcell Stewart or another default representative from the team at 866-799-7724 during their regular business hours of 8:00 a.m. – 7:00 p.m. Eastern Time Monday through Friday.

Sincerely,

Loan Servicing

reverse.mortgagequestions.com

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.

# Exhibit E

Client Id: RMS/FCAOL
Loan #: 224346-ER



\* 1 4 7 0 8 1 1 \*

## ASSIGNMENT OF DEED OF TRUST

***FOR VALUE RECEIVED***, **MORTGAGE ASSETS MANAGEMENT, LLC**, whose address is c/o PHH Mortgage Corporation d/b/a PHH Mortgage Services, 1661 Worthington Road, Ste. 100, West Palm Beach, FL 33409, does hereby assign and transfer to **BANK OF NEW YORK MELLON TRUST COMPANY, N.A. AS TRUSTEE FOR MORTGAGE ASSETS MANAGEMENT SERIES I TRUST** whose address is c/o Mortgage Assets Management, LLC, 14405 Walters Road, Suite 200, Houston, TX 77014, all its right, title and interest in and to the described Deed of Trust executed by **PAUL B CALDARERA** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., BENEFICIARY, AS NOMINEE FOR GENERATION MORTGAGE COMPANY, ITS SUCCESSORS AND ASSIGNS** for **$226,800.00**, dated **10/26/2011** of record on **11/14/2011** as Document **2011 9971-T-J1**, in the **HARRISON 2ND DISTRICT** County Clerk's Office, State of **MISSISSIPPI**.
Property Address: 105 S Seashore Ave, Long Beach, MISSISSIPPI 39560-5706
Legal description: SEE ATTACHED EXHIBIT "A"
Parcel: 0512H-02-091.000

Executed this 05/20/2024

**MORTGAGE ASSETS MANAGEMENT, LLC BY AND THROUGH ITS ATTORNEY IN FACT, PHH MORTGAGE CORPORATION D/B/A PHH MORTGAGE SERVICES**

By:     Kelley Earle
Title:   Senior Servicing Operations Specialist

**Prepared By And**
**After Recording Return To:**

**DS DocSolutionUSA**

DocSolutionUSA, LLC, dba DocSolution, Inc.

Warren E. Johnsey, Attorney at Law
2316 Southmore
Pasadena, TX 77502
713-941-4928
**DocSolutionUSA, LLC, d/b/a DocSolution, Inc. did not prepare a title search of the Property**
**described in the document below. The Preparer of this document makes no representation as to**
**the status and validity of, including, but not limited to, the title, loan history, boundary survey,**
**property use, or zoning regulations of the Property assigned, transferred, conveyed, released, or**
**any other disposition of the Property. Information herein was provided to preparer by**
**Grantor/Grantee and/or their Agent.**

Assignor phone number is 888-918-1110
Assignee phone number is _____

# ACKNOWLEDGMENT

STATE OF FLORIDA

COUNTY OF PALM BEACH

The foregoing instrument was acknowledged before me by means ☑ physical presence ☐ online
notarization, this 05/20/2024 by Kelley Earle, Senior Servicing Operations Specialist of
PHH Mortgage Corporation d/b/a PHH Mortgage Services, a New Jersey Corporation, as Attorney in Fact
for MORTGAGE ASSETS MANAGEMENT, LLC, ITS SUCCESSORS AND ASSIGNS, a corporation,
on behalf of the corporation. He/She is personally known to me .

Given under my hand and seal of office this 20th day of May, A.D.2024.

_Melisia Thompson_
Notary Public in and for the State of Florida
Notary's Printed Name: **Melisia Thompson**
My Commission Expires: 02/26/2027

Notary Public State of Florida
Melisia Thompson
My Commission HH 366289
Expires 02/26/2027

For $226,800.00 dated 10/26/2011



Order No.    2301-49613
Version 3
UPDATE

**EXHIBIT "A"**
LEGAL DESCRIPTION

THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF MISSISSIPPI, COUNTY OF HARRISON, AND IS DESCRIBED AS FOLLOWS:

THE FOLLOWING DESCRIBED LAND SITUATED IN THE CITY OF LONG BEACH, HARRISON COUNTY, FIRST JUDICIAL DISTRICT, MISSISSIPPI, TO WIT:

LOTS 6, 7, 8, 9 AND 10, BLOCK 1, SEA SHORE SUBDIVISION, A SUBDIVISION ACCORDING TO THE OFFICIAL MAP OR PLAT THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE CHANCERY CLERK OF HARRISON COUNTY, MISSISSIPPI, FIRST JUDICIAL DISTRICT, WITH ALL IMPROVEMENTS THEREON AND APPRUTENANCES THEREUNTO BELONGING.

PARCEL NUMBER(S): 0S12H-02-091.000

**Exhibit F**



# MISSISSIPPI CENTER FOR LEGAL SERVICES CORPORATION

*serving* **43** *counties*

### *URGENT ATTENTION REQUIRED*

### *CEASE AND DESIST DEMAND*

August 20, 2024

**"Equal Justice for All"**

☐ **Administrative, VOCA
& Hattiesburg Office**
111 East Front Street (39401)
Post Office Drawer 1728
Hattiesburg, MS 39403-1728
(601) 545-2950
(800) 773-1737
Fax: (601) 545-2935

☐ **Gulfport Office**
520 E. Pass Road, Suite J (39506)
Post Office Box 8691
Gulfport, MS 39507
(228) 896-9148
(877) 664-0238
Fax: (228) 896-9345

■ **Jackson, VOCA &
State Initiatives Office**
414 South State Street
Suite 300 (39201)
Post Office Box 951
Jackson, MS 39205-0951
(601) 948-6752
(800) 959-6752
Fax: (601) 948-6757
Fax: (601) 948-6759

☐ **McComb Office**
221 Main Street (39648)
Post Office Box 575
McComb, MS 39649-0575
(601) 684-0578
(800) 898-0985
Fax: (601) 684-0575

☐ **Meridian Office**
2305 Fifth Street
2nd Floor (39302)
Post Office Box 1931
Meridian, MS 39302-1931
(601) 693-5470
(888) 631-9161
Fax: (601) 693-5473

PHH Mortgage Services
P.O. Box 66002
Lawrenceville, NJ 08648

Rubin Lublin, LLC
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071

Re:    Mr. Paul Bernard Caldarera
        Loan Number: 1061101579
        105 South Seashore Ave
        Long Beach, MS 39560

To Whom It May Concern:

Our corporation represents Mr. Paul Caldarera concerning the above-referenced Reverse Mortgage Loan serviced by PHH Mortgage Services. I am writing to formally demand that PHH Mortgage Services immediately cease all foreclosure proceedings initiated against my client's property located at the above address. The pending foreclosure in illegal and invalid, in that it is based on the alleged non-payment of premiums for force-placed wind damage insurance that PHH Mortgage Services unilaterally imposed on the property.

1. <u>Lack of Contractual Basis for Force-Placed Insurance</u>: The Deed of Trust governing the mortgage loan in question expressly requires my client to maintain insurance for hazards, casualties, and contingencies, including fire, as do all similar deeds of trust. However, it does not explicitly mandate wind damage insurance, notwithstanding that wind damage insurance was available at the time of the origination of this mortgage.  Since wind damage is a significant and material issue for property located on the Gulf Coast, it is evident that the parties did not intend to require such coverage.  In fact, had such coverage been required of my client, he would have been financially unable to perform under the agreement. In fact, the course of conduct of the parties under the agreement over the first ten or more years was clear evidence that the parties did not intend for such coverage to be required. Therefore, the imposition of force-placed wind insurance by PHH Mortgage Services is unwarranted, not supported by the terms of the Deed of Trust and is a breach of the agreement by PHH.

PHH Mortgage Services, et. al                                                    Page 2
August 20, 2024
---------------------------------

2. <u>Violation of RESPA</u>: Under the Real Estate Settlement Procedures Act (RESPA), specifically 12 C.F.R. § 1024.37, PHH Mortgage Services is prohibited from charging my client for force-placed insurance. Wind insurance was neither required by the Deed of Trust nor necessary under the broad terms of "hazards" and "contingencies."  The failure to adhere to RESPA's strict requirements regarding force-placed insurance is grounds for immediate cessation of the foreclosure.

3. <u>Bad Faith and Unjust Enrichment</u>: PHH is the successor servicer for the mortgage, which is owned by successor lender/owners. Section 15 of the Deed of Trust binds the lender to honor all covenants and agreements in the agreement. By imposing unnecessary and unauthorized force-placed insurance, PHH Mortgage Services has acted in bad faith and sought to unjustly enrich itself at my client's expense by shifting the burden of the risk that was not agreed upon by the parties to the original agreement. The subsequent attempt to foreclose on the property based on non-payment of these improper charges is both legally and morally indefensible.

## **DEMAND**

In light of the above, we hereby demand on behalf of Mr. Paul Caldarera that PHH Mortgage Services:

1. Immediately cease all foreclosure activities, including any scheduled foreclosure sales, notices, or related actions.

2. Remove any force-placed wind insurance charges from my client's account.

3. Provide written confirmation no later than 12:00 p.m. central standard time on Friday, August 23, 2024, that the foreclosure has been halted and that the account has been corrected. Time is of the essence.

Failure to comply with these demands will leave my client with no alternative but to pursue all available legal remedies, including filing a lawsuit for breach of contract, violations of RESPA, and other applicable claims. Please be advised that in such an event, my client will seek damages, attorneys' fees, and any other relief the court deems appropriate.

I trust that PHH Mortgage Services will take the necessary steps to resolve this matter promptly and avoid further legal action.

Please direct all future correspondence regarding this matter to my office.

Respectfully submitted,

W. David Watkins, Sr.

Cc:    Mr. Paul Caldarera

PHH Mortgage Services, et. al                                      Page 3
August 20, 2024
--------------------------------

          James Wright, Esq.

Enclosures (1):  Authorization to Release Information

***W. David Watkins, Sr.***
wwatkins@mslegalservices.org
Foreclosure Defense Staff Attorney
414 South State Street
Suite 300
Post Office Box 951
Jackson, MS 39205-0951
(601) 427-3650

# MISSISSIPPI CENTER FOR LEGAL SERVICES CORPORATION
*Serving 43 Counties*

TO: _____

FROM: _____    SSN: _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_

### RE:    *AUTHORIZATION TO RELEASE INFORMATION*

I, _Paul B. Caldarera_ , the undersigned, do hereby attest that I have retained Mississippi Center for Legal Services Corporation (MCLSC), to represent me.

I hereby consent to and authorize the disclosure of all information contained within my files to MCLSC. I authorize the release of this information over the telephone, by letter, or in person.

I further request and authorize that a copy of all correspondence sent to me be sent to MCLSC.

Unless revoked by me in writing, this consent shall be valid for one hundred eighty (180) days or for the life of my current application for assistance or problem, whichever is greater.

DATED this the _12_ day of _August_ , A.D., 20_24_ .

_Paul B. Caldarera_
SIGNATURE

_105 S. Seashore Ave._
STREET

_Long Beach , MS    39560_
CITY        STATE        ZIP CODE

**Effective 08/06/12**

Exhibit G



# MISSISSIPPI CENTER FOR LEGAL SERVICES CORPORATION

*serving* **43** *counties*

### *URGENT ATTENTION REQUIRED*

August 20, 2024

"Equal Justice for All"

☐ **Administrative, VOCA & Hattiesburg Office**
111 East Front Street (39401)
Post Office Drawer 1728
Hattiesburg, MS 39403-1728
(601) 545-2950
(800) 773-1737
Fax: (601) 545-2935

☐ **Gulfport Office**
520 E. Pass Road, Suite J (39506)
Post Office Box 8691
Gulfport, MS 39507
(228) 896-9148
(877) 664-0238
Fax: (228) 896-9345

■ **Jackson, VOCA & State Initiatives Office**
414 South State Street
Suite 300 (39201)
Post Office Box 951
Jackson, MS 39205-0951
(601) 948-6752
(800) 959-6752
Fax: (601) 948-6757
Fax: (601) 948-6759

☐ **McComb Office**
221 Main Street (39648)
Post Office Box 575
McComb, MS 39649-0575
(601) 684-0578
(800) 898-0985
Fax: (601) 684-0575

☐ **Meridian Office**
2305 Fifth Street
2nd Floor (39302)
Post Office Box 1931
Meridian, MS 39302-1931
(601) 693-5470
(888) 631-9161
Fax: (601) 693-5473

PHH Mortgage Services
P.O. Box 66002
Lawrenceville, NJ 08648

Rubin Lublin, LLC
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071

Bank of New York Mellon Trust
Company, N.A.
as Trustee for Mortgage Assets Management Series I Trust
240 Greenwich St,
New York, NY 10286

Re:    Mr. Paul Bernard Caldarera
       Loan Number: 1061101579
       105 South Seashore Ave
       Long Beach, MS 39560

To Whom It May Concern:

Please treat this letter as a **"notice of error"** and **"request for information"** under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) ("RESPA"), and Regulation X, 12 C.F.R. §§ 1024.35, 1024.36. This letter also should be considered as notice of *Demand to Cease and Desist Foreclosure Proceedings.*

This request is made on behalf of our client, **Paul Bernard Caldarera**, based on his dispute of the amount alleged to be due and owing contained in the Attorney's Notice of Acceleration and Foreclosure on behalf of the PHH Mortgage Services.

In your letter of April 11, 2024 (attached as Exhibit "A"), to Mr. Calderara, you have represented to him that the State of Mississippi requires wind insurance coverage on the property. That is simply false and a fraudulent misrepresentation of the insurance laws of Mississippi designed to force Mr. Calderara to purchase insurance that he was not required to purchase.

You claim that Section 3 of the Deed of Trust requires Mr. Calderara to secure wind insurance coverage, at your demand.  That is likewise not true and is a

PHH Mortgage Services, et. al                                                             Page 2
August 20, 2024
--------------------------------

further misrepresentation by your company. There is *no provision* in the Deed of Trust, or any other agreement we can find, that specifically requires wind damage insurance coverage. That is simply your company's improper interpretation which constitutes a material substantive change in the contractual obligations of my client under the Deed of Trust.

You have further insinuated that the insurance requirements you have are now illegally demanding from Mr. Caldarera may be required by the Secretary of Housing and Urban Development. That is likewise untrue and a fraudulent misrepresentation to my client clearly asserted to induce him to bear a risk of over exposure, and to incur a substantial expense that he simply cannot afford to incur and should not be forced to incur.

When Mr. Caldarera entered into the Reverse Mortgage Agreement (RMA) with Generation Mortgage Company, there was *NO REQUIREMENT* that the homeowner would need to secure wind coverage. While that certainly could have been the case at the time that the agreement was executed, it was not. It was not required by the original lender, and its successors in interest continued to honor that agreement not to require such coverage. Quite frankly, the cost of wind coverage is such a substantial condition that Mr. Calderara, being in a fixed low-income position, would likely not even have considered entering into such an agreement had it been required. Not having such an insurance requirement was a material and prerequisite consideration for entering into the agreement.

Your company has breached its obligations under the Reverse Mortgage Agreement, in an effort to shift a risk to my client that was not agreed to in the very beginning. Recognizing that the cost of wind coverage is material and significant, it was a risk that was undertaken by the lender at the time of the execution of the RMA.

You cannot unilaterally change the terms of the agreement simply because you might not like the deal that was struck by your predecessor in interest!

Respectfully, I would direct your attention to Section 15 of the Deed of Trust, which provides, in part:

> *The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender.*

The consideration for entering the contract for the Reverse Mortgage Agreement was preconditioned upon provisions not requiring wind coverage insurance, even though it was available in the marketplace. Any successors in interest to the lender are clearly bound to the same terms, conditions, and consideration at the time of the execution of the original agreement.

Your actions constitute a clear violation of RESPA, 12 U.S.C. §2605(k)(1)(A), which would give rise to an action in federal court for damages, including legal fees, actual damages to the borrow, and noncompliance damages of $2,000.00.

PHH Mortgage Services, et. al                                                                Page 3
August 20, 2024
--------------------------------

Please be advised that we intend to file a complaint on behalf of Mr. Caldarera with the Consumer
Financial Protection Bureau (CFPB) for this illegal conduct.

We demand that you **CEASE AND DESIST** any and all efforts to foreclose on Mr. Calderara's
property.  Please note that we are sending under separate communication a formal Demand to Cease
and Desist any and all foreclosure proceedings.

If this Demand is not honored, we intend to seek legal action in the Chancery Court of Harrison
County, Mississippi, and/or the United States District Court for the Southern District of Mississippi,
for injunctive relief, breach of contract, violation of RESPA, and common law fraud.

With respect to our **Request for Information (RFI)**, we are requesting the following information:

1. Documentation showing Mississippi Law requires that Mr. Calderara secure wind insurance
   coverage on his property.
2. Documentation showing the Secretary of Housing and Urban development requires that Mr.
   Calderara secure wind insurance coverage on his property
3. The complete loan history, including but not limited to the following.
4. A copy of the note, deed of trust, any assignments or other documents with respect to this
   debt.
5. A record of any communications with my client with respect to this debt.
6. A statement of the amount of the debt under the Reverse Mortgage obligation, as of this date.
   The monthly principal and interest calculations for the Reverse Mortgage debt from beginning
   of the loan to current date.
7. The amount, payment date, purpose, and recipient of all foreclosure expenses, late charges,
   appraisal fees, property inspection/preservation fees, force placed insurance charges, legal
   fees, recoverable corporate advances, and other expenses or costs that have been charged
   and/or assessed to **Paul Bernard Caldarera**'s mortgage account from beginning of the loan
   to current date.
8. The interest rate on the mortgage account.
9. The transaction codes used by creditor's electronic servicing system, if any, that will assist in
   understanding the entries for transactions listed in the information provided in response to this
   request.
10. Any notes created by personnel of creditor or any representative of the creditor reflecting
    communications with my clients about the account.

To the extent that creditor or any representative of the creditor has charged to the **Paul Bernard
Caldarera**'s mortgage account any late fees, appraisal fees, broker price opinion fees, property
inspection/preservation fees, legal fees, recoverable corporate advances, and other fees or costs in
connection with the notice of acceleration and attorney's claim that the account is in default, **Paul**

PHH Mortgage Services, et. al                                                    Page 4
August 20, 2024
--------------------------------

**Bernard Caldarera** disputes such fees and costs and specifically requests that the account be corrected to delete such fees and costs.

Finally, please indicate the date when you began servicing **Paul Bernard Caldarera**'s mortgage account, and if you acquired the servicing rights in this mortgage account following a transfer of servicing from another servicer, state the name of the prior servicer and the effective date of the transfer of servicing to creditor or any representative of the creditor.

Thank you for taking the time to acknowledge and answer this request as required by the Real Estate Settlement Procedures Act (§ 2605(e)).

Sincerely,

W. David Watkins, Sr.

Cc:    Mr. Paul Caldarera
        James Wright, Esq.
        Honorable Mike Chaney, Commissioner of Insurance for Mississippi

Enclosures (2):  PHH Letter dated April 11, 2024
                        Authorization to Release Information

**W. David Watkins, Sr.**
wwatkins@mslegalservices.org
Foreclosure Defense Staff Attorney
414 South State Street
Suite 300
Post Office Box 951
Jackson, MS 39205-0951
(601) 427-3650

**PHH**®

**MORTGAGE**

PO Box 24606, West Palm Beach, FL 33416

April 11, 2024

Paul B Caldarera
105 S Seashore Ave.,
Long Beach, MS 39560-5706

| | |
|---|---|
| Loan Number: | 1061101579 |
| Reference Number: | 224346 |
| Mortgagor: | Paul B Caldarera |
| Property: | 105 S Seashore Ave., |
| | Long Beach, MS 39560-5706 |

Dear Customer,

Thank you for the recent communication regarding the account referenced above in which you requested documentation supporting the necessity of wind insurance for your property.

The determination of insurance is a state requirement that must be strictly followed. The state determines whether wind insurance is required for your property, and you must meet this requirement by obtaining the appropriate coverage.

While there may not be specific documentation mandating windstorm insurance for your property, the mortgage agreement explicitly requires the borrower to obtain insurance for **all** current and future property improvements, safeguarding against a range of risks **including hazards, casualties, and contingencies like fire.**

This insurance must be maintained in the amounts and for the periods required by the lender or the Secretary of Housing and Urban Development. This information is found in Section 3: Fire, Flood, and Other Insurance. We have enclosed the mortgage agreement for your careful review.

Should you have questions, you may contact Marcell Stewart or another default representative from the team at 866-799-7724 during their regular business hours of 8:00 a.m. – 7:00 p.m. Eastern Time Monday through Friday.

Sincerely,

Loan Servicing

reverse.mortgagequestions.com

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.

# MISSISSIPPI CENTER FOR LEGAL SERVICES CORPORATION
### *Serving 43 Counties*

TO: _____

FROM: _____    SSN: __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__

### RE:    *AUTHORIZATION TO RELEASE INFORMATION*

I, __Paul B. Caldarera__, the undersigned, do hereby attest that I have retained Mississippi Center for Legal Services Corporation (MCLSC), to represent me.

I hereby consent to and authorize the disclosure of all information contained within my files to MCLSC. I authorize the release of this information over the telephone, by letter, or in person.

I further request and authorize that a copy of all correspondence sent to me be sent to MCLSC.

Unless revoked by me in writing, this consent shall be valid for one hundred eighty (180) days or for the life of my current application for assistance or problem, whichever is greater.

DATED this the __12__ day of __August__, A.D., 20__24__.

_____Paul B. Caldarera_____
SIGNATURE

_____105 S. Seashore Ave._____
STREET

__Long Beach, MS   39560__
CITY        STATE        ZIP CODE

**Effective 08/06/12**

# Exhibit H

## W. David Watkins

| | |
|---|---|
| **From:** | Michael Baringer <mbaringer@rlselaw.com> |
| **Sent:** | Friday, August 23, 2024 1:40 PM |
| **To:** | W. David Watkins |
| **Cc:** | Escalations |
| **Subject:** | [EXTERNAL Email]  RE: [EXTERNAL Email]  RE: Reverse Mortgage Foreclosure problem |

The August 28, 2024 foreclosure sale is being cancelled.

We have requested a reinstatement quote and will provide once it is received.

Respectfully,



**Michael Baringer**
**Senior Foreclosure Attorney**

| | |
|---|---|
| Rubin Lublin, LLC / Rubin Lublin TN, PLLC | Main: 770-246-3300 |
| 3145 Avalon Ridge Place, Suite 100 | Fax: 470-508-9401 |
| Peachtree Corners, Georgia 30071 | Direct: 770-246-3326 |
| www.rlselaw.com | mbaringer@rlselaw.com |
| **Serving Georgia, Mississippi, Tennessee & Alabama** | |

*It is our goal to continually provide personalized service and professional results for our valued partners.  If I have exceeded your expectations and addressed your needs in a timely manner, or if I have not met your expectations, please contact Jane Woll, Director of Client Relations (jwoll@rlselaw.com).*

**PLEASE BE ADVISED THAT THIS LAW FIRM MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED DURING OR AS A RESULT OF THIS COMMUNICATION MAY BE USED FOR THAT PURPOSE.**

IMPORTANT NOTICE: This message is intended to be received only by persons entitled to receive the confidential information it may contain. Electronic messages to clients of Rubin Lublin, LLC may contain information that is confidential and legally privileged. Please do not read, copy, forward, or store this message unless you are an intended recipient of it. If you have received this message in error, please destroy this information.

**From:** W. David Watkins <wwatkins@mslegalservices.org>
**Sent:** Friday, August 23, 2024 2:01 PM
**To:** Michael Baringer <mbaringer@rlselaw.com>
**Cc:** Escalations <Escalations@rubinlublin.com>
**Subject:** [EXTERNAL] RE: [EXTERNAL Email] RE: Reverse Mortgage Foreclosure problem

**CAUTION: This email originated from outside of Rubin Lublin. Please do not click links or open attachments unless you recognize the sender and know the content is safe.**

---

Michael,

Do you an update on the status of the foreclosure set for next week?  Obviously, we will be seeking injunctive relief if the foreclosure auction is not cancelled.

Thanks.

*David*

**W. David Watkins, Sr.**
**wwatkins@mslegalservices.org**
Foreclosure Defense Staff Attorney
MS Center for Legal Services Corporation
414 South State Street, Suite 300
P.O. Box 951
Jackson, MS 39205
(601) 427-3650

CONFIDENTIALITY NOTICE

This electronic transmission (and/or the documents accompanying it) may contain certain sensitive and confidential information belonging to the sender which is protected by the attorney/client Privilege. The information is intended only for the use of the individual or entity to which it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any review, retransmission, dissemination, disclosure, copying, distribution or other use of, or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this communication in error, please contact the sender and delete the material from your computer.

**From:** Michael Baringer <mbaringer@rlselaw.com>
**Sent:** Wednesday, August 21, 2024 11:06 AM
**To:** W. David Watkins <wwatkins@mslegalservices.org>
**Cc:** Escalations <Escalations@rubinlublin.com>; James Wright <jwright@mslegalservices.org>; Tracy Rivers <trivers@mslegalservices.org>
**Subject:** [EXTERNAL Email] RE: Reverse Mortgage Foreclosure problem

We are escalating to our client and hope to have a response shortly.

Respectfully,



**Michael Baringer**
**Senior Foreclosure Attorney**

| | |
|---|---|
| Rubin Lublin, LLC / Rubin Lublin TN, PLLC | Main: 770-246-3300 |
| 3145 Avalon Ridge Place, Suite 100 | Fax: 470-508-9401 |
| Peachtree Corners, Georgia 30071 | Direct: 770-246-3326 |
| www.rlselaw.com | mbaringer@rlselaw.com |
| Serving Georgia, Mississippi, Tennessee & Alabama | |

*It is our goal to continually provide personalized service and professional results for our valued partners. If I have exceeded your expectations and addressed your needs in a timely manner, or if I have not met your expectations, please contact Jane Woll, Director of Client Relations (jwoll@rlselaw.com).*

**PLEASE BE ADVISED THAT THIS LAW FIRM MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED DURING OR AS A RESULT OF THIS COMMUNICATION MAY BE USED FOR THAT PURPOSE.**

IMPORTANT NOTICE: This message is intended to be received only by persons entitled to receive the confidential information it may contain. Electronic messages to clients of Rubin Lublin, LLC may contain information that is confidential and legally privileged. Please do not read, copy, forward, or store this message unless you are an intended recipient of it. If you have received this message in error, please destroy this information.

**From:** W. David Watkins <wwatkins@mslegalservices.org>
**Sent:** Tuesday, August 20, 2024 1:42 PM
**To:** Michael Baringer <mbaringer@rlselaw.com>
**Cc:** Escalations <Escalations@rubinlublin.com>; James Wright <jwright@mslegalservices.org>; Tracy Rivers <trivers@mslegalservices.org>
**Subject:** [EXTERNAL] Reverse Mortgage Foreclosure problem
**Importance:** High

**CAUTION: This email originated from outside of Rubin Lublin. Please do not click links or open attachments unless you recognize the sender and know the content is safe.**

---

RE:   Mr. Paul Bernard Caldarera
      Loan Number: 1061101579
      105 South Seashore Ave
      Long Beach, MS 39560

Michael,

I don't know if you are handling this matter or who in your firm might be. It is a foreclosure on a Reverse Mortgage for out client listed above, for non-payment of force-placed wind damage insurance coverage.

We are challenging this action and would like to bring the matter to your attention, as the foreclosure firm, to consider cancelling the scheduled foreclosure sale, presently set for August 28, 2024.

I would appreciate the opportunity to discuss this matter with whoever in your firm might be handling this.

Thanks.

Regards,

*David*

**W. David Watkins, Sr.**
**wwatkins@mslegalservices.org**
Foreclosure Defense Staff Attorney
MS Center for Legal Services Corporation
414 South State Street, Suite 300
P.O. Box 951
Jackson, MS 39205
(601) 427-3650

CONFIDENTIALITY NOTICE

This electronic transmission (and/or the documents accompanying it) may contain certain sensitive and confidential information belonging to the sender which is protected by the attorney/client Privilege. The information is intended only for the use of the individual or entity to which it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any review, retransmission, dissemination, disclosure, copying, distribution or other use of, or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this communication in error, please contact the sender and delete the material from your computer.

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.
CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

# Exhibit I

## RUBIN LUBLIN, LLC

Attorneys and Counselors at Law
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071
TEL (877) 813-0992
FAX (470) 508-9401

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**Copy Via Regular Mail**

February 28, 2025

MS Center for Legal Services Corporation (Borrower Attorney for CALDARERA, PAUL B.)
414 South State Street, Suite 300
P.O. Box 951
Jackson, MS 39205

### *Notice of Acceleration and Foreclosure*

| | |
|---|---|
| **File No.:** | **RMU-24-02805-5** |
| **Loan:** | **Deed of Trust from PAUL B CALDARERA to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. AS BENEFICIARY, AS NOMINEE FOR GENERATION MORTGAGE COMPANY ("Original Lender")** |
| **Property Address:** | **105 S SEASHORE AVE, LONG BEACH, MS 39560** |

Please be advised that this law firm represents Bank of New York Mellon Trust Company, N.A. as Trustee for Mortgage Assets Management Series I Trust ("Foreclosing Entity"), successor in interest to the Original Lender on the above-referenced Loan. By separate communication you may have been advised of your rights under the Fair Debt Collection Practices Act (the "FDCPA"), should that Act apply to this proceeding. Nothing in this letter shall prevent you from exercising those rights as set forth in that communication. This letter is to advise you that we have been retained to institute non-judicial foreclosure proceedings against the referenced property. Enclosed you will find a copy of the Notice of Substitute Trustee's Sale that was submitted for publication in connection with a foreclosure sale of the above property. The foreclosure sale is scheduled for **April 9, 2025** ("Sale Date").

The indebtedness secured by said Deed of Trust has been and is hereby declared due because of default under the terms of said Deed of Trust. *The total amount of the debt owed may consist of unpaid principal balance, any unpaid accrued interest, escrow/impound shortages or credits, late charges, legal fees/costs, and other charges.  To find out the amount needed to either bring the Loan current or to pay off the Loan in full, please call 866-503-5559.*
**(Continued on back/next page)**



NOTICE OF SUBSTITUTE TRUSTEE'S SALE

STATE OF MISSISSIPPI
COUNTY OF 1ST DISTRICT HARRISON

WHEREAS, default has occurred in the performance of the covenants, terms and conditions of a Deed of Trust dated October 26, 2011, executed by PAUL B CALDARERA conveying certain real property therein described to PREMIER REVERSE CLOSINGS, LA PALMA, as Trustee, for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. AS BENEFICIARY, AS NOMINEE FOR GENERATION MORTGAGE COMPANY, Original Beneficiary, to secure the indebtedness therein described, as same appears of record in the office of the Chancery Clerk of 1st District Harrison County, Mississippi filed and recorded November 14, 2011, at Instrument Number 2011-9971-T-J1; and
WHEREAS, the beneficial interest of said Deed of Trust was transferred and assigned to Bank of New York Mellon Trust Company, N.A. as Trustee for Mortgage Assets Management Series I Trust; and
WHEREAS, Rubin Lublin, LLC has been appointed as Substitute Trustee; and
NOW, THEREFORE, the holder of said Deed of Trust, having requested the undersigned so to do, as Substitute Trustee or his duly appointed agent, by virtue of the power, duty and authority vested and imposed upon said Substitute Trustee shall, on **April 9, 2025** within the lawful hours of sale between 11:00AM and 4:00PM at the front door on the east side of the Courthouse proceed to sell at public outcry to the highest and best bidder for cash or certified funds ONLY, the following described property situated in 1st District Harrison County, Mississippi, to wit:

THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF MISSISSIPPI, COUNTY OF HARRISON, AND IS DESCRIBED AS FOLLOWS: THE FOLLOWING DESCRIBED LAND SITUATED IN THE CITY OF LONG BEACH, HARRISON COUNTY, FIRST JUDICIAL DISTRICT, MISSISSIPPI, TO WIT: LOTS 6, 7, 8, 9 AND 10, BLOCK 1, SEA SHORE SUBDIVISION, A SUBDIVISION ACCORDING TO THE OFFICIAL MAP OR PLAT THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE CHANCERY CLERK OF HARRISON COUNTY, MISSISSIPPI, FIRST JUDICIAL DISTRICT, WITH ALL IMPROVEMENTS THEREON AND APPURTENANCES THEREUNTO BELONGING. PARCEL NUMBER(S): 0512H-02-091-000

PROPERTY ADDRESS: The street address of the property is believed to be **105 S SEASHORE AVE, LONG BEACH, MS 39560**. In the event of any discrepancy between this street address and the legal description of the property, the legal description shall control.

Title to the above described property is believed to be good, but I will convey only such title as is vested in me as Substitute Trustee.

THIS LAW FIRM IS ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Rubin Lublin, LLC
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071
rlselaw.com/property-listing



Rubin Lublin, LLC
P.O. Box 502830
San Diego, CA 92150-2830

IMPORTANT INFORMATION
ENCLOSED



(11) 969 0024 8943 5096 9

**Mailed On:** 02/28/2025       **Order Number:**    0006809-01    FC
**ClientID:**    Ru_Lu000904       **Reference Number:** 24-02805

MS Center for Legal Services Corporation
414 South State Street, Suite 300
P.O. Box 951
Jackson, MS 39205



RECEIVED

MAR 9 ± 2025

BY: .................

BY:

1350548051 ECCS

**Exhibit J**



# MISSISSIPPI CENTER FOR LEGAL SERVICES CORPORATION

*serving* **43** *counties*

March 5, 2025

***VIA CERTIFIED MAIL***

"Equal Justice for All"

☐ **Administrative, VOCA & Hattiesburg Office**
111 East Front Street (39401)
Post Office Drawer 1728
Hattiesburg, MS 39403-1728
(601) 545-2950
(800) 773-1737
Fax: (601) 545-2935

☐ **Gulfport Office**
520 E. Pass Road, Suite J (39506)
Post Office Box 8691
Gulfport, MS 39507
(228) 896-9148
(877) 664-0238
Fax: (228) 896-9345

■ **Jackson, VOCA & State Initiatives Office**
414 South State Street
Suite 300 (39201)
Post Office Box 951
Jackson, MS 39205-0951
(601) 948-6752
(800) 959-6752
Fax: (601) 948-6757
Fax: (601) 948-6759

☐ **McComb Office**
221 Main Street (39648)
Post Office Box 575
McComb, MS 39649-0575
(601) 684-0578
(800) 898-0985
Fax: (601) 684-0575

☐ **Meridian Office**
2305 Fifth Street
2nd Floor (39302)
Post Office Box 1931
Meridian, MS 39302-1931
(601) 693-5470
(888) 631-9161
Fax: (601) 693-5473

PHH Mortgage Services
P.O. Box 66002
Lawrenceville, NJ 08648

Rubin Lublin, LLC
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071

Bank of New York Mellon Trust Company, N.A.
As Trustee for Mortgage Assets Management Series I Trust
240 Greenwich St.
New York, NY 10286

**Re: Notice of Error and Request for Information**
**Mr. Paul Bernard Caldarera**
**Loan Number: 1061101579**
**Property Address: 105 South Seashore Ave, Long Beach, MS 39560**

To Whom It May Concern,

Pursuant to the Real Estate Settlement Procedures Act ("RESPA"), **12 U.S.C. § 2605(e)** and **12 C.F.R. §§ 1024.35, 1024.36**, this letter serves as both a **Notice of Error (NOE)** and **Request for Information (RFI)** regarding the servicing of the above-referenced reverse mortgage loan.

**I. NOTICE OF ERROR**

This notice is submitted due to PHH Mortgage Services' imposition of a **fraudulent flood insurance requirement** and potential **false certifications made to HUD** in connection with Mr. Caldera's reverse mortgage. The specific errors are as follows:

1.    **Misrepresentation of HUD Requirements:** PHH falsely claimed that HUD requires flood insurance for Mr. Caldera's reverse mortgage, despite the waiver of such requirement at the time the original loan was closed.

2.    **False Certifications to HUD:** PHH may have submitted certifications to HUD stating that it complied with all FHA HECM servicing regulations while **imposing unauthorized insurance obligations**.

PHH Mortgage Services, et al                                              Page 2
March 5, 2025
--------------------------------

3. **Retaining Overpayments from Federal Funds:** PHH continued to receive FHA insurance benefits while imposing **unauthorized charges**, which may constitute an FCA violation under **31 U.S.C. § 3729 et seq.**

4. **Improper Force-Placed Insurance Practices:** PHH failed to provide proper disclosures and notice before imposing flood insurance, violating **RESPA, 12 U.S.C. § 2605(l) and 12 C.F.R. § 1024.37.**

5. **Failure to Properly Respond to Prior NOE and RFI:** PHH failed to fully address the August 20, 2024, NOE, which pointed out that PHH misrepresented insurance obligations.

## II. REQUEST FOR INFORMATION

Pursuant to **12 C.F.R. § 1024.36**, please provide the following documents within **30 business days**:

1. **Any and all documents or communications between PHH and HUD** regarding flood insurance requirements for reverse mortgage loans.

2. **A copy of any certifications made by PHH to HUD** regarding compliance with servicing requirements for this loan.

3. **All internal PHH policies and procedures** regarding force-placed insurance on HECM loans.

4. **Any correspondence or memos** related to PHH's decision to require flood insurance for Mr. Caldera's loan.

5. **All invoices, escrow calculations, and payment records** related to any force-placed insurance imposed on Mr. Caldera's loan.

6. **Any record of payments received from HUD** in connection with Mr. Caldera's loan from 2021 to present.

## III. DEMAND FOR CORRECTIVE ACTION

We demand that PHH immediately:

- **Cease all foreclosure proceedings** related to the improper flood insurance charge.
- **Remove all charges related to force-placed flood insurance** from Mr. Caldera's account.
- **Provide written confirmation** that PHH has not falsely certified compliance with HUD regulations.
- **Correct any records that have been submitted to HUD** with false information regarding flood insurance.

If PHH fails to respond adequately within the required timeframe, we will pursue **litigation under RESPA, the False Claims Act, and all other applicable federal and state laws**.

Please direct all future correspondence regarding this matter to my office.

PHH Mortgage Services, et al                                           Page 3
March 5, 2025
---------------------------------

                                          Respectfully submitted,

                                          *W. David Watkins, Sr.*
                                          _____
                                          W. David Watkins, Sr.

Cc:    Mr. Paul Caldarera
       C. Elise Hickman Lowery, Esq.
       Director of Litigation, MCLSC
       Telephone: 228.260.0933, ext. 2507
       celowery@mslegalservices.org

**W. David Watkins, Sr.**
wwatkins@mslegalservices.org
Foreclosure Defense Staff Attorney
414 South State Street
Suite 300
Post Office Box 951
Jackson, MS 39205-0951
(601) 427-3650

# Exhibit K

**W. David Watkins**

---

**From:**           Reverse Customer Assist <customerassist@phhreverse.com>
**Sent:**           Monday, March 10, 2025 3:29 PM
**To:**             W. David Watkins
**Subject:**        [EXTERNAL Email]  Auto Reply: We Received Your Message


Thank you for your email to PHH Mortgage Services.  This is a confirmation that we have received your request regarding your reverse mortgage. We will promptly review your request, perform any required research and email you a detailed response.  Please contact us if you have any questions.
CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.



# MISSISSIPPI CENTER FOR LEGAL SERVICES CORPORATION

*serving* **43** *counties*

March 5, 2025

***VIA CERTIFIED MAIL***

**"Equal Justice for All"**

☐ **Administrative, VOCA
& Hattiesburg Office**
111 East Front Street (39401)
Post Office Drawer 1728
Hattiesburg, MS 39403-1728
(601) 545-2950
(800) 773-1737
Fax: (601) 545-2935

☐ **Gulfport Office**
520 E. Pass Road, Suite J (39506)
Post Office Box 8691
Gulfport, MS 39507
(228) 896-9148
(877) 664-0238
Fax: (228) 896-9345

■ **Jackson, VOCA &
State Initiatives Office**
414 South State Street
Suite 300 (39201)
Post Office Box 951
Jackson, MS 39205-0951
(601) 948-6752
(800) 959-6752
Fax: (601) 948-6757
Fax: (601) 948-6759

☐ **McComb Office**
221 Main Street (39648)
Post Office Box 575
McComb, MS 39649-0575
(601) 684-0578
(800) 898-0985
Fax: (601) 684-0575

☐ **Meridian Office**
2305 Fifth Street
2nd Floor (39302)
Post Office Box 1931
Meridian, MS 39302-1931
(601) 693-5470
(888) 631-9161
Fax: (601) 693-5473

PHH Mortgage Services
P.O. Box 66002
Lawrenceville, NJ 08648

Rubin Lublin, LLC
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071

Bank of New York Mellon Trust Company, N.A.
As Trustee for Mortgage Assets Management Series I Trust
240 Greenwich St.
New York, NY 10286

**Re: Notice of Error and Request for Information**
**Mr. Paul Bernard Caldarera**
**Loan Number: 1061101579**
**Property Address: 105 South Seashore Ave, Long Beach, MS 39560**

To Whom It May Concern,

Pursuant to the Real Estate Settlement Procedures Act ("RESPA"), **12 U.S.C. § 2605(e)** and **12 C.F.R. §§ 1024.35, 1024.36**, this letter serves as both a **Notice of Error (NOE)** and **Request for Information (RFI)** regarding the servicing of the above-referenced reverse mortgage loan.

**I. NOTICE OF ERROR**

This notice is submitted due to PHH Mortgage Services' imposition of a **fraudulent flood insurance requirement** and potential **false certifications made to HUD** in connection with Mr. Caldera's reverse mortgage. The specific errors are as follows:

1.    **Misrepresentation of HUD Requirements:** PHH falsely claimed that HUD requires flood insurance for Mr. Caldera's reverse mortgage, despite the waiver of such requirement at the time the original loan was closed.

2.    **False Certifications to HUD:** PHH may have submitted certifications to HUD stating that it complied with all FHA HECM servicing regulations while **imposing unauthorized insurance obligations.**

PHH Mortgage Services, et al                                                    Page 2
March 5, 2025
--------------------------------

3. **Retaining Overpayments from Federal Funds:** PHH continued to receive FHA insurance benefits while imposing **unauthorized charges**, which may constitute an FCA violation under **31 U.S.C. § 3729 et seq.**

4. **Improper Force-Placed Insurance Practices:** PHH failed to provide proper disclosures and notice before imposing flood insurance, violating **RESPA, 12 U.S.C. § 2605(l) and 12 C.F.R. § 1024.37.**

5. **Failure to Properly Respond to Prior NOE and RFI:** PHH failed to fully address the August 20, 2024, NOE, which pointed out that PHH misrepresented insurance obligations.

## II. REQUEST FOR INFORMATION

Pursuant to **12 C.F.R. § 1024.36**, please provide the following documents within **30 business days**:

1. **Any and all documents or communications between PHH and HUD** regarding flood insurance requirements for reverse mortgage loans.

2. **A copy of any certifications made by PHH to HUD** regarding compliance with servicing requirements for this loan.

3. **All internal PHH policies and procedures** regarding force-placed insurance on HECM loans.

4. **Any correspondence or memos** related to PHH's decision to require flood insurance for Mr. Caldera's loan.

5. **All invoices, escrow calculations, and payment records** related to any force-placed insurance imposed on Mr. Caldera's loan.

6. **Any record of payments received from HUD** in connection with Mr. Caldera's loan from 2021 to present.

## III. DEMAND FOR CORRECTIVE ACTION

We demand that PHH immediately:

- **Cease all foreclosure proceedings** related to the improper flood insurance charge.

- **Remove all charges related to force-placed flood insurance** from Mr. Caldera's account.

- **Provide written confirmation** that PHH has not falsely certified compliance with HUD regulations.

- **Correct any records that have been submitted to HUD** with false information regarding flood insurance.

If PHH fails to respond adequately within the required timeframe, we will pursue **litigation under RESPA, the False Claims Act, and all other applicable federal and state laws**.

Please direct all future correspondence regarding this matter to my office.

PHH Mortgage Services, et al                                                    Page 3
March 5, 2025
---------------------------------

                                              Respectfully submitted,

                                              _W. David Watkins_

                                              W. David Watkins, Sr.

Cc:     Mr. Paul Caldarera
        C. Elise Hickman Lowery, Esq.
        Director of Litigation, MCLSC
        Telephone: 228.260.0933, ext. 2507
        celowery@mslegalservices.org

**_W. David Watkins, Sr._**
wwatkins@mslegalservices.org
Foreclosure Defense Staff Attorney
414 South State Street
Suite 300
Post Office Box 951
Jackson, MS 39205-0951
(601) 427-3650

# RUBIN LUBLIN, LLC

Attorneys and Counselors at Law
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071
TEL (877) 813-0992
FAX (470) 508-9401

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**Copy Via Regular Mail**

February 28, 2025

MS Center for Legal Services Corporation (Borrower Attorney for CALDARERA, PAUL B.)
414 South State Street, Suite 300
P.O. Box 951
Jackson, MS 39205

*Notice of Acceleration and Foreclosure*

| | |
|---|---|
| **File No.:** | **RMU-24-02805-5** |
| **Loan:** | **Deed of Trust from PAUL B CALDARERA to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. AS BENEFICIARY, AS NOMINEE FOR GENERATION MORTGAGE COMPANY ("Original Lender")** |
| **Property Address:** | **105 S SEASHORE AVE, LONG BEACH, MS 39560** |

      Please be advised that this law firm represents Bank of New York Mellon Trust Company, N.A. as Trustee for Mortgage Assets Management Series I Trust ("Foreclosing Entity"), successor in interest to the Original Lender on the above-referenced Loan. By separate communication you may have been advised of your rights under the Fair Debt Collection Practices Act (the "FDCPA"), should that Act apply to this proceeding. Nothing in this letter shall prevent you from exercising those rights as set forth in that communication. This letter is to advise you that we have been retained to institute non-judicial foreclosure proceedings against the referenced property. Enclosed you will find a copy of the Notice of Substitute Trustee's Sale that was submitted for publication in connection with a foreclosure sale of the above property. The foreclosure sale is scheduled for **April 9, 2025** ("Sale Date").

      The indebtedness secured by said Deed of Trust has been and is hereby declared due because of default under the terms of said Deed of Trust. *The total amount of the debt owed may consist of unpaid principal balance, any unpaid accrued interest, escrow/impound shortages or credits, late charges, legal fees/costs, and other charges. To find out the amount needed to either bring the Loan current or to pay off the Loan in full, please call 866-503-5559.*
**(Continued on back/next page)**



NOTICE OF SUBSTITUTE TRUSTEE'S SALE

STATE OF MISSISSIPPI
COUNTY OF 1ST DISTRICT HARRISON

WHEREAS, default has occurred in the performance of the covenants, terms and conditions of
a Deed of Trust dated October 26, 2011, executed by PAUL B CALDARERA conveying
certain real property therein described to PREMIER REVERSE CLOSINGS, LA PALMA, as
Trustee, for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. AS
BENEFICIARY, AS NOMINEE FOR GENERATION MORTGAGE COMPANY, Original
Beneficiary, to secure the indebtedness therein described, as same appears of record in the
office of the Chancery Clerk of 1st District Harrison County, Mississippi filed and recorded
November 14, 2011, at Instrument Number 2011-9971-T-J1; and
WHEREAS, the beneficial interest of said Deed of Trust was transferred and assigned to
Bank of New York Mellon Trust Company, N.A. as Trustee for Mortgage Assets
Management Series I Trust; and
WHEREAS, Rubin Lublin, LLC has been appointed as Substitute Trustee; and
NOW, THEREFORE, the holder of said Deed of Trust, having requested the undersigned so
to do, as Substitute Trustee or his duly appointed agent, by virtue of the power, duty and
authority vested and imposed upon said Substitute Trustee shall, on **April 9, 2025** within the
lawful hours of sale between 11:00AM and 4:00PM at the front door on the east side of the
Courthouse proceed to sell at public outcry to the highest and best bidder for cash or
certified funds ONLY, the following described property situated in 1st District Harrison
County, Mississippi, to wit:

THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF MISSISSIPPI,
COUNTY OF HARRISON, AND IS DESCRIBED AS FOLLOWS: THE FOLLOWING
DESCRIBED LAND SITUATED IN THE CITY OF LONG BEACH, HARRISON
COUNTY, FIRST JUDICIAL DISTRICT, MISSISSIPPI, TO WIT: LOTS 6, 7, 8, 9 AND
10, BLOCK 1, SEA SHORE SUBDIVISION, A SUBDIVISION ACCORDING TO THE
OFFICIAL MAP OR PLAT THEREOF ON FILE AND OF RECORD IN THE OFFICE OF
THE CHANCERY CLERK OF HARRISON COUNTY, MISSISSIPPI, FIRST JUDICIAL
DISTRICT, WITH ALL IMPROVEMENTS THEREON AND APPURTENANCES
THEREUNTO BELONGING. PARCEL NUMBER(S): 0512H-02-091-000

PROPERTY ADDRESS: The street address of the property is believed to be **105 S
SEASHORE AVE, LONG BEACH, MS 39560.** In the event of any discrepancy between
this street address and the legal description of the property, the legal description shall
control.

Title to the above described property is believed to be good, but I will convey only such title
as is vested in me as Substitute Trustee.

THIS LAW FIRM IS ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE.

Rubin Lublin, LLC
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071
rlselaw.com/property-listing



Rubin Lublin, LLC
P.O. Box 502830
San Diego, CA 92150-2830

IMPORTANT INFORMATION
ENCLOSED



(11) 969 0024 8943 5096 9

**Mailed On:** 02/28/2025        **Order Number:**      0006809-01    FC
**ClientID:**    Ru_Lu000904     **Reference Number:** 24-02805

MS Center for Legal Services Corporation
414 South State Street, Suite 300
P.O. Box 951
Jackson, MS 39205



RECEIVED

MAR 9 ... 2025

BY: ..........

**IN THE CHANCERY COURT OF HARRISON COUNTY, MISSISSIPPI**
**FIRST JUDICIAL DISTRICT**

# FILED

APR - 7 2025

**ANGELA THRASH**
**CHANCERY CLERK**

BY_____D.C.

PAUL B. CALDARERA,
        **Plaintiff,**

v.

CIVIL ACTION NO.: 25-687(3)

PHH MORTGAGE SERVICES and
BANK OF NEW YORK MELLON TRUST
COMPANY, N.A., AS TRUSTEE FOR
MORTGAGE ASSETS MANAGEMENT SERIES I
TRUST,
        **Defendants.**

## ATTORNEY'S AFFIDAVIT

STATE OF MISSISSIPPI
COUNTY OF HARRISON

PERSONALLY, CAME, AND APPEARED before me, the undersigned authority in and for the county and state, James B. Wright, who being by me first duly sworn, according to law, states as follows;

1. I am counsel of record for the Plaintiff, Paul B. Caldarera in the above styled cause.
2. That the Plaintiff has filed a Complaint in this cause and is seeking a Temporary Restraining Order against the Defendants in this action to other relief.
3. That no notice was given to the Defendant in this cause given the exigency of this matter and the noticed foreclosure sale of April 9, 2025; that the threat of immediate and irreparable harm, to the Plaintiff caused by the scheduled foreclosure sale made it impractical to give notice to the Defendants, a foreign corporation and non-resident Defendant, and give an opportunity to have this matter noticed for hearing
4. That given the immediate and irreparable harm to the Plaintiff a hearing in this cause without notice to the Defendants is proper and the harm to the Plaintiff outweighs any potential harm to the Defendants in this matter.

_____
JAMES B. WRIGHT

SWORN TO AND SUBSCRIBED before me on this the 7th day of April 2025.

_____
Notary Public

My commission expires:

_____

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 369041
MARY LEXIS BARRET
Commission Expires:
Aug. 20, 2027
JACKSON COUNTY

1

**IN THE CHANCERY COURT OF HARRISON COUNTY, MISSISSIPPI**
**FIRST JUDICIAL DISTRICT**

FILED

APR - 7 2025

ANGELA THRASH
CHANCERY CLERK
BY _____ D.C.

| |
|---|
| PAUL B. CALDARERA, |
| **Plaintiff,** |
| |
| **v.** |
| |
| PHH MORTGAGE SERVICES and |
| BANK OF NEW YORK MELLON TRUST |
| COMPANY, N.A., AS TRUSTEE FOR |
| MORTGAGE ASSETS MANAGEMENT SERIES I |
| TRUST, |
| **Defendants.** |

CIVIL ACTION NO.: 25-647 (3)

**TEMPORARY RESTRAINING ORDER**

THIS DAY, THIS MATER came before the Court on the request for Temporary Restraining

Order filed by the Plaintiff, Paul B. Caldarera, and the Court having reviewed the verified and

sworn Complaint, hearing from counsel and reviewing the documents submitted in support of

same finds the motion is well taken and a Temporary Restraining Order should be granted

pursuant to Miss. R. Civ. P. 65. It is therefore, FOUND, ORDERED, and ADJUDGED as

follows:

1.  This Court has jurisdiction over the parties and subject matter herein.

2.  That the Plaintiff has met his burden pursuant to Miss. R. Civ. P. 65 and shown that there

    exist the likelihood of immediate and irreparable harm should this Court not restrain and

    enjoin the Defendants from conducting the foreclosure sale of the property located at 105

    South Seashore Ave, Long Beach, MS 39520, on April 9, 2025; specifically, that the

    Plaintiff will lose his place of residence and a valuable asset and will be rendered

homeless; that he will suffer irreparable harm as a result of the loss of his home, financial

damages, and other damages which are irreparable and immediate;

3. That the Plaintiff, through counsel, made exhaustive efforts to communicate with the

   Defendants regarding the loan. Counsel communicate with the attorneys for trustee, all in

   efforts to work with the Defendants on behalf of the Plaintiff and each of those efforts

   have been thwarted by the Defendants.

4. That the Defendants intentionally misled, miscommunicated, and misinformed Plaintiff

   and Plaintiff's counsel as to the steps necessary to prevent foreclosure.

5. That these acts, perpetrated by the Defendants, have left the Plaintiff in a position that he

   will suffer immediate and irreparable harm should this Court not intervene through

   issuance of a Temporary Restraining Order.

6. That the Defendant's and/or their agents shall be restrained and enjoined from selling,

   transferring, or in any other manner disposing of the property subject of this action

   located at 105 South Seashore Ave, Long Beach, MS 39520, through foreclosure sale or

   auction until further order of this Court or until the expiration of this Order;

7. That the matter shall be reset for hearing before the Court on the __17__ day of __April__

   2025 at the Chancery Courthouse located at __Gulfport__, __Harr.__, MS.

8. That no notice was given to the Defendants in this cause given the exigency of this matter

   and the noticed foreclosure sale of April 9, 2025; that the threat of immediate and

   irreparable harm to the Plaintiff caused by the scheduled foreclosure sale made it

   impractical to give notice to the Defendants, a foreign corporation and non-resident

   Defendant, and give an opportunity to have this matter noticed for hearing.

9. That given the immediate and irreparable harm to the Plaintiff, a hearing in this cause without notice to the Defendants is proper and the harm to the Plaintiff, a hearing in this cause without notice to the Defendants is proper and the harm to the Plaintiff outweighs any potential harm to the Defendants in this matter. *ma*

*Bond shall be posted in the amount of $250.00.*

10. That the Defendants shall be immediately served with a copy of this Order pursuant to law.

SO ORDERED and ADJUDGED, this the ___7___ day of April 2025 at __1:30__ am/(pm.)

_____

JAMES B. WRIGHT

Prepared by:

_____

James B. Wright, MSB#8791
Attorney for Paul B. Caldarera
Mississippi Center for Legal Services Corp.
520 East Pass Rd., Suite J
Gulfport, MS 39507
T: 228-896-9148
F: 228-896-9345
jwright@mslegalservices.org



**IN THE CHANCERY COURT OF HARRISON COUNTY, MISSISSIPPI**
**FIRST JUDICIAL DISTRICT**

PAUL B. CALDARERA,
    **Plaintiff,**

v.

PHH MORTGAGE SERVICES and
BANK OF NEW YORK MELLON TRUST
COMPANY, N.A., AS TRUSTEE FOR
MORTGAGE ASSETS MANAGEMENT
SERIES I TRUST,
    **Defendants.**

CIVIL ACTION NO.: <u>25-687 MA</u>

## RULE 4 (30 DAYS) SUMMONS

TO:    **BANK OF NE YORK MELLON TRUST CO, N.A., AS**
        **TRUSTEE FOR MORTGAGE ASSETS MANAGEMENT SERIES I TRUST**
        **240 GREENWICH STREET**
        **NEW YORK, NEW YORK 10286**

**NOTICE TO DEFENDANT THE COMPLAINT OR PETITION, WHICH IS ATTACHED TO
THIS SUMMONS, IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO
PROTECT YOUR RIGHTS.**

You are required to mail, or hand deliver a copy of written response for this Petition or
Complaint to the Honorable James B. Wright the attorney for the Plaintiff, whose address
is 520 East Pass Rd., Suite J, Gulfport, MS 39507

Your response must be mailed or delivered no later than (30) days from the date of delivery
of this summons.   If your response is not mailed or delivered, a judgment by default will
be entered against you for the relief demanded in this complaint.   You must also file the
original of your response with the Clerk of this Court within a reasonable time afterward.
Issued under my hand and the seal of said Court, this 8M day of April, 2025

BY: _____, D.C.
**ANGELA THRASH, CHANCERY CLERK**
**HARRISON COUNTY, MISSISSIPPI**
**POST OFFICE DRAWER CC**
**GULFPORT, MS 39502**

Prepared by:

James B. Wright, MS Bar # 8791
Attorney for Plaintiff
Mississippi Center for Legal Services Corp.
520 East Pass Rd., Suite J
Gulfport, MS 39507
Tel:  228-896-9148
Fax:  228-896-9345
jwright@mslegalservices.org

**IN THE CHANCERY COURT OF HARRISON COUNTY, MISSISSIPPI
FIRST JUDICIAL DISTRICT**

PAUL B. CALDARERA,
     Plaintiff,

v.

PHH MORTGAGE SERVICES and
BANK OF NEW YORK MELLON
TRUST COMPANY, N.A., AS
TRUSTEE FOR MORTGAGE ASSETS
MANAGEMENT SERIES I TRUST,
     Defendants.

CIVIL ACTION NO.: <u>25-687 MA</u>

## <u>RULE 4 (30 DAY) SUMMONS</u>

TO:    **PHH MORTGAGE SERVICES
c/o CT CORPORATION SYSTEM
631 LAKELAND EAST DRIVE
FLOWOOD, MS 39232**

**NOTICE TO DEFENDANT THE COMPLAINT OR PETITION, WHICH IS ATTACHED TO
THIS SUMMONS, IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO
PROTECT YOUR RIGHTS.**

You are required to mail, or hand deliver a copy of written response for this Petition or
Complaint to the Honorable James B. Wright the attorney for the Plaintiff, whose address
is 520 East Pass Rd., Suite J, Gulfport, MS 39507

Your response must be mailed or delivered no later than (30) days from the date of delivery
of this summons.   If your response is not mailed or delivered, a judgment by default will
be entered against you for the relief demanded in this complaint.   You must also file the
original of your response with the Clerk of this Court within a reasonable time afterward.
Issued under my hand and the seal of said Court, this 8th day of April , 2025.

BY: _____, D.C.
**ANGELA THRASH, CHANCERY CLERK
HARRISON COUNTY, MISSISSIPPI
POST OFFICE DRAWER CC
GULFPORT, MS 39502**

Prepared by:

James B. Wright, MS Bar # 8791
Attorney for Plaintiff
Mississippi Center for Legal Services Corp.
520 East Pass Rd., Suite J
Gulfport, MS 39507
Tel:   228-896-9148
Fax:   228-896-9345
jwright@mslegalservices.org

## IN THE CHANCERY COURT OF HARRISON COUNTY, MISSISSIPPI
### FIRST JUDICIAL DISTRICT

PAUL B. CALDARERA,
          Plaintiff,

v.

PHH MORTGAGE SERVICES and
BANK OF NEW YORK MELLON
TRUST COMPANY, N.A., AS TRUSTEE
FOR MORTGAGE ASSETS
MANAGEMENT SERIES I TRUST,
          Defendants.

CIVIL ACTION NO.: <u>25-687 MA</u>

### <u>RULE 81 SUMMONS</u>

TO:     BANK OF NE YORK MELLON TRUST CO, N.A., AS
        TRUSTEE FOR MORTGAGE ASSETS MANAGEMENT SERIES I TRUST
        240 GREENWICH STREET
        NEW YORK, NEW YORK 10286

        You have been made a Defendant in the attached above referenced suit filed in this Court by **Paul B. Caldarera**, Plaintiff.

        You are summoned to appear and defend against the complaint or petition filed against you in this action at <u>9:00 a.m.</u>, on the <u>17th</u> day of <u>April, 2025</u> before the Honorable Judge Alfonso in the courtroom of the **Harrison County Chancery Courthouse in Biloxi, Mississippi**, located at 730 Dr. Martin Luther King, Jr. Blvd., and in case of your failure to appear and defend a judgment will be entered against you for the money or other things demanded in the complaint or petition.

        You are not required to file an answer or other pleading, but you may do so if you desire.

        Issued under my hand and the seal of said Court, this the ___8th___ day of __April__, 2025.

                        ANGELA THRASH, CHANCERY CLERK
                        HARRISON COUNTY, MISSISSIPPI
                        PO BOX CC
                        GULFPORT, MS 39502

                By _____    D.C.

Prepared by:

James B. Wright, MSB# 8791
Attorney for Paul B. Caldarera
Mississippi Center for Legal Services Corp.
520 East Pass Rd., Suite J
Gulfport, MS 39507
T:   228-896-9148 Ext. 2559
F:   228-896-9345
jwright@mslegalservices.org

**IN THE CHANCERY COURT OF HARRISON COUNTY, MISSISSIPPI**
**FIRST JUDICIAL DISTRICT**

PAUL B. CALDARERA,
     Plaintiff,

v.

PHH MORTGAGE SERVICES and
BANK OF NEW YORK MELLON
TRUST COMPANY, N.A., AS TRUSTEE
FOR MORTGAGE ASSETS
MANAGEMENT SERIES I TRUST,
     Defendants.

CIVIL ACTION NO.: <u>25-687 MA</u>

<u>**RULE 81 SUMMONS**</u>

TO:    PHH MORTGAGE SERVICES
       c/o CT CORPORATION SYSTEM
       631 LAKELAND EAST DRIVE
       FLOWOOD, MS 39232

       You have been made a Defendant in the attached above referenced suit filed in this Court by **Paul B. Caldarera**, Plaintiff.

       You are summoned to appear and defend against the complaint or petition filed against you in this action at **9:00 a.m., on the 17th day of April, 2025** before the Honorable Judge Alfonso in the courtroom of the **Harrison County Chancery Courthouse in Biloxi, Mississippi**, located at 730 Dr. Martin Luther King, Jr. Blvd., and in case of your failure to appear and defend a judgment will be entered against you for the money or other things demanded in the complaint or petition.

       You are not required to file an answer or other pleading, but you may do so if you desire.

       Issued under my hand and the seal of said Court, this the ____ day of ____, 2025.

       **ANGELA THRASH, CHANCERY CLERK**
       **HARRISON COUNTY, MISSISSIPPI**
       **PO BOX CC**
       **GULFPORT, MS 39502**

       By _____ D.C.

Prepared by:

James B. Wright, MSB# 8791
Attorney for Paul B. Caldarera
Mississippi Center for Legal Services Corp.
520 East Pass Rd., Suite J
Gulfport, MS 39507
T:  228-896-9148 Ext. 2559
F:  228-896-9345
Jwright@mslegalservices.org

**IN THE CHANCERY COURT OF HARRISON COUNTY, MISSISSIPPI**
**FIRST JUDICIAL DISTRICT**

FILED

APR 17 2025

ANGELA THRASH
CHANCERY CLERK
BY _Jenna Vancel_ D.C.

PAUL B. CALDARERA,
    **Plaintiff,**

v.

PHH MORTGAGE SERVICES and
BANK OF NEW YORK MELLON TRUST
COMPANY, N.A., AS TRUSTEE FOR
MORTGAGE ASSETS MANAGEMENT
SERIES I TRUST,
    **Defendants.**

CIVIL ACTION NO.: **25-687 MA**

## AGREED ORDER RE-SETTING CASE

**THIS MATTER** was set to come on for hearing on Thursday, April 17, 2025 at 9:00 a.m.
The parties have agreed to continue this matter to Thursday, May 22, 2025 at 9:00 a.m., thereby
extending the restraining order granted on April 9, 2025.

    **IT IS THEREFORE ORDERED AND ADJUDGED** that this matter is continued from
the date of Thursday, April 17, 2025 at 9:00 a.m. to Thursday, May 22, 2025 at 9:00 a.m. before
the Honorable Margaret Alfonso in the Chancery Court of Harrison County, Mississippi, located in
Gulfport, Mississippi and that the Temporary Restraining Order is extended till May 22, 2025.

    **SO ORDERD AND ADJUDGED** this the 17 day of _April_, 2025.

_Margaret Alfonso_
**CHANCELLOR**

**AGREED AS TO FORM AND CONTENT**

_Johnny Nelms_
Johnny Nelms
Attorney for Defendant, _By Special Appearance Only_

_James B. Wright_
James B. Wright
Attorney for Plaintiff

_Mailed_

Prepared by:
James B. Wright, MS Bar No. 8791
MS Center for Legal Services
520 East Pass Rd., Suite J
Gulfport, MS 39507
T: (228) 896-9148 ext. 2559
F: (228) 896-9345
jwright@mslegalservices.org

RSI

## IN THE CHANCERY COURT OF HARRISON COUNTY, MISSISSIPPI
### FIRST JUDICIAL DISTRICT

PAUL B. CALDARERA,
   Plaintiff,

v.

PHH MORTGAGE SERVICES and
BANK OF NEW YORK MELLON
TRUST COMPANY, N.A., AS TRUSTEE
FOR MORTGAGE ASSETS
MANAGEMENT SERIES I TRUST,
   Defendants.

CIVIL ACTION NO.: <u>25-687 MA</u>

### RULE 81 SUMMONS

TO:   **PHH MORTGAGE SERVICES**
      c/o **CT CORPORATION SYSTEM**
      ~~645-631~~ **LAKELAND EAST DRIVE**   ste 101
      **FLOWOOD, MS 39232**



RECEIVED
APR 10 2025
RANKIN CO. SHERIFF DEPT.

     You have been made a Defendant in the attached above referenced suit filed in this Court by **Paul B. Caldarera**, Plaintiff.

     You are summoned to appear and defend against the complaint or petition filed against you in this action at **9:00 a.m., on the 17th day of April, 2025** before the Honorable Judge Alfonso in the courtroom of the **Harrison County Chancery Courthouse in Biloxi, Mississippi**, located at 730 Dr. Martin Luther King, Jr. Blvd., and in case of your failure to appear and defend a judgment will be entered against you for the money or other things demanded in the complaint or petition.

     You are not required to file an answer or other pleading, but you may do so if you desire.

     Issued under my hand and the seal of said Court, this the ____ day of ____, 2025.

ANGELA THRASH, CHANCERY CLERK
HARRISON COUNTY, MISSISSIPPI
PO BOX CC
GULFPORT, MS 39502

By _____   D.C.

Prepared by:

James D. Wright, MSB# 8791
Attorney for Paul B. Caldarera
Mississippi Center for Legal Services Corp.
520 East Pass Rd., Suite J
Gulfport, MS 39507
T:  228-896-9148 Ext. 2559
F:  228-896-9345
Jwright@mslegalservices.org

3

STATE OF MISSISSIPPI
COUNTY OF RANKIN
I have this day executed the within writ by personally
delivering true copies of the within writ
to _PHH Mortgage Services via Matt Thibodeaux_
By Serving C. T. Corp. Agent
This the __16__ day of __Apr__, 20 _25_
BRYAN BAILEY SHERIFF

BY _____ RSH D.S.

STATE OF MISSISSIPPI
COUNTY OF RANKIN
I have this day executed the within writ by personally
delivering true copies of the within writ
to _PHH Mortgage Services via Matt Thibodeaux_
By Serving C. T. Corp. Agent
This the _16_ day of _Apr_ , 20 _25_
BRYAN BAILEY, SHERIFF

BY _____  _____ RSJ  D.S._

RSI

## IN THE CHANCERY COURT OF HARRISON COUNTY, MISSISSIPPI
### FIRST JUDICIAL DISTRICT

**PAUL B. CALDARERA,**
    **Plaintiff,**

**v.**

**PHH MORTGAGE SERVICES and**
**BANK OF NEW YORK MELLON**
**TRUST COMPANY, N.A., AS TRUSTEE**
**FOR MORTGAGE ASSETS**
**MANAGEMENT SERIES I TRUST,**
    **Defendants.**

**CIVIL ACTION NO.: 25-687 MA**

### RULE 81 SUMMONS

RECEIVED
APR 10 2025
RANKIN CO. SHERIFF DEPT.

**TO:**   **PHH MORTGAGE SERVICES**
      c/o **CT CORPORATION SYSTEM**
      645 631 LAKELAND EAST DRIVE ste 101
      **FLOWOOD, MS 39232**

    You have been made a Defendant in the attached above referenced suit filed in this Court by **Paul B. Caldarera,** Plaintiff.

    You are summoned to appear and defend against the complaint or petition filed against you in this action at **9:00 a.m., on the 17th day of April, 2025** before the Honorable Judge Alfonso in the courtroom of the **Harrison County Chancery Courthouse in Biloxi, Mississippi,** located at 730 Dr. Martin Luther King, Jr. Blvd., and in case of your failure to appear and defend a judgment will be entered against you for the money or other things demanded in the complaint or petition.

    You are not required to file an answer or other pleading, but you may do so if you desire.

    Issued under my hand and the seal of said Court, this the ___ day of _____, 2025.

                **ANGELA THRASH, CHANCERY CLERK**
                **HARRISON COUNTY, MISSISSIPPI**
                **PO BOX CC**
                **GULFPORT, MS 39502**

    By _____     D.C.

Prepared by:

James D. Wright, MSB# 8791
Attorney for Paul B. Caldarera
Mississippi Center for Legal Services Corp.
520 East Pass Rd., Suite J
Gulfport, MS 39507
T:  228-896-9148 Ext. 2559
F:  228-896-9345
Jwright@mslegalservices.org

3

Case 1:25-cv-00145-HSO-BWR   Document 15   Filed 05/22/25   Page 85 of 193
Case: 24CH1:25-cv-00687-MA   Document #: 15   Filed: 04/22/2025   Page 1 of 6
Case: 24CH1:25-cv-00687-MA   Document #: 9   Filed: 04/08/2025   Page 1 of 1

## IN THE CHANCERY COURT OF HARRISON COUNTY, MISSISSIPPI
### FIRST JUDICIAL DISTRICT

PAUL B. CALDARERA,
    Plaintiff,

v.

PHH MORTGAGE SERVICES and
BANK OF NEW YORK MELLON
TRUST COMPANY, N.A., AS
TRUSTEE FOR MORTGAGE ASSETS
MANAGEMENT SERIES I TRUST,
    Defendants.

CIVIL ACTION NO.: 25-687 MA



RECEIVED
APR 10 2025
RANKIN CO. SHERIFF DEPT.

### RULE 4 (30 DAY) SUMMONS

TO:   PHH MORTGAGE SERVICES
     c/o CT CORPORATION SYSTEM
     645 631 LAKELAND EAST DRIVE Ste 101
     FLOWOOD, MS 39232

**NOTICE TO DEFENDANT THE COMPLAINT OR PETITION, WHICH IS ATTACHED TO THIS SUMMONS, IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You are required to mail, or hand deliver a copy of written response for this Petition or Complaint to the Honorable James B. Wright the attorney for the Plaintiff, whose address is 520 East Pass Rd., Suite J, Gulfport, MS 39507

Your response must be mailed or delivered no later than thirty (30) days from the date of delivery of this summons. If your response is not mailed or delivered, a judgment by default will be entered against you for the relief demanded in this complaint. You must also file the original of your response with the Clerk of this Court within a reasonable time afterward.

Issued under my hand and the seal of said Court, this 8th day of April, 2025

BY: _____, D.C.

**ANGELA THRASH, CHANCERY CLERK
HARRISON COUNTY, MISSISSIPPI
POST OFFICE DRAWER CC
GULFPORT, MS 39502**

Prepared by:

James B. Wright, MS Bar # 8791
Attorney for Plaintiff
Mississippi Center for Legal Services Corp.
520 East Pass Rd., Suite J
Gulfport, MS 39507
Tel:  228-896-9148
Fax:  228-896-9345
jwright@mslegalservices.org

3

STATE OF MISSISSIPPI
COUNTY OF RANKIN
I have this day executed the within writ by personally
delivering true copies of the within writ
to _DHH Mortgage Services via_  Matt Thibodeaux
By Serving C. T. Corp. Agent
This the _16_ day of _Apr_, 20_25_
BRYAN BAILEY, SHERIFF

BY _____ _RS1_ D.S.

STATE OF MISSISSIPPI
COUNTY OF RANKIN
I have this day executed the within writ by personally
delivering true copies of the within writ
to _PHH Mortgage_ _Services via_            _Matt Thibodeaux_
By Serving C. T. Corp. Agent
This the _16_ day of _Apr_ , 20_25_
                    BRYAN BAILEY, SHERIFF

BY _____    _RS-1_ _____ D.S.

Case 1:25-cv-00145-HSO-BWR    Document 5-1 (filed 05/22/25    Page 89 of 193
Case: 24CH1:25-cv-00687-MA    Document #: 15    Filed: 04/22/2025    Page 5 of 6
Case: 24CH1:25-cv-00687-MA    Document #: 9    Filed: 04/08/2025    Page 1 of 1

## IN THE CHANCERY COURT OF HARRISON COUNTY, MISSISSIPPI
### FIRST JUDICIAL DISTRICT

PAUL B. CALDARERA,
        Plaintiff,

v.

PHH MORTGAGE SERVICES and
BANK OF NEW YORK MELLON
TRUST COMPANY, N.A., AS
TRUSTEE FOR MORTGAGE ASSETS
MANAGEMENT SERIES I TRUST,
        Defendants.

CIVIL ACTION NO.: **25-687 MA**



RECEIVED
APR 10 2025
RANKIN CO. SHERIFF DEPT.

### RULE 4 (30 DAY) SUMMONS

TO:    PHH MORTGAGE SERVICES
       c/o CT CORPORATION SYSTEM
       645 ~~631~~ LAKELAND EAST DRIVE Ste 101
       FLOWOOD, MS 39232

### NOTICE TO DEFENDANT THE COMPLAINT OR PETITION, WHICH IS ATTACHED TO THIS SUMMONS, IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail, or hand deliver a copy of written response for this Petition or Complaint to the Honorable James B. Wright the attorney for the Plaintiff, whose address is 520 East Pass Rd., Suite J, Gulfport, MS 39507

Your response must be mailed or delivered no later than (30) days from the date of delivery of this summons. If your response is not mailed or delivered, a judgment by default will be entered against you for the relief demanded in this complaint. You must also file the original of your response with the Clerk of this Court within a reasonable time afterward.

Issued under my hand and the seal of said Court, this 8th day of April, 2025

BY _____, D.C.
ANGELA THRASH, CHANCERY CLERK
HARRISON COUNTY, MISSISSIPPI
POST OFFICE DRAWER CC
GULFPORT, MS 39502

Prepared by:

James B. Wright, MS Bar # 8791
Attorney for Plaintiff
Mississippi Center for Legal Services Corp.
520 East Pass Rd., Suite J
Gulfport, MS 39507
Tel:  228-896-9148
Fax:  228-896-9345
jwright@mslegalservices.org

3

## IN THE CHANCERY COURT OF HARRISON COUNTY, MISSISSIPPI
### FIRST JUDICIAL DISTRICT

**PAUL B. CALDARERA,**
      **Plaintiff,**

**v.**

**PHH MORTGAGE CORPORATION
and BANK OF NEW YORK MELLON
TRUST COMPANY, N.A., AS TRUSTEE
FOR MORTGAGE ASSETS
MANAGEMENT SERIES I TRUST,**
      **Defendants.**

**CIVIL ACTION NO.: <u>25-687 MA</u>**

### <u>RULE 81 SUMMONS</u>

**TO:**    **BANK OF NE YORK MELLON TRUST CO, N.A., AS
TRUSTEE FOR MORTGAGE ASSETS MANAGEMENT SERIES I TRUST
240 GREENWICH STREET
NEW YORK, NEW YORK 10286**

       You have been made a Defendant in the attached above referenced suit filed in this Court by **Paul B. Caldarera**, Plaintiff.

       You are summoned to appear and defend against the complaint or petition filed against you in this action at **9:00 a.m., on the 22nd day of <u>May 2025</u>** before the Honorable Judge Alfonso in the courtroom of the **Harrison County Chancery Courthouse in Gulfport, Mississippi**, located at 1801 23rd Ave., and in case of your failure to appear and defend a judgment will be entered against you for the money or other things demanded in the complaint or petition.

       You are not required to file an answer or other pleading, but you may do so if you desire.

       Issued under my hand and the seal of said Court, this the 13th day of May, 2025.

                       **ANGELA THRASH, CHANCERY CLERK
HARRISON COUNTY, MISSISSIPPI
PO BOX CC
GULFPORT, MS 39502**

                       By _____

Prepared by:

_____
James B. Wright, MSB# 8791
Attorney for Paul B. Caldarera
Mississippi Center for Legal Services Corp.
520 East Pass Rd., Suite J
Gulfport, MS 39507
T:  228-896-9148 Ext. 2559
F:  228-896-9345
Jwright@mslegalservices.org

**IN THE CHANCERY COURT OF HARRISON COUNTY, MISSISSIPPI**
**FIRST JUDICIAL DISTRICT**

PAUL B. CALDARERA,
    **Plaintiff,**

v.

PHH MORTGAGE CORPORATION
and BANK OF NEW YORK MELLON
TRUST COMPANY, N.A., AS TRUSTEE
FOR MORTGAGE ASSETS
MANAGEMENT SERIES I TRUST,
    **Defendants.**

**CIVIL ACTION NO.: <u>25-687 MA</u>**

**RULE 4 (30 DAYS) SUMMONS**

TO:    **BANK OF NE YORK MELLON TRUST CO, N.A., AS**
    **TRUSTEE FOR MORTGAGE ASSETS MANAGEMENT SERIES I TRUST**
    **240 GREENWICH STREET**
    **NEW YORK, NEW YORK 10286**

**NOTICE TO DEFENDANT THE COMPLAINT OR PETITION, WHICH IS ATTACHED TO**
**THIS SUMMONS, IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO**
**PROTECT YOUR RIGHTS.**

You are required to mail, or hand deliver a copy of written response for this Petition or
Complaint to the Honorable James B. Wright the attorney for the Plaintiff, whose address
is 520 East Pass Rd., Suite J, Gulfport, MS 39507

Your response must be mailed or delivered no later than (30) days from the date of delivery
of this summons.   If your response is not mailed or delivered, a judgment by default will
be entered against you for the relief demanded in this complaint.   You must also file the
original of your response with the Clerk of this Court within a reasonable time afterward.

Issued under my hand and the seal of said Court, this ____ day of _____ 20___

BY: _____ D.C.
**ANGELA THRASH, CHANCERY CLERK**
**HARRISON COUNTY, MISSISSIPPI**
**POST OFFICE DRAWER CC**
**GULFPORT, MS 39502**

Prepared by:
_____
James B. Wright, MS Bar # 8791
Attorney for Plaintiff
Mississippi Center for Legal Services Corp.
520 East Pass Rd., Suite J
Gulfport, MS 39507
Tel:   228-896-9148
Fax:   228-896-9345
jwright@mslegalservices.org

## IN THE CHANCERY COURT OF HARRISON COUNTY, MISSISSIPPI
### FIRST JUDICIAL DISTRICT

**PAUL B. CALDARERA,**
        **Plaintiff,**

v.

**PHH MORTGAGE CORPORATION and
BANK OF NEW YORK MELLON
TRUST COMPANY, N.A., AS TRUSTEE
FOR MORTGAGE ASSETS
MANAGEMENT SERIES I TRUST,**
        **Defendants.**

**CIVIL ACTION NO.: <u>25-687 MA</u>**

### <u>RULE 81 SUMMONS</u>

**TO:    PHH MORTGAGE CORPORATION
c/o CORPORATION SERVICE COMPANY
109 EXECUTIVE DRIVE, SUITE 3
MADISON, MS 39110**

You have been made a Defendant in the attached above referenced suit filed in this Court by **Paul B. Caldarera**, Plaintiff.

You are summoned to appear and defend against the complaint or petition filed against you in this action at **9:00 a.m., on the 22nd day of** <u>May, 2025</u> before the Honorable Judge Alfonso in the courtroom of the **Harrison County Chancery Courthouse in Gulfport, Mississippi**, located at 1801 23rd Ave., and in case of your failure to appear and defend a judgment will be entered against you for the money or other things demanded in the complaint or petition.

You are not required to file an answer or other pleading, but you may do so if you desire.

Issued under my hand and the seal of said Court, this the 13th day of _____, 2025.

**ANGELA THRASH, CHANCERY CLERK
HARRISON COUNTY, MISSISSIPPI
PO BOX CC
GULFPORT, MS 39502**

By _____

Prepared by:

James D. Wright, MSB# 8791
Attorney for Paul B. Caldarera
Mississippi Center for Legal Services Corp.
520 East Pass Rd., Suite J
Gulfport, MS 39507
T:   228-896-9148 Ext. 2559
F:   228-896-9345
Jwright@mslegalservices.org

## IN THE CHANCERY COURT OF HARRISON COUNTY, MISSISSIPPI
### FIRST JUDICIAL DISTRICT

PAUL B. CALDARERA,
      Plaintiff,

v.

PHH MORTGAGE CORPORATION and
BANK OF NEW YORK MELLON
TRUST COMPANY, N.A., AS TRUSTEE
FOR MORTGAGE ASSETS
MANAGEMENT SERIES I TRUST,
      Defendants.

CIVIL ACTION NO.: <u>25-687 MA</u>

### RULE 4 (30 DAY) SUMMONS

TO:    PHH MORTGAGE CORPORATION
      c/o CORPORATION SERVICE COMPANY
      109 EXECUTIVE DRIVE, SUITE 3
      MADISON, MS 39110

**NOTICE TO DEFENDANT THE COMPLAINT OR PETITION, WHICH IS ATTACHED TO THIS SUMMONS, IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You are required to mail, or hand deliver a copy of written response for this Petition or Complaint to the Honorable James B. Wright the attorney for the Plaintiff, whose address is 520 East Pass Rd., Suite J, Gulfport, MS 39507

Your response must be mailed or delivered no later than (30) days from the date of delivery of this summons.   If your response is not mailed or delivered, a judgment by default will be entered against you for the relief demanded in this complaint.   You must also file the original of your response with the Clerk of this Court within a reasonable time afterward.

Issued under my hand and the seal of said Court, this 13th day of ＭＹＡ , 2025.

BY: _____ ,D.C.
ANGELA THRASH, CHANCERY CLERK
HARRISON COUNTY, MISSISSIPPI
POST OFFICE DRAWER CC
GULFPORT, MS 39502

Prepared by:

_____
James B. Wright, MS Bar # 8791
Attorney for Plaintiff
Mississippi Center for Legal Services Corp.
520 East Pass Rd., Suite J
Gulfport, MS 39507
Tel:   228-896-9148
Fax:   228-896-9345
jwright@mslegalservices.org

## IN THE CHANCERY COURT OF HARRISON COUNTY, MISSISSIPPI
### FIRST JUDICIAL DISTRICT

| | |
|---|---|
| **PAUL B. CALDARERA,**<br>**Plaintiff,**<br><br>**v.**<br><br>**PHH MORTGAGE CORPORATION and**<br>**BANK OF NEW YORK MELLON TRUST**<br>**COMPANY, N.A., AS TRUSTEE FOR**<br>**MORTGAGE ASSETS MANAGEMENT SERIES I**<br>**TRUST,**<br>　　　　**Defendants.** | **CIVIL ACTION NO.:** 25-687 MA |

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION

**COMES NOW**, the Plaintiff, Paul B. Caldarera, by and through undersigned counsel, and files this Complaint for Declaratory Judgment, Temporary Restraining Order (TRO), Preliminary Injunction, and Permanent Injunction against PHH Mortgage Corporation and Bank of New York Mellon Trust Company, N.A., as Trustee for Mortgage Assets Management Series I Trust (collectively, "Defendants"), to prevent the wrongful foreclosure of Plaintiff's property and seek clarification of the rights and obligations under the mortgage agreement

### I. PARTIES AND JURISDICTION

1. Plaintiff, PAUL B. CALDARERA, is an adult resident citizen of Harrison County, Mississippi, residing at 105 South Seashore Avenue, Long Beach, Mississippi 39560.

2. Defendant, PHH MORTGAGE CORPORATION, is a mortgage servicing company authorized to do business in the State of Mississippi and may be served with process

CORPORATION SERVICE COMPANY, 109 Executive Drive, Suite 3, Madison, MS 39110.

3.  Defendant, BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AS TRUSTEE FOR MORTGAGE ASSETS MANAGEMENT SERIES I TRUST, is a financial institution and may be served with process at 240 Greenwich Street, New York, New York 10286.

4.  This Court has jurisdiction pursuant to Miss. Code Ann. § 9-5-81 and venue is proper in Harrison County, Mississippi, where the subject property is located.

## II. FACTS

5.  On October 26, 2011, Plaintiff obtained a reverse mortgage from Generation Mortgage Company, secured by a Deed of Trust on his property located at 105 South Seashore Avenue, Long Beach, Mississippi 39560. The Reverse Mortgage Loan Agreement and the Deed of Trust are attached as Exhibits "A" and "B" respectively.

6.  Paragraph 3 of the Deed of Trust is entitled "Fire, Flood and Other Hazard Insurance." It requires the borrower to insurance the property against "hazards, casualties, and contingencies, including fire," as do most all similar deeds of trust. However, absent from that paragraph is any requirement that the borrower maintain wind damage insurance, notwithstanding that wind damage insurance was available at the time of the origination of this mortgage. In fact, nowhere in the document is there a single mention of the word "wind," nor is there any express provision that would require the borrow to secure wind damage insurance. Since wind damage is a significant and material issue to be considered

2

for property located on the Gulf Coast, it becomes evident that the parties did not intend to require such coverage.

7.  Section 15 of the Deed of Trust provides in part:

    *The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender.*

8.  At the time of loan origination, Plaintiff was not required to obtain wind damage insurance, nor was he asked to secure such insurance coverage. Frankly, he most likely would not have entered into the reverse mortgage agreement in the first place, had such a requirement existed due to financial constraints, being his inability to afford such insurance coverage from the very beginning of the reverse mortgage.

9.  Generation Mortgage Company was certainly aware of this situation since it required financial statements from the borrow as a condition to making the loan.

10. On September 21, 2021, the Deed of Trust was assigned From Generation Mortgage Company to Mortgage Assets Management, LLC. Exhibit "C."

11. At some point in time subsequent to the assignment of the Deed of Trust, the servicing responsibility was transferred to PHH MORTGAGE CORPORATION.

12. On June 29, 2023, Mr. Calderara received a letter dated June 20, 2023 from PHH's insurance department, advising that his wind insurance had "expired," that it is required, and that PHH will purchase force-placed wind insurance coverage if Mr. Calderara did not himself secure such coverage. PHH also demanded that the coverage should be effect as of June 19, 2022.

13. On July 29, 2023, Mr. Calderara received a letter dated July 20, 2023 from PHH advising again that the wind damage insurance had "expired," and that it intends to purchase such

3

coverage for $1,213.00. Mr. Calderara called PHH and objected to the proposed action by PHH.

14. In response to Mr. Calderara's objection, PHH sent a letter dated August 17, 2023 advising that it had completed its investigation of the wind damage insurance issue, stating that wind insurance coverage is required on all loans.

15. On April 16, 2024, Plaintiff received an unsigned letter from PHH, dated April 11, 2024, regarding the wind insurance requirement. In this letter, PHH stated that the determination of insurance was a state requirement, and that Plaintiff must obtain the appropriate coverage as mandated by the state. This claim is unsupported by both the original deed of trust and the mortgage agreement, as no such provision explicitly requires wind insurance. That is simply false and a fraudulent misrepresentation of the insurance laws of Mississippi designed to force Mr. Calderara to purchase insurance that he was not required to purchase. Exhibit "D."

16. PHH further implied that the wind damage insurance may be required by the Secretary of Housing and Urban Development. That is likewise untrue and a fraudulent misrepresentation to Mr. Calderara, asserted to induce him to bear a risk of exposure, and to incur a substantial expense that he simply cannot afford to incur and should not be forced to incur.

17. On May 20, 2024, the Deed of Trust was subsequently assigned to BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AS TRUSTEE FOR MORTGAGE ASSETS MANAGEMENT SERIES I TRUST. See Exhibit "E."

18. On July 22, 2024, Mr. Calderara received a *Notice of Acceleration and Foreclosure* dated July 18, 2024 from Rubin Lublin, LLC, attorneys for Generation Mortgage Company. The letter advised that a foreclosure sale had been set for August 28, 2024.

19. After being engaged as Mr. Calderara's attorneys, our Corporation sent on August 20, 2024, a "Cease and Desist Demand" and a separate RESPA "notice of error/request for information" to PHH Mortgage and Rubin Lublin, LLC, attached as Exhibits "F" and "G," respectively.

20. On August 23, 2024, Michael Baringer, Esq., Senior Foreclosure Attorney with Rubin Lublin LLC, attorneys for defendants, sent an email to our Corporation advising that the foreclosure sale is cancelled. Exhibit "H."

21. On March 4, 2025, our Corporation received by certified mail from Rubin Lublin, LLC, dated February 28, 2025, a second *Notice of Acceleration and Foreclosure*, with respect to Mr. Calderara' mortgage. Exhibit "I."

22. On March 5, 2025, our Corporation sent, via certified mail and email, a second Qualified Written Request, including a Notice of Error and Request for Information with respect to the force-placed wind damage insurance purchased by PHH. Exhibit "J." PHH sent a confirmation of receipt of the request via email, attached as Exhibit "K."

23. Plaintiff contends that the Defendants' actions constitute a breach of the mortgage loan agreement, violations of the Real Estate Settlement Procedures Act (RESPA) and Mississippi Code Section 81-18-55, that such actions are unconscionable, and contrary to numerous tenets of Mississippi law, including the duty of good faith and fair dealing.

### III. CAUSES OF ACTION

### COUNT ONE: DECLARATORY JUDGMENT

11. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

12. Plaintiff seeks a declaratory judgment that Defendants have no right to require wind insurance under the original mortgage agreement, that even if there might be implied such a requirement, such requirement was knowingly and voluntarily waived, and that Defendants' attempt to impose such a requirement is invalid and contrary to law.

### COUNT TWO: TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF

13. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

14. Plaintiff will suffer immediate and irreparable harm if the foreclosure scheduled for April 9, 2025, is allowed to proceed.

15. Plaintiff has a substantial likelihood of success on the merits, as Defendants are attempting to impose a new obligation that was never part of the original agreement or has been was knowingly and voluntarily waived.

16. Plaintiff has no adequate remedy at law, and the balance of equities favors preventing foreclosure pending resolution of this matter.

### COUNT THREE: BREACH OF CONTRACT AND UNCONSCIONABILITY

17. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

18. The Defendants' actions in requiring wind insurance constitute a material and unilateral modification of the original reverse mortgage agreement. Such modification was never agreed upon by Plaintiff, and enforcing this term after more than a decade of non-enforcement is not only unconscionable but also represents a violation of Plaintiff's reasonable expectations under the original contract.

19. Plaintiff seeks a permanent injunction to prohibit defendants from requiring wind damage insurance on the property.

20. Plaintiff seeks damages, including actual damages, attorneys' fees, and statutory penalties as permitted under Mississippi law.

## COUNT FOUR: VIOLATION OF MISSISSIPPI CODE § 81-18-55

20. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

21. Defendants have imposed fees and costs that are not authorized by the original contract, in violation of the Mississippi S.A.F.E. Act, specifically, Mississippi Code § 81-18-55.

22. Plaintiff seeks damages, including actual damages, attorneys' fees, and statutory penalties as permitted under Mississippi law.

## COUNT FIVE: VIOLATION OF RESPA (12 U.S.C. § 2605, 12 C.F.R. § 1024.37)

23. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

24. Defendants improperly imposed force-placed wind insurance without compliance with RESPA's notice requirements, are contrary to state contract law and are in violation of RESPA.

25. Defendants' failure to properly respond to Plaintiff's Notice of Error and Request for Information violated RESPA, causing Plaintiff to incur significant harm, including unnecessary costs and delay. Defendants' failure to address the error compounded Plaintiff's financial and emotional distress, and Plaintiff seeks statutory damages as well as actual, consequential, and compensatory damages for these violations.

26. Plaintiff seeks statutory damages pursuant to RESPA, actual, consequential and compensatory damages, attorney's fees, and costs, and granting any other relief this Court deems just and proper.

## COUNT SIX: VIOLATION OF TILA (15 U.S.C. § 1639g)

26. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

27. Defendants included unauthorized charges for wind insurance in Plaintiff's payoff

    statement, violating TILA's disclosure requirements.

28. Plaintiff seeks statutory damages pursuant to TILA, actual, consequential and

    compensatory damages, attorney's fees, and costs, and granting any other relief this Court

    deems just and proper.

## COUNT SEVEN: VIOLATION OF FDCPA (15 U.S.C. § 1692e, 1692f)

28. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

29. Defendants made false representations regarding the necessity of wind insurance, since

    enforcement of such provisions have been waived, and engaged in unfair debt collection

    practices, in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §

    1692e and § 1692.

30. Defendants' actions in sending misleading letters regarding the necessity of wind

    insurance and their false representation of the contractual obligations under the mortgage

    agreement constitute violations of the **Fair Debt Collection Practices Act (FDCPA)**,

    specifically 15 U.S.C. § 1692e and § 1692f, which prohibit false representations and

    unfair practices in debt collection.

31. Plaintiff seeks statutory damages pursuant to FDCPA, actual, consequential and

    compensatory damages, attorney's fees, and costs, and granting any other relief this Court

    deems just and proper.

## COUNT EIGHT: VIOLATION OF UDAAP (12 U.S.C. § 5531)

30. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

31. Defendants engaged in deceptive mortgage servicing practices by misrepresenting Mississippi law and contract terms regarding wind insurance, contrary to 12 U.S.C. § 5531, the Unfair, Deceptive, or Abusive Acts or Practices Act.

32. Plaintiff seeks statutory damages pursuant to UDAAP, actual, consequential and compensatory damages, attorney's fees, and costs, and granting any other relief this Court deems just and proper.

## IV. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court:

A. Issue a Temporary Restraining Order Enjoining Defendants from proceeding with the foreclosure sale of Plaintiff's property pending further order of the Court;

B. Enter a Preliminary and Permanent Injunction prohibiting Defendants from enforcing the wind insurance requirement and foreclosing on Plaintiff's property;

C. Declare that Defendants' actions in imposing wind insurance are unenforceable and a violation of the original mortgage agreement;

D. Award Plaintiff statutory penalties, actual damages, consequential and compensatory damages, attorneys' fees, and costs as permitted under RESPA, TILA, FDCPA, and all other applicable federal and state laws;

E. Grant such other and further relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED**, this 13th day of ~~March~~ May 2025.

BY: _____

**James B. Wright – Managing Attorney at Mississippi Center for Legal Services**

9

**James B. Wright, MSB# 8791**
Mississippi Center for Legal Services Corp.
520 East Pass Rd., Suite J
Gulfport, MS 39507
PH: 228-896-9148 Ext. 2559
Fax: 228-896-9345
jwright@mslegalservices.org

**W. David Watkins**
(MSB # 6986)
Foreclosure Defense Staff Attorney
Post Office Box 951
Jackson, MS 39205-0951
(601) 427-3650
wwatkins@mslegalservices.org

## IN THE CHANCERY COURT OF HARRISON COUNTY, MISSISSIPPI
### FIRST JUDICIAL DISTRICT

**PAUL B. CALDARERA**                                                                 **PLAINTIFF**

**VS.**                                        **CIVIL ACTION NO. 24CH1:25-CV-00687-MA**

**PHH MORTGAGE SERVICES and
BANK OF NEW YORK MELLON TRUST
COMPANY, N.A., AS TRUSTEE FOR
MORTGAGE ASSETS MANAGEMENT SERIES
I TRUST**                                                                **DEFENDANTS**

### NOTICE OF FILING OF
### NOTICE OF REMOVAL OF CASE TO FEDERAL COURT

**PLEASE TAKE NOTICE** that the above-styled action has been removed to the United

States District Court for the Southern District of Mississippi, Southern Division (the "District

Court") by the filing of the *Notice of Removal* with the Clerk of the District Court on May 20,

2025. A true and correct copy of the Notice of Removal is attached hereto as "**Exhibit A**."

**PLEASE TAKE FURTHER NOTICE** that upon filing the Notice of Removal with the

Clerk of the District Court, along with filing copies thereof with the Clerk of this Court, the

Defendant, Bank of New York Mellon Trust Company, N.A., as Trustee for Mortgage Assets

Management Series I Trust, has perfected the removal of the above-styled matter, and neither this

Court nor the Plaintiff shall proceed in this matter unless or until it is remanded to this Court.

THIS, the 21st day of May, 2025.

Respectfully submitted,

**BANK OF NEW YORK MELLON TRUST
COMPANY, N.A., AS TRUSTEE FOR
MORTGAGE ASSETS MANAGEMENT SERIES
I TRUST**

By:   <u> s/ *John T. Rouse*             </u>
                    John T. Rouse

**OF COUNSEL:**

John T. Rouse (MSB No. 101586)
Taylor D. Weatherspoon (MSB No. 106712)
McGLINCHEY STAFFORD, PLLC
1020 Highland Colony Pkwy, Ste. 406
Ridgeland, Mississippi  39157
Phone: (769) 524-2329/2327 | Fax: (601) 608-7871
Email: jrouse@mcglinchey.com; tweatherspoon@mcglinchey.com

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have this day electronically filed the foregoing with the Clerk of

the Court using the MEC system, which sent notification of such filing to the following:

James B Wright, Jr - jwright@mslegalservices.org; klsmith@mslegalservices.org;
jameswrightlaw@gmail.com; trivers@mslegalservices.org

and I hereby certify that I have mailed by United States Postal Service the document to the

following non-MEC system participants:

W. David Watkins
Post Office Box 951
Jackson, MS 39205-0951
Email: wwatkins@mslegalservices.org

THIS, the 21st day of May, 2025.

_s/ John T. Rouse_
OF COUNSEL

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**PAUL B. CALDARERA**                                                                 **PLAINTIFF**

**VS.**                                             **CIVIL ACTION NO. 1:25cv145 HSO-BWR**

**PHH MORTGAGE SERVICES and**
**BANK OF NEW YORK MELLON TRUST**
**COMPANY, N.A., AS TRUSTEE FOR**
**MORTGAGE ASSETS MANAGEMENT SERIES**
**I TRUST**                                                                            **DEFENDANTS**

## <u>NOTICE OF REMOVAL</u>

**COMES NOW** the Defendant, BANK OF NEW YORK MELLON TRUST COMPANY,

N.A., AS TRUSTEE FOR MORTGAGE ASSETS MANAGEMENT SERIES I TRUST ("BNY")

by and through its attorneys, McGlinchey Stafford, PLLC, and files this, its Notice of Removal,

and in support thereof would show unto the Court the following, to wit:

### I. <u>INTRODUCTION</u>

1.       The Plaintiff, Paul B. Caldarera (the "Plaintiff"), commenced this action on or about

April 7, 2025, as amended on May 13, 2025, in the Chancery Court of Harrison County,

Mississippi, Civil Action No. 24CH1:25-cv-00687-MA, against the Defendants (the "State Court

Lawsuit"). A copy of the Plaintiff's *Complaint for Declaratory Judgment, Temporary Restraining

Order, Preliminary Injunction, and Permanent Injunction* filed on April 7, 2025 with all

attachments (the "Complaint"), and the *Amended Complaint for Declaratory Judgment,*

*Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction* (the "Amended

Complaint") filed on May 13, 2025, as filed in the State Court Lawsuit, are attached hereto as

collective, **Exhibit "1"** and incorporated herein by reference.

2.       On April 8, 2025, Plaintiff issued summons to BNY, but BNY was never served

with the Complaint.  On May 13, 2025, Plaintiff issued a second summons to BNY.  However,

BNY has not yet been served with the Amended Complaint. Therefore, the 30-day time limit for removal has yet to begin and the removal of this matter is timely pursuant to 28 U.S.C. § 1446. A copy of the April 8, 2025 and the May 13, 2025 issued Summons are attached hereto as **Exhibit "2"** and incorporated herein by reference.

3.       For the reasons set out herein, this Court has jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1331, 1332, 1441 and 1446.

## II.  <u>BASIS FOR REMOVAL</u>

**A.     Factual Background**

<u>Facts pertaining to Federal Question Jurisdiction</u>

4.       According to the Amended Complaint, on October 26, 2011, Plaintiff obtained a reverse mortgage from Generation Mortgage Company and executed a Deed of Trust relating to the Plaintiff's reverse mortgage loan for his home located at 105 South Seashore Avenue, Long Beach, Mississippi 39560. *See* Amended Complaint, Ex. 1 at ¶ 5. The Deed of Trust was later assigned to Mortgage Assets Management, LLC and then assigned to BNY on May 20, 2024 with the servicing responsibility being transferred to PHH.[1] *Id.* at ¶¶ 10-11, 17.

5.       The Plaintiff's Amended Complaint alleges causes of action for: Count One – Declaratory Judgment, Count Two – Temporary Restraining Order and Injunctive Relief, Count Three – Breach of Contract and Unconscionability, Count Four – Violation of Mississippi Code § 81-18-55, Count Five – Violation of RESPA (12 U.S.C. § C.F.R. § 1024.37), Count Six – Violation of TILA (15 U.S.C. § 1639g), Count Seven – Violation of FDCPA (15 U.S.C. § 1692e, 1692f), and Count Eight – Violation of UDAAP (12 U.S.C. § 5531). *See* Amended Complaint at ¶¶ 11-32.

---

[1] The correct name of PHH is PHH Mortgage Corporation.

6.      The Plaintiff's Complaint requests that the Court (A) issue a Temporary Restraining Order Enjoining Defendants from proceeding with the foreclosure sale of Plaintiff's property pending further order of the Court; (B) enter a Preliminary and Permanent Injunction prohibiting Defendants from enforcing the wind insurance requirement and foreclosing on Plaintiff's property; (C) declare that Defendants' actions in imposing wind insurance are unenforceable and a violation of the original mortgage agreement; (D) award Plaintiff statutory penalties, actual damages, consequential, and compensatory damages, attorneys' fees, and costs as permitted under RESPA, TILA, FDCPA, and all other applicable federal and state laws; and (E) grant such other and further relief as the Court deems just and proper.  *See* Amended Complaint at *ad damnum* clause.

Facts pertaining to Diversity Jurisdiction

7.      Plaintiff's Amended Complaint states that Plaintiff is a resident of Harrison County, Mississippi. *See* Amended Complaint, Ex. 1 at ¶ 1.

8.      Defendant PHH Mortgage Corporation, erroneously named as PHH Mortgage Services ("PHH") is named in the Amended Complaint in its capacity as the servicing company authorized to do business in the State of Mississippi. *Id.* at Ex. 1 at ¶ 2.  PHH is a New Jersey Corporation with its principal place of business in New Jersey. Therefore, PHH is a citizen of New Jersey for purposes of diversity jurisdiction.

9.      Defendant BNY is named in the Amended Complaint as a financial institution. *Id.* at Ex. 1 at ¶ 3.  BNY is a national banking association with its principal place of business located in New York.  Therefore, BNY is a citizen of New York for purposes of diversity jurisdiction.

**B.      Legal Analysis**

This Court possesses Federal Question Jurisdiction over these claims pursuant to 28 U.S.C. § 1331.

10.     This Court has subject matter jurisdiction over this matter based upon federal question jurisdiction.

3

11.    Plaintiff's claims stated in the Complaint necessarily arise under federal law, as is demonstrated on the face of his Complaint.

12.    Plaintiff's Amended Complaint states claims for a violation of federal statutes, which establishes federal question jurisdiction. Specifically, Plaintiff claims violations of RESPA, TILA, FDCPA, and UDAAP. *See* Amended Complaint at ¶¶ 11-32.

13.    Accordingly, this Court has subject matter jurisdiction over this matter as a federal question pursuant to 28 U.S.C. § 1331.

    This Court possesses Diversity Jurisdiction over these claims pursuant to 28 U.S.C. § 1332.

14.    All of the defendants that are properly joined in this matter are diverse from Plaintiff.

15.    Plaintiff is a citizen of the state of Mississippi. *See* Amended Complaint, Ex. 1 at ¶ 1.

16.    PHH is a New Jersey corporation with its principal place of business located in New Jersey. A corporation is a citizen of the state where it is incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 88-90 (2005). Therefore, PHH is a citizen of New Jersey for purposes of diversity jurisdiction.

17.    Defendant, BNY, is a national banking association with its principal place of business in New York, and a non-citizen for Mississippi for jurisdictional purposes. A national bank is a citizen of the state where its main office, as designated in its articles of association, is located. *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 307 (2006).   Defendant, BNY, is also the trustee of a trust. When determining the citizenship of a trust for purposes of diversity jurisdiction, it is the citizenship of the trustee which controls.  *Navarro Sav. Assoc. v. Lee*, 446 U.S. 458, 464-66 (1980); *Homfeld II, L.L.C. v. Comair Holdings, Inc.*, 53 F. App'x 731, 732 (6th Cir. 2002); *Mfrs. and Traders Trust Co. v. HSBC Bank USA, N.A.*, 564 F. Supp. 2d 261, 263 (S.D.N.Y. 2008).

Defendant, BNY, is, and at all times relevant to this action was, a national association bank with its main office located in New York.   Thus, the Defendant, BNY, is a citizen of New York, and no other state, for purposes of diversity jurisdiction.

18.     The amount in controversy requirement has been satisfied based upon the claims asserted by Plaintiff in the Amended Complaint and the documents attached to the Complaint. Plaintiff seeks an Order from the Court entering a permanent injunction preventing the Defendants from foreclosing on his home. Amended Complaint, Ex. 1 at *ad damnum clause*.  As the documents attached to the Complaint demonstrate [*see,* Complaint, Ex. 1 at Exhibit A and Exhibit B, Home Equity Conversion Mortgage Loan Agreement and Deed of Trust], the maximum claim amount on his reverse mortgage is $226,800.00. Thus, Plaintiff himself has necessarily established that the amount in controversy exceeds $75,000.00.

19.     Accordingly, this Court has diversity subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because all of the properly joined defendants are diverse from Plaintiff and the amount in controversy is satisfied.

### III.     <u>CONCLUSION</u>

20.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 & 1332.

21.     This Court has supplemental jurisdiction over all other claims asserted by the Plaintiff in accordance with 28 U.S.C. §§ 1367 & 1441.

22.     By filing this Notice of Removal, BNY does not waive its right to object to service, service of process, sufficiency of process, jurisdiction over the subject matter, jurisdiction over the person, venue, standing or assert any other applicable defenses. BNY does not waive its right to challenge any of the allegations in the Amended Complaint.

23.     All defendants which have properly served and joined at the time of this Notice of Removal have consented or will consent to removal to this Court within the time allowed for consent.[2]

24.     Promptly after the filing of this Notice of Removal, BNY will provide notice of the removal to Plaintiff through his attorney of record in the State Court Lawsuit, and shall file a copy of this Notice with the clerk of the Court in the State Court Lawsuit, as required by 28 U.S.C. § 1446(d).

25.     The entire state court file will be filed electronically. *See* Uniform Local Rule 5(b).

WHEREFORE, PREMISES CONSIDERED, BNY pray that this Court assume full jurisdiction over these proceedings as provided for by law.

THIS, the 20th day of May, 2025.

Respectfully submitted,
**BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AS TRUSTEE FOR MORTGAGE ASSETS MANAGEMENT SERIES I TRUST**

By: _s/ John T. Rouse_____
        John T. Rouse

**OF COUNSEL:**

John T. Rouse (MSB No. 101586)
Taylor D. Weatherspoon (MSB No. 106712)
McGLINCHEY STAFFORD, PLLC
1020 Highland Colony Pkwy, Ste. 406
Ridgeland, Mississippi 39157
Phone: (769) 524-2329 | Fax: (601) 608-7871
Email: jrouse@mcglinchey.com

---

[2] *See Pike Cnty., Mississippi v. Aries Bldg. Sys., LLC*, 2017 WL 1737722 at *3 (S.D. Miss. May 3, 2017)(explaining that unserved defendants need not consent to removal).

## CERTIFICATE OF SERVICE

I do hereby certify that I have this day served via electronic filing and/or U.S. Mail, postage

prepaid, a true and correct copy of the foregoing to:

> James B Wright, Jr
> Mississippi Center for Legal Services Corp
> 520 East Pass Rd., Suite J
> Gulfport, MS 39507
> Email: jwright@mslegalservices.org
>
> W. David Watkins
> Post Office Box 951
> Jackson, MS 39205-0951
> Email: wwatkins@mslegalservices.org

THIS, the 20th day of May, 2025.

_____
*s/ John T. Rouse*
OF COUNSEL

# EXHIBIT 1

IN THE CHANCERY COURT OF HARRISON COUNTY, MISSISSIPPI
FIRST JUDICIAL DISTRICT

**FILED**

APR - 7 2025

ANGELA THRASH
CHANCERY CLERK
BY_____D.C.

CIVIL ACTION NO.: 25-687(3)

PAUL B. CALDARERA,
       **Plaintiff,**

v.

PHH MORTGAGE SERVICES and
BANK OF NEW YORK MELLON TRUST
COMPANY, N.A., AS TRUSTEE FOR
MORTGAGE ASSETS MANAGEMENT SERIES I
TRUST,
       **Defendants.**

## COMPLAINT FOR DECLARATORY JUDGMENT, TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION

**COMES NOW**, the Plaintiff, Paul B. Caldarera, by and through undersigned counsel, and files this Complaint for Declaratory Judgment, Temporary Restraining Order (TRO), Preliminary Injunction, and Permanent Injunction against PHH Mortgage Services and Bank of New York Mellon Trust Company, N.A., as Trustee for Mortgage Assets Management Series I Trust (collectively, "Defendants"), to prevent the wrongful foreclosure of Plaintiff's property and seek clarification of the rights and obligations under the mortgage agreement

### I. PARTIES AND JURISDICTION

1. Plaintiff, PAUL B. CALDARERA, is an adult resident citizen of Harrison County, Mississippi, residing at 105 South Seashore Avenue, Long Beach, Mississippi 39560.

2. Defendant, PHH MORTGAGE SERVICES, is a mortgage servicing company authorized to do business in the State of Mississippi and may be served with process C T CORPORATION SYSTEM, 631 Lakeland East Drive, Flowood, MS 39232.

1

3.  Defendant, BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AS

    TRUSTEE FOR MORTGAGE ASSETS MANAGEMENT SERIES I TRUST, is a

    financial institution and may be served with process at 240 Greenwich Street, New York,

    New York 10286.

4.  This Court has jurisdiction pursuant to Miss. Code Ann. § 9-5-81 and venue is proper in

    Harrison County, Mississippi, where the subject property is located.

## II. FACTS

5.  On October 26, 2011, Plaintiff obtained a reverse mortgage from Generation Mortgage

    Company, secured by a Deed of Trust on his property located at 105 South Seashore

    Avenue, Long Beach, Mississippi 39560. The Reverse Mortgage Loan Agreement and the

    Deed of Trust are attached as Exhibits "A" and "B" respectively.

6.  Paragraph 3 of the Deed of Trust is entitled "Fire, Flood and Other Hazard Insurance." It

    requires the borrower to insurance the property against "hazards, casualties, and

    contingencies, including fire," as do most all similar deeds of trust. However, absent from

    that paragraph is any requirement that the borrower maintain wind damage insurance,

    notwithstanding that wind damage insurance was available at the time of the origination

    of this mortgage. In fact, nowhere in the document is there a single mention of the word

    "wind," nor is there any express provision that would require the borrow to secure wind

    damage insurance. Since wind damage is a significant and material issue to be considered

for property located on the Gulf Coast, it becomes evident that the parties did not intend
to require such coverage.

7.  Section 15 of the Deed of Trust provides in part:

> **The covenants and agreements of this Security Instrument shall bind and
> benefit the successors and assigns of Lender.**

8.  At the time of loan origination, Plaintiff was not required to obtain wind damage
insurance, nor was he asked to secure such insurance coverage. Frankly, he most likely
would not have entered into the reverse mortgage agreement in the first place, had such a
requirement existed due to financial constraints, being his inability to afford such
insurance coverage from the very beginning of the reverse mortgage.

9.  Generation Mortgage Company was certainly aware of this situation since it required
financial statements from the borrow as a condition to making the loan.

10. On September 21, 2021, the Deed of Trust was assigned From Generation Mortgage
Company to Mortgage Assets Management, LLC. Exhibit "C."

11. At some point in time subsequent to the assignment of the Deed of Trust, the servicing
responsibility was transferred to PHH MORTGAGE SERVICES.

12. On June 29, 2023, Mr. Calderara received a letter dated June 20, 2023 from PHH's
insurance department, advising that his wind insurance had "expired," that it is required,
and that PHH will purchase force-placed wind insurance coverage if Mr. Calderara did
not himself secure such coverage. PHH also demanded that the coverage should be effect
as of June 19, 2022.

13. On July 29, 2023, Mr. Calderara received a letter dated July 20, 2023 from PHH advising
again that the wind damage insurance had "expired," and that it intends to purchase such

3

coverage for $1,213.00.  Mr. Calderara called PHH and objected to the proposed action by PHH.

14. In response to Mr. Calderara's objection, PHH sent a letter dated August 17, 2023 advising that it had completed its investigation of the wind damage insurance issue, stating that wind insurance coverage is required on all loans.

15. On April 16, 2024, Plaintiff received an unsigned letter from PHH, dated April 11, 2024, regarding the wind insurance requirement. In this letter, PHH stated that the determination of insurance was a state requirement, and that Plaintiff must obtain the appropriate coverage as mandated by the state. This claim is unsupported by both the original deed of trust and the mortgage agreement, as no such provision explicitly requires wind insurance. That is simply false and a fraudulent misrepresentation of the insurance laws of Mississippi designed to force Mr. Calderara to purchase insurance that he was not required to purchase. Exhibit "D."

16. PHH further implied that the wind damage insurance may be required by the Secretary of Housing and Urban Development.  That is likewise untrue and a fraudulent misrepresentation to Mr. Calderara, asserted to induce him to bear a risk of exposure, and to incur a substantial expense that he simply cannot afford to incur and should not be forced to incur.

17. On May 20, 2024, the Deed of Trust was subsequently assigned to BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AS TRUSTEE FOR MORTGAGE ASSETS MANAGEMENT SERIES I TRUST. See Exhibit "E."

18. On July 22, 2024, Mr. Calderara received a *Notice of Acceleration and Foreclosure* dated July 18, 2024 from Rubin Lublin, LLC, attorneys for Generation Mortgage Company. The letter advised that a foreclosure sale had been set for August 28, 2024.

19. After being engaged as Mr. Calderara's attorneys, our Corporation sent on August 20, 2024, a "Cease and Desist Demand" and a separate RESPA "notice of error/request for information" to PHH Mortgage and Rubin Lublin, LLC, attached as Exhibits "F" and "G," respectively.

20. On August 23, 2024, Michael Baringer, Esq., Senior Foreclosure Attorney with Rubin Lublin LLC, attorneys for defendants, sent an email to our Corporation advising that the foreclosure sale is cancelled. Exhibit "H."

21. On March 4, 2025, our Corporation received by certified mail from Rubin Lublin, LLC, dated February 28, 2025, a second *Notice of Acceleration and Foreclosure*, with respect to Mr. Calderara' mortgage. Exhibit "I."

22. On March 5, 2025, our Corporation sent, via certified mail and email, an second Qualified Written Request, including a Notice of Error and Request for Information with respect to the force-placed wind damage insurance purchased by PHH. Exhibit "J." PHH sent a confirmation of receipt of the request via email, attached as Exhibit "K."

23. Plaintiff contends that the Defendants' actions constitute a breach of the mortgage loan agreement, violations of the Real Estate Settlement Procedures Act (RESPA) and Mississippi Code Section 81-18-55, that such actions are unconscionable, and contrary to numerous tenets of Mississippi law, including the duty of good faith and fair dealing.

## III. CAUSES OF ACTION

### COUNT ONE: DECLARATORY JUDGMENT

11. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

12. Plaintiff seeks a declaratory judgment that Defendants have no right to require wind insurance under the original mortgage agreement, that even if there might be implied such a requirement, such requirement was knowingly and voluntarily waived, and that Defendants' attempt to impose such a requirement is invalid and contrary to law.

### COUNT TWO: TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF

13. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

14. Plaintiff will suffer immediate and irreparable harm if the foreclosure scheduled for April 9, 2025, is allowed to proceed.

15. Plaintiff has a substantial likelihood of success on the merits, as Defendants are attempting to impose a new obligation that was never part of the original agreement or has been was knowingly and voluntarily waived.

16. Plaintiff has no adequate remedy at law, and the balance of equities favors preventing foreclosure pending resolution of this matter.

### COUNT THREE: BREACH OF CONTRACT AND UNCONSCIONABILITY

17. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

18. The Defendants' actions in requiring wind insurance constitute a material and unilateral modification of the original reverse mortgage agreement. Such modification was never agreed upon by Plaintiff, and enforcing this term after more than a decade of non-enforcement is not only unconscionable but also represents a violation of Plaintiff's reasonable expectations under the original contract.

6

19. Plaintiff seeks a permanent injunction to prohibit defendants from requiring wind damage insurance on the property.

20. Plaintiff seeks damages, including actual damages, attorneys' fees, and statutory penalties as permitted under Mississippi law.

## COUNT FOUR: VIOLATION OF MISSISSIPPI CODE § 81-18-55

20. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

21. Defendants have imposed fees and costs that are not authorized by the original contract, in violation of the Mississippi S.A.F.E. Act, specifically, Mississippi Code § 81-18-55.

22. Plaintiff seeks damages, including actual damages, attorneys' fees, and statutory penalties as permitted under Mississippi law.

## COUNT FIVE: VIOLATION OF RESPA (12 U.S.C. § 2605, 12 C.F.R. § 1024.37)

23. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

24. Defendants improperly imposed force-placed wind insurance without compliance with RESPA's notice requirements, are contrary to state contract law and are in violation of RESPA.

25. Defendants' failure to properly respond to Plaintiff's Notice of Error and Request for Information violated RESPA, causing Plaintiff to incur significant harm, including unnecessary costs and delay. Defendants' failure to address the error compounded Plaintiff's financial and emotional distress, and Plaintiff seeks statutory damages as well as actual, consequential, and compensatory damages for these violations.

26. Plaintiff seeks statutory damages pursuant to RESPA, actual, consequential and compensatory damages, attorney's fees, and costs, and granting any other relief this Court deems just and proper.

## COUNT SIX: VIOLATION OF TILA (15 U.S.C. § 1639g)

26. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

27. Defendants included unauthorized charges for wind insurance in Plaintiff's payoff statement, violating TILA's disclosure requirements.

28. Plaintiff seeks statutory damages pursuant to TILA, actual, consequential and compensatory damages, attorney's fees, and costs, and granting any other relief this Court deems just and proper.

## COUNT SEVEN: VIOLATION OF FDCPA (15 U.S.C. § 1692e, 1692f)

28. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

29. Defendants made false representations regarding the necessity of wind insurance, since enforcement of such provisions have been waived, and engaged in unfair debt collection practices, in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692e and § 1692.

30. Defendants' actions in sending misleading letters regarding the necessity of wind insurance and their false representation of the contractual obligations under the mortgage agreement constitute violations of the **Fair Debt Collection Practices Act (FDCPA)**, specifically 15 U.S.C. § 1692e and § 1692f, which prohibit false representations and unfair practices in debt collection.

31. Plaintiff seeks statutory damages pursuant to FDCPA, actual, consequential and compensatory damages, attorney's fees, and costs, and granting any other relief this Court deems just and proper.

## COUNT EIGHT: VIOLATION OF UDAAP (12 U.S.C. § 5531)

30. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

31. Defendants engaged in deceptive mortgage servicing practices by misrepresenting Mississippi law and contract terms regarding wind insurance, contrary to 12 U.S.C. § 5531, the Unfair, Deceptive, or Abusive Acts or Practices Act.

32. Plaintiff seeks statutory damages pursuant to UDAAP, actual, consequential and compensatory damages, attorney's fees, and costs, and granting any other relief this Court deems just and proper.

## IV. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court:

A. Issue a Temporary Restraining Order Enjoining Defendants from proceeding with the foreclosure sale of Plaintiff's property pending further order of the Court;

B. Enter a Preliminary and Permanent Injunction prohibiting Defendants from enforcing the wind insurance requirement and foreclosing on Plaintiff's property;

C. Declare that Defendants' actions in imposing wind insurance are unenforceable and a violation of the original mortgage agreement;

D. Award Plaintiff statutory penalties, actual damages, consequential and compensatory damages, attorneys' fees, and costs as permitted under RESPA, TILA, FDCPA, and all other applicable federal and state laws;

E. Grant such other and further relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED**, this ___ day of March 2025.

BY: _____

**James B. Wright – Managing Attorney at Mississippi Center for Legal Services**

9

**James B. Wright, MSB# 8791**
Mississippi Center for Legal Services Corp.
520 East Pass Rd., Suite J
Gulfport, MS 39507
PH: 228-896-9148 Ext. 2559
Fax: 228-896-9345
jwright@mslegalservices.org

**W. David Watkins**
(MSB # 6986)
Foreclosure Defense Staff Attorney
Post Office Box 951
Jackson, MS 39205-0951
(601) 427-3650
wwatkins@mslegalservices.org

**Schedule of Exhibits to Calderara Complaint**

A.  The Reverse Mortgage Loan Agreement

B.  Deed of Trust

C.  Assignment of Deed of Trust from Generation Mortgage to Mortgage Assets
    Management, LLC

D.  April 11, 2024 letter from PHH to Calderara

E.  May 20, 2024 Assignment of Deed of Trust to Bank of New York Mellon Trust

F.  August 20, 2024 Cease and Desist

G.  August 20, 2024 Qualified Written Request

H.  8/23/24 email from Rubin cancelling sale

I.  3/4/2025 – Notice of Acceleration and Foreclosure

J.  3/5/2025 – second QWR from MCLSC to PHH

K.  3/5/2025 email confirmation from PHH

# Exhibit A

CLOSED-END FIXED RATE
HOME EQUITY CONVERSION MORTGAGE LOAN AGREEMENT

FHA Case No.   281-3919575-951
Loan No.   1061101579

THIS AGREEMENT is made this  26TH  day of  OCTOBER, 2011  , among
PAUL B CALDARERA

GENERATION MORTGAGE COMPANY                                            ("Borrower"),

                                                                      ("Lender")

and the Secretary of Housing and Urban Development ("Secretary").

## Article 1 - Definitions

1.1.   Expected Average Mortgage Interest Rate means the amount indicated on the attached payment plan (Exhibit 1). It is a constant interest rate used to calculate monthly payments to the Borrower throughout the life of the loan.

1.2.   Loan Advances means all funds advanced from or charged to Borrower's account under conditions set forth in this Loan Agreement, whether or not actually paid to Borrower. To the extent Borrower prepays any outstanding balance under the Note, such amounts will no longer be available to be advanced under this Loan Agreement.

1.3.   Loan Documents means the Note, Second Note, Security Instrument and Second Security Instrument.

1.4.   Maximum Claim Amount means the lesser of the appraised value of the property, as determined by the appraisal used in underwriting the loan, or the sales price of the property being purchased for the sole purpose of being the principal residence, or the national mortgage limit for a one family residence under section 305(a)(2) of the Federal Home Loan Mortgage Corporation Act (as adjusted where applicable under section 214 of the National Housing Act) as of the date of loan closing. Closing costs must not be taken into account in determining appraised value.

1.5.   Note means the promissory note signed by Borrower together with this Loan Agreement and given to Lender to evidence Borrower's promise to repay, with interest, Loan Advances by Lender or Lender's assignees.

1.6.   Principal or Principal Balance means the sum of all Loan Advances made as of a particular date, including interest and mortgage insurance premiums.

1.7.   Principal Limit means the amount indicated on the attached payment plan (Exhibit 1) when this Loan Agreement is executed, and increases each month for the life of the loan at a rate equal to the sum of the applicable monthly interest rate charge, plus one-twelfth the annual MIP. The Principal Limit is calculated by multiplying the Maximum Claim Amount by a factor supplied by the Secretary, which is based on the age of the youngest Borrower and the Expected Average Mortgage Interest Rate.

1.8.   Principal Residence means the dwelling where the Borrower shall maintain his or her permanent place of abode, and typically spends the majority of his or her time. A person may have only one principal residence at any one time. The Property shall be considered to be the Principal Residence of any Borrower who is temporarily or permanently in a health care institution as long as the Property is the Principal Residence of at least one other Borrower who is not in a health care institution.

1.9.   Property means Borrower's property identified in the Security Instrument.

1.10.  Second Note means the promissory note signed by Borrower together with this Loan Agreement and given to the Secretary to evidence Borrower's promise to repay, with interest, Loan Advances by the Secretary secured by the Second Security Instrument.

1.11.  Second Security Instrument means the mortgage, deed of trust, security deed or other security instrument which is signed by Borrower together with this Loan Agreement and which secures the Second Note.

1.12.  Security Instrument means the mortgage, deed of trust, security deed or other security instrument which is signed by Borrower together with this Loan Agreement and which secures the Note.

## Article 2 - Loan Advances

2.1.   General. Lender agrees to make Loan Advances under the conditions set forth in this Loan Agreement in consideration of the Note and Security Instrument given by Borrower on the same date as this Loan Agreement.

2.2.   Initial Advances.

2.2.1.   Loan Advances shall be used by Lender to pay, or reimburse Borrower for, closing costs listed in the Schedule of Closing Costs (Exhibit 2) attached to and made a part of this Loan Agreement, except that Loan Advances will only be used to pay origination fees in an amount not to exceed the greater of $2,500 or 2% of the maximum claim amount of the mortgage, up to a maximum claim amount of $200,000, plus one percent of any portion of the maximum claim amount that is greater than $200,000, nor shall the Lender charge the Borrower an origination fee in excess of $6,000.

2.2.2.   Loan Advances shall be used by Lender to discharge the liens on the Property listed in the Schedule of Liens/HECM for Purchase Disbursements to Seller (Exhibit 2) attached to and made a part of this Loan Agreement.

1051101579

2.2.3.   Lender shall pay an initial Loan Advance to Borrower in the amount indicated on the attached payment plan (Exhibit 1).

2.2.4.   Initial advances required by this Section 2.2. shall be made as soon as such advances are permitted by the applicable provisions of 12 CFR Part 226 (Truth in Lending) governing Borrower's right of rescission, but not before that time.

2.3.   Set Asides.

2.3.1.   Amounts set aside from the Principal Limit shall be considered Loan Advances to the extent actually disbursed or earned by Lender.

2.3.2.   Lender shall initially set aside from the Principal Limit the amount indicated on the attached payment plan (Exhibit 1) for repairs to be made in accordance with a Repair Rider attached to and made a part of this Loan Agreement (Exhibit 3).

2.3.3.   Lender shall initially set aside from the Principal Limit the amount indicated on the attached payment plan (Exhibit 1) to be applied to payments due for first year property charges consisting of taxes, hazard insurance, ground rents and assessments.

2.3.4.   Lender shall initially set aside from the Principal Limit the amount indicated on the attached payment plan (Exhibit 1) to be applied to payment due for a fixed monthly charge for servicing activities of Lender or its servicer. Such servicing activities are necessary to protect Lender's interest in the Property. A servicing fee set aside, if any, is not available to the Borrower for any purpose, except to pay for loan servicing.

2.4.   Charges and Fees.  Borrower shall pay to Lender reasonable and customary charges and fees as permitted under 24 CFR 206.207(a). Such amounts shall be considered Loan Advances when actually disbursed by Lender.

2.5.   Monthly Payments.

2.5.1.   Borrower may request Loan Advances as Monthly Payments wherein Loan Advances shall be paid directly to Borrower in equal monthly payments.

2.5.2.   Monthly payments shall be calculated for either the term payment plan or the tenure payment plan, as requested by Borrower.

2.5.3.   Monthly payments under the term payment plan are made only during a term shown by Borrower and shall be calculated so that the sum of (i) or (ii) added to (iii), (iv), (v) and (vi) shall be equal to or less than the Principal Limit at the end of the term:

(i) Initial Advances under Section 2.2, plus any initial servicing fee set aside under Subsection 2.3.4.; or

(ii) The Principal Balance at the time of a change in payments under Sections 2.8. and 2.9, plus any remaining servicing fee set aside under Subsection 2.3.4.; and

(iii) The portion of the Principal Limit set aside as a line of credit under Section 2.7, including any set asides for repairs (Subsection 2.3.2.) and first year property charges (Subsection 2.3.3.); and

(iv) All monthly payments due through the payment term, including funds withheld for payment of property charges under Section 2.10.; and

(v) All mortgage insurance premiums, or monthly charges due to the Secretary in lieu of mortgage insurance premiums, which are due through the payment term (Subsection 2.13.); and

(vi) All interest through the payment term.  The Expected Average Mortgage Interest Rate shall be used for this purpose.

2.5.4.   Monthly payments under the tenure payment plan shall be calculated as in Subsection 2.5.3. as if there were a payment term with the number of months in the term equal to the sum of 160 minus the age of the youngest Borrower multiplied by 12, but payments shall continue until the loan becomes due and payable as provided in the Loan Documents.

2.5.5.   Monthly payments shall be paid to Borrower on the first business day of a month.

2.5.6.   If Borrower has requested monthly payments, payments shall be indicated on the attached payment plan (Exhibit 1). The payment plan may be changed by Borrower as provided in Sections 2.8. and 2.9.

2.6.   Line of Credit without Monthly Payments.

2.6.1.   Borrower may request (i) a single Loan Advance under a line of credit payment plan to be paid in a lump sum disbursement upon settlement of the Loan or (ii) Loan Advances under a line of credit payment plan in amounts and at times determined by Borrower, if the Principal Balance of the loan after the Loan Advance is made is less



1061101579

than or equal to the applicable Principal Limit, excluding any portion of the Principal Limit set aside under Sections 2.3.2. or 2.3.4. The line of credit amount increases at the same rate as the total Principal Limit increases under Section 1.7.

2.6.2.    Line of credit payments shall be paid to Borrower within five business days after Lender has received a written request for payment by Borrower.

2.6.3.    Lender may specify a form for line of credit payment requests.

2.6.4.    Lender shall provide Borrower with a statement of the account every time a line of credit payment is made. The statement shall include the current interest rate, the previous Principal Balance, the amount of the current Loan Advance, the current Principal Balance after the Loan Advance, and the current Principal Limit.

2.7.    Line of Credit with Monthly Payments.

2.7.1.    Borrower may receive monthly payments under either a term or tenure payment plan combined with a line of credit, as indicated on the attached payment plan (Exhibit 1).

2.7.2.    Subsections 2.6.2., 2.6.3. and 2.6.4. apply to a line of credit combined with term or tenure payments.

2.7.3.    If Borrower combines a line of credit with a term or tenure payment plan, the Principal Limit is divided into: (a) an amount for the line of credit payments, including repair and property charge set asides, (b) an amount for monthly payments which shall be calculated under Subsections 2.5.3. or 2.5.4. and (c) an amount for a servicing fee set aside, if required by Lender under Subsection 2.3.4. Amounts designated for line of credit payments and monthly payments increase independently at the same rate as the total Principal Limit increases under Section 1.7. Borrower can request Loan Advances in amounts and at times determined by Borrower, if the requested amount is less than or equal to the difference between (a) the Principal Limit applicable to the line of credit set aside and (b) the portion of the outstanding Principal Balance attributable to draws on the line of credit, including accrued interest and mortgage insurance premium or monthly charge due to the Secretary, but excluding any portion of the Principal Limit set aside under Subsections 2.3.2. and 2.3.4.

2.7.4.    A Borrower receiving monthly payments in combination with a line of credit may prepay the outstanding mortgage balance in accordance with the terms of the Note.

2.8.    Change in Payments Generally.

2.8.1.    Whenever the Principal Balance of the loan is less than the Principal Limit, Borrower may change from any payment plan allowable under this Loan Agreement to another.

2.8.2.    If Borrower requests that monthly payments be made after a change in payment plan, Lender shall recalculate future monthly payments in accordance with Subsections 2.5.3. or 2.5.4.

2.8.3.    Lender may charge a fee not to exceed twenty dollars, whenever payments are recalculated and in any other circumstances in which Borrower is required to sign a form acknowledging a change in payment plan as provided in Subsection 2.8.5.

2.8.4.    Loan Advances under a new payment plan shall be paid to Borrower in the same manner and within the time period required under Sections 2.5., 2.6. or 2.7.

2.8.5.    Changes in the payment plan must be acknowledged by Borrower by signing a form containing the same information as the attached payment plan (Exhibit 1). Lender shall provide a copy of the completed form to Borrower.

2.9.    Change in Payments Due to Initial Repairs.

2.9.1.    If initial repairs after closing, made in accordance with the Repair Rider, are completed without using all of the repair set aside, Lender shall inform Borrower of the completion and the amount then available to the Borrower to be drawn under a line of credit.

2.9.2.    If initial repairs after closing, made in accordance with the Repair Rider, cannot be fully funded from the repair set aside, any additional Loan Advances needed to complete repairs shall be made in the manner provided under Section 2.16.

2.9.3.    If initial repairs are not completed when required by the Repair Rider, Borrower shall not request and Lender shall not make any further payments, except as needed to pay for repairs required by the Repair Rider and mandatory Loan Advances under Section 4.5. In order to complete the required repairs, Loan Advances shall be made first from the repair set aside, and then in the manner provided under Section 2.16.

1061101579

2.10.    Payment of Property Charges.

    2.10.1.    Borrower may elect to require Lender to use Loan Advances to pay property charges consisting of taxes, hazard insurance premiums, ground rents and special assessments if indicated on the attached payment plan (Exhibit 1). If Borrower has elected to have Lender pay property charges, Borrower may change this election by notifying Lender and at that time Lender shall pay to Borrower any amounts withheld from the Loan Advances to pay property charges.

    2.10.2.    If Borrower has made the election under Subsection 2.10.1 and Borrower is receiving monthly payments, Lender shall withhold amounts from each monthly payment and use the amounts withheld to make timely payments of property charges. The amounts withheld shall be calculated as provided in Subsection 2.10.3. Amounts withheld from monthly payments shall not be treated as Loan Advances and shall not bear interest except to the extent actually disbursed by Lender.

    2.10.3.    Lender shall withhold from each monthly payment an amount to pay (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for fire, flood and other hazard insurance required by the Security Instrument. Each monthly withholding for items (a), (b) and (c) shall equal one-twelfth of the annual amounts, as reasonably estimated by Lender. The full annual amount for each item shall be paid by Lender before an item would become delinquent. Lender shall add the amounts for items (a), (b) and (c) to the Principal Balance when paid. If at any time the withholding for item (a), (b), or (c) exceeds the amount of actual property charges, Lender shall pay the excess withholding to Borrower and add it to the Principal Balance. If the total of the withholding for item (a), (b), or (c) is insufficient to pay the item when due, the amount necessary to make up the deficiency on or before the date the item becomes due shall be paid as a Loan Advance in the manner provided under Section 2.16.

    2.10.4.    If Borrower has made the election under Subsection 2.10.1 and Borrower is not receiving monthly payments, Lender shall make Loan Advances under the line of credit payment plan as needed to make timely payments of property charges, provided that no such Loan Advance shall exceed the amount permitted by Section 2.6.1.

    2.10.5.    If Borrower fails to pay the property charges in a timely manner, and has not elected to have Lender make the payments, Lender shall pay the property charges as a Loan Advance as required under Section 2.16. If a pattern of missed payments occurs, Lender may establish procedures to pay the property charges from Borrower's funds as if Borrower elected to have Lender pay the property charges.

    2.10.6.    Lender shall immediately notify any Borrower who has made the election under Subsection 2.10.1, whenever Lender determines that amounts available from monthly payments or line of credit payments will be insufficient to pay property charges.

2.11.    Insurance and Condemnation Proceeds.  If insurance or condemnation proceeds are paid to Lender, the Principal Balance shall be reduced by the amount of the proceeds not applied to restoration or repair of the damaged Property and the available loan funds shall be recalculated.  At the same time, the Principal Limit also shall be reduced by the amount of the proceeds applied to reduce the Principal Balance.

2.12.    Interest.

    2.12.1.    Interest shall be calculated as provided in the Loan Documents.

    2.12.2.    Interest shall accrue daily and be added to the Principal Balance as a Loan Advance at the end of each month.

2.13.    Mortgage Insurance Premium (MIP); Monthly Charge.

    2.13.1.    Monthly MIP shall be calculated as provided in HUD Mortgagee Letter 2010-34 (Sept. 21, 2010).  If the Security Instrument is held by the Secretary or if the Secretary makes Loan Advances secured by the Second Security Instrument, a monthly charge shall be due to the Secretary and shall be calculated in the same manner as MIP.

    2.13.2.    The full amount of monthly MIP or monthly charge, including any portion of the MIP retained by a Lender under 24 C.F.R. 206.109, shall be considered to be a Loan Advance to Borrower on the later of the first day of the month or the day Lender pays the MIP to the Secretary, if any MIP is due to the Secretary. In the event that the Note becomes due and payable or the Note is prepaid in full after the first day of the month, Lender may add the accrued MIP to the Principal Balance or the Secretary may add the accrued monthly charge to the Principal Balance.

2.14.    Manner of Payment.  For purposes of this Section "Borrower" shall not include any person who signed this Loan Agreement but who has a Principal Residence different from the Property.  Only a Borrower has a right to receive Loan Advances. Borrowers shall choose to receive Loan Advances by either electronic funds transfer to a bank account designated by all Borrowers or by check mailed to an address designated by all Borrowers, except where all Borrowers agree that payment should be made directly to a third party for the benefit of the Borrowers.  Borrowers may change the manner of payment by notifying Lender.

2.15.    Protection of Property.

    2.15.1.    If Borrower vacates or abandons the Property, or if Borrower is in default under the Security Instrument, then Lender may make reasonable expenditures to protect and preserve the Property and those expenditures will be considered Loan Advances as required under Section 2.16.

1061101979

2.15.2.  If Borrower fails to pay governmental or municipal charge, fines or impositions that are not included in Section 2.10. or if there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property. These expenditures will be considered Loan Advances as required under Section 2.16.

2.16.  Unscheduled Payments.  Loan Advances made pursuant to Sections 2.4., 2.9.2., 2.9.3., 2.10.3., 2.10.5., and 2.15. shall be made from a line of credit under Section 2.6. or 2.7. to the extent possible. If no line of credit sufficient to make the Loan Advances exists, any future monthly payments must be recalculated in accordance with Subsection 2.5.3. or 2.5.4. to create a line of credit sufficient to make the Loan Advances.

## Article 3 - Late Charge

3.1.  Amount Due.  Lender shall pay a late charge to Borrower for any late payment. If Lender does not mail or electronically transfer a scheduled monthly payment to Borrower on the first business day of the month or mail or electronically transfer a line of credit payment to Borrower within 5 business days of the date Lender received the request, the late charge shall be 10 percent of the entire amount that should have been paid to the Borrower for that month or as a result of that request. For each additional day that Lender fails to make payment, Lender shall pay interest on the late payment at the interest rate stated in the Loan Documents. If the Loan Documents provide for an adjustable interest rate, the rate in effect when the late charge first accrues shall be used. In no event shall the total late charge and interest exceed five hundred dollars. Any late charge shall be paid from Lender's funds and shall not be added to the unpaid Principal Balance.

3.2.  Waiver.  The Secretary may waive a late charge where the Secretary determines that the late payment resulted from circumstances beyond Lender's control and that no act or omission of Lender contributed to the late payment. At the time Lender requests a waiver, Lender shall inform Borrower that a waiver of late charge has been requested from the Secretary and that the late charge will be sent to Borrower if the waiver is denied. If the Secretary denies the waiver, Lender shall pay to Borrower the late charge and interest that accrued from the date the payment was late until the date the waiver was requested.

## Article 4 - Termination of Lender's Obligation to Make Loan Advances

4.1.  Loan Due and Payable.  Lender shall have no obligation to make Loan Advances if Lender has notified Borrower that immediate payment in full to Lender is required under one or more of the Loan Documents unless and until the notice is rescinded by Lender.

4.2.  Loan Advances by Secretary.  If the Security Instrument has been assigned to the Secretary or the Secretary notifies Lender and Borrower that Loan Advances are secured by the Second Security Instrument, Lender shall have no further obligation to make Loan Advances under this Loan Agreement, unless the Secretary accepts later reimbursement by the Lender for all Loan Advances made, earned or disbursed by the Secretary. The Secretary may establish procedures for handling requests for payments and changes in payment plans during the interval between Lender's notification of intent to assign the Security Instrument to the Secretary and completion of the assignment. Borrower shall be informed of such procedures by Lender and/or the Secretary, and Borrower shall comply with such procedures.

4.3.  Lien Status Jeopardized.  Lender shall have no obligation to make further Loan Advances if the Lender or the Secretary determines that the lien status of the Security Instrument or the Second Security Instrument is jeopardized under State laws as described in Paragraph 12(a) of the Security Instrument or Second Security Instrument and the lien status is not extended in accordance with Paragraph 12(a).

4.4.  Bankruptcy.  Lender shall have no obligation to make further Loan Advances on or following the date that a petition for bankruptcy of Borrower is filed.

4.5.  Mandatory Loan Advances.  Notwithstanding anything in Sections 4.1. through 4.4., all Loan Advances under Sections 2.10. (property charges), 2.12. (interest), 2.13. (MIP or monthly charge), 2.15. (protection of Property) or 2.5.4. (servicing fee) shall be considered mandatory Loan Advances by Lender.

4.6.  Prepayment in Full.  Lender shall not make Loan Advances if Borrower has paid the Note in full (or the Second Note, if the Secretary has assumed the Lender's rights and obligations under Article 5).

## Article 5 - HUD Obligation

If the Lender has no further obligation to make payments to Borrower because of Section 4.2., the Secretary shall assume the rights and obligations of Lender under this Loan Agreement, except the Secretary shall not assume any obligation of paying flood, fire and other hazard insurance from Loan Advances. If the Secretary makes Loan Advances to Borrower under the Second Security Instrument, the portion of the Principal Limit available for Loan Advances shall be the difference between the current Principal Limit and the combined Principal Balances on the Security Instrument less accrued interest and the Second Security Instrument.

## Article 6 - Miscellaneous

6.1.  Forbearance Not a Waiver.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

1061101579

6.2. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Loan Agreement shall bind and benefit the successors and assigns of Lender. An assignment made in accordance with the regulations of the Secretary shall fully relieve the Lender of its obligations under this Loan Agreement. Borrower may not assign any rights or obligations under this Loan Agreement. Borrower's covenants and agreements shall be joint and several.

6.3. Notices. Any notice to Borrower provided for in this Loan Agreement shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. This notice shall be directed to the property address shown in the Security Instrument or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice to the Secretary shall be given by first class mail to the HUD National Servicing Center or any other place designated by the Secretary. Any notice provided for in this Loan Agreement shall be deemed to have been given to Borrower, Lender or the Secretary when given as provided in this Section.

6.4. Governing Law; Severability. This Loan Agreement shall be governed by Federal law and the law of the jurisdiction in which the Property is located. The Lender in this Loan Agreement must comply with the Fair Housing Act, 42 U.S.C. §§3601 - 3619, which prohibits discrimination on the basis of race, color, religion, sex, handicap familial status, or national origin. In the event that any provision or clause of this Loan Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Loan Agreement which can be given effect without the conflicting provision. To this end the provisions of this Loan Agreement are declared to be severable.

6.5. Copies. Lender, Borrower and the Secretary shall each receive one original executed copy of this Loan Agreement when signed by the Secretary.

6.6. When Agreement Becomes Binding. This Loan Agreement shall bind Lender and Borrower when both Lender and Borrower have signed. This Loan Agreement shall bind the Secretary only when the lender signs on behalf of the Secretary of Housing and Urban Development and a Mortgage Insurance Certificate is issued for the Security Instrument.

BY SIGNING BELOW the parties accept and agree to the terms contained in this Loan Agreement and the exhibits.

_Paul B. Caldarera_ _____ (Seal)
PAUL B CALDARERA                                    - Borrower

GENERATION MORTGAGE COMPANY
                                              (Name of Lender)
By: _____
    Lockryah Thompkins - Funding Analyst

By: _____ (Seal)
    Secretary of Housing and Urban Development

By: _____ (Seal)

# Exhibit B

*106110157 9*    SCANNED





1st Judicial District
Instrument 2011   9971 T – J1
Filed/Recorded 11/14/2011  10:10 A
Total Fees $    21.00
11 Pages Recorded

───────── [Space Above This Line For Recording Data] ─────────

This Document Prepared By: *Aileen Lugo*    1of2  order# 7301-49613
GENERATION
 MORTGAGE COMPANY.    Indexing: Lots 6 to 10
3565 PIEDMONT ROAD, NE, STE 300 SUITE 300    inc BLK 1 Sea Shore
ATLANTA, GA 30305    Subd Sec 22-8-12
PHONE: 404-995-5500    Return/Mail To: NCS    Sea Shore SUBD
 5814 Lonetree Blvd.
When Recorded Mail To:    Rocklin, CA 95765
GENERATION
 MORTGAGE COMPANY 888-958-8060
3 PIEDMONT CENTER - 3565 PIEDMONT ROAD, SUITE 300
ATLANTA, GA 30305
PHONE: 404-995-5500
State of Mississippi    FHA Case No. 281-3919575-951
    Loan No.    1061101579
    MERS MIN   100916410611015795

## CLOSED-END FIXED RATE
## HOME EQUITY CONVERSION DEED OF TRUST

    THIS DEED OF TRUST ("Security Instrument") is made on **OCTOBER 26, 2011**    . The trustor is
**PAUL B CALDARERA**

whose address is **105 S SEASHORE AVE**
**LONG BEACH, MISSISSIPPI 39560-5706**    ("Borrower"). The trustee is
**PREMIER REVERSE CLOSINGS, LA PALMA**
**5828 LONETREE BLVD, ROCKLIN, CA 95765**    ("Trustee").  The beneficiary is
**Mortgage Electronic Registration Systems, Inc. ("MERS")**, which is organized and existing under the laws
of Delaware, and whose address is P.O. Box 2026, Flint MI 48501-2026, Tel. (888) 679-MERS.
**GENERATION MORTGAGE COMPANY**
    ("Lender")
is organized and existing under the laws of **THE STATE OF CALIFORNIA**    , and has an address of
**3565 PIEDMONT ROAD, NE, STE 300 SUITE 300, ATLANTA, GA 30305**

CoreLogic Document Services    Mississippi HECM Security Instrument
©2010 CoreLogic, Inc.
CLDS# MSHECM1SIFM Rev. 03-13-09    Page 1

1061101579    10
Name: Caldarera    Location: KASOTA
Customer: GENR    Pool: GNMAHECM-GNMA

1061101579

Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future
advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this
Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated
the same date as this Security Instrument ("Note"). This Security Instrument secures to Lender: (a) the
repayment of the debt evidenced by the Note, with interest and all renewals, extensions and modifications
of the Note, up to a maximum principal amount of
**TWO HUNDRED TWENTY SIX THOUSAND EIGHT HUNDRED AND NO /100**

Dollars (U.S. $  226,800.00     ); (b) the payment of all other sums, with interest, advanced under Paragraph 5
to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument;
and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.
The full debt, including amounts described in (a), (b), and (c) above, if not due earlier, is due and payable on
**FEBRUARY 16, 2095**     . For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with
power of sale, the following described property located in **HARRISON**                County, Mississippi:

**See Attached Exhibit A**

which has the address of  **105 S SEASHORE AVE**

                                                     [Street]
**LONG BEACH**                  , **MISSISSIPPI**                     **39560-5706**           ("Property Address");
        [City]                          [State]                            [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall
also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as
the "Property."
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the
right to grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend
generally the title to the Property against all claims and demands, subject to any encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform
covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real
property.
    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1.    **Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest
on, the debt evidenced by the Note.
    2.    **Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes,
ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall

CoreLogic Document Services                                        Mississippi HECM Security Instrument
©2010 CoreLogic, Inc.
CLDS# MSHECM1SIF-2 Rev. 03-13-09              Page 2

3

1061101579

provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from
monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the
Loan Agreement.

   3.   **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the
Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies,
including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by
Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all
improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the
extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The
insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor
of, and in a form acceptable to, Lender.

   In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of
loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed
to make payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds
shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically
feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or
Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any
indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and
then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance
proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security
Instrument shall be paid to the entity legally entitled thereto.

   In the event of foreclosure of this Security Instrument or other transfer of title to the Property that
extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force
shall pass to the purchaser.

   4.   **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan
Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal
residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially
more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence
for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan
Agreement.

   Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the
Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower,
during the loan application process, gave materially false or inaccurate information or statements to Lender (or
failed to provide Lender with any material information) in connection with the loan evidenced by the Note,
including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal
residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the
lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless
Lender agrees to the merger in writing.

   5.   **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all
governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower
shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would
adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to
Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority
over this Security Instrument in the manner provided in Paragraph 12(c).

   If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to
perform any other covenants and agreements contained in this Security Instrument, or there is a legal

1061101579

proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6.  **Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7.  **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

8.  **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.  **Grounds for Acceleration of Debt.**

    (a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

        (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

        (ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

    (b) **Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

        (i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

        (ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

        (iii) An obligation of the Borrower under this Security Instrument is not performed.

    (c) **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph (a) (ii) or (b) occur.

    (d) **Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a) (ii) or (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

        (i) Correct the matter which resulted in the Security Instrument coming due and payable; or

1061101579

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

**(e) Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

**(f) Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within SIXTY DAYS                    from the date hereof, if permitted by applicable law Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to SIXTY DAYS                    from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. Lien Status.**

**(a) Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit

CoreLogic Document Services                                    Mississippi HECM Security Instrument
©2010 CoreLogic, Inc.
CLDS# MSHECM1SIF-5 Rev. 03-13-09                    Page 5



1061101579

the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

13. **Relationship to Second Security Instrument.**

(a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

(i) This Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

(d) **No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

14. **Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

15. **Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

16. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any

1061101579

notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender
designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have
been given to Borrower or Lender when given as provided in this Paragraph 16.

17. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law
and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this
Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions
of this Security Instrument or the Note which can be given effect without the conflicting provision. To this
end the provisions of this Security Instrument and the Note are declared to be severable.

18. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security
Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

19. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents
and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and
revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents.
However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the
Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee
for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not
an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by
Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument;
(b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the
Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the
tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any
act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving
notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there
is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy
of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security
Instrument is paid in full.

20. **Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9,
Lender at its option may require immediate payment in full of all sums secured by this Security
Instrument without further demand and may invoke the power of sale and any other remedies permitted
by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies
provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of
title evidence.**

If Lender invokes the power of sale, Lender shall give Borrower, in the manner provided in
Paragraph 16, notice of Lender's election to sell the Property. Trustee shall give notice of sale by public
advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand
on Borrower, shall sell the Property at public auction to the highest bidder for cash at such time and
place in HARRISON                County as Trustee designates in the notice of sale in one or more
parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any
sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant
or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of
the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following
order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys'



1061101579

fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**21. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

**22. Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances for interest, MIP, Servicing Fees, and other charges shall be obligatory.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. If Trustee is requested to cancel this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which the Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider                    ☐ Planned Unit Development Rider

☐ Other (Specify)

**26. Nominee Capacity of MERS.** MERS serves as mortgagee of record and secured party solely as nominee, in an administrative capacity, for Lender and its successors and assigns and holds legal title to the interests granted, assigned, and transferred herein. All payments or deposits with respect to the Secured Obligations shall be made to Lender, all advances under the Loan Documents shall be made by Lender, and all consents, approvals, or other determinations required or permitted of Mortgagee herein shall be made by Lender. MERS shall at all times comply with the instructions of Lender and its successors and assigns. If necessary to comply with law or custom, MERS (for the benefit of Lender and its successors and assigns) may be directed by Lender to exercise any or all of those interests, including without limitation, the right to foreclose and sell the Property, and take any action required of Lender, including without limitation, a release, discharge or reconveyance of this Mortgage. Subject to the foregoing, all references herein to "Mortgagee" shall include Lender and its successors and assigns.

9

1061101579

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security
Instrument and in any rider(s) executed by Borrower and recorded with it.

*Paul B. Caldarera*                                                              (Seal)
**PAUL B CALDARERA**                                                      - Borrower

10

1061101579

[Space Below This Line For Acknowledgment]

STATE OF MISSISSIPPI

COUNTY OF Harrison

Personally appeared before me, the undersigned authority in and for the said county and state, on this 30th day
of October , 20 11 , within my jurisdiction, the within named
PAUL B CALDARERA

who acknowledged that (he) (she) (they) executed the above and foregoing instrument.

*(notary seal: JAMIE M FUNDERBURK, NOTARY PUBLIC, ID No. 97394, My Comm Expires Oct 28, 2014, HARRISON COUNTY, STATE OF MISSISSIPPI)*

_____ (NOTARY PUBLIC)

My commission expires: _____

(Affix official seal, if applicable)

Order No.   2301-49613
Version 3
UPDATE

EXHIBIT "A"
LEGAL DESCRIPTION

THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF MISSISSIPPI, COUNTY OF HARRISON, AND IS DESCRIBED AS FOLLOWS:

THE FOLLOWING DESCRIBED LAND SITUATED IN THE CITY OF LONG BEACH, HARRISON COUNTY, FIRST JUDICIAL DISTRICT, MISSISSIPPI, TO WIT:

LOTS 6, 7, 8, 9 AND 10, BLOCK 1, SEA SHORE SUBDIVISION, A SUBDIVISION  ACCORDING TO THE OFFICIAL MAP OR PLAT THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE CHANCERY CLERK OF HARRISON COUNTY, MISSISSIPPI, FIRST  JUDICIAL DISTRICT, WITH ALL IMPROVEMENTS THEREON AND APPRUTENANCES  THEREUNTO BELONGING.

PARCEL NUMBER(S): 0512H-02-091.000

VM.COMMIT.LEGAL

# Exhibit C



J1 - GULFPORT DISTRICT
INSTRUMENT 2021-0027938-T-J1
FILED/RECORDED 9/30/2021 2:23:01 PM
TOTAL FEES $37.00
2 PAGES RECORDED

Prepared By and Return To:
**Murat Deniz**
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(239) 351-2442

Space above for Recorder's use

15418117

Loan No: 4094907

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR GENERATION MORTGAGE COMPANY, ITS SUCCESSORS AND ASSIGNS, whose address is 1901 E. VOORHEES ST., SUITE C, DANVILLE, IL 61834; P.O. BOX 2026, FLINT, MI 48501-2026, PHONE#: 800-646-6377, (ASSIGNOR), does hereby grant, assign and transfer to MORTGAGE ASSETS MANAGEMENT, LLC, whose address is 12345 N LAMAR BLVD STE 125, AUSTIN, TX 78753, PHONE#: N/A, (ASSIGNEE), its successors, transferees and assigns forever, all interest, all liens, and any rights due or to become due thereon under that certain deed of trust described below.

Date of Deed of Trust: 10/26/2011
Original Loan Amount: $226,800.00
Executed by (Borrower(s)): PAUL B CALDARERA
Original Trustee: PREMIER REVERSE CLOSINGS, LA PALMA
Original Beneficiary: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR GENERATION MORTGAGE COMPANY, ITS SUCCESSORS AND ASSIGNS
Filed of Record: In Book N/A, Page N/A
Document/Instrument No: 2011 9971 T-J1 in the Recording District of Harrison 1st Judicial District (Gulfport), MS, Recorded on 11/14/2011.

Property more commonly described as: 105 S SEASHORE AVE, LONG BEACH, MISSISSIPPI 39560-5706

MIN# 100916410611015795        MERS PH# 1-888-679-MERS

4094907 Project Clover Whole 15418117

Instrument# 20210027938
TRUST BOOK - J1 - GULFPORT DISTRICT

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date:  SEP 2 1 2021

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR GENERATION MORTGAGE COMPANY, ITS SUCCESSORS AND ASSIGNS

By:  Kim Gentry                           Witness Name:  Kelli Thompson
Title:  Assistant Secretary

---

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

---

State of  Texas
County of  Denton

On  SEP 2 1 2021  , before me,  Valencia Metcalf  , a Notary Public, personally appeared  Kim Gentry  ,  Assistant Secretary  of/for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR GENERATION MORTGAGE COMPANY, ITS SUCCESSORS AND ASSIGNS, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of  Texas  that the foregoing paragraph is true and correct. I further certify  Kim Gentry  , signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal

Valencia Metcalf

(Notary Name):
My commission expires:  FEB 2 8 2023

VALENCIA METCALF
Notary Public, State of Texas
Comm Expires 02-28-2023
Notary ID 128535414

4094907 Project Clover Whole 15418117

**PHH**®

**MORTGAGE**

**Exhibit D**

PO Box 24606, West Palm Beach, FL 33416

April 11, 2024

Paul B Caldarera
105 S Seashore Ave.,
Long Beach, MS 39560-5706

|  |  |
|---|---|
| Loan Number: | 1061101579 |
| Reference Number: | 224346 |
| Mortgagor: | Paul B Caldarera |
| Property: | 105 S Seashore Ave., |
|  | Long Beach, MS 39560-5706 |

*[handwritten note, right margin:] This letter states "The state determines whether wind insurance is required for your property, and you must meet this requirement by obtaining the appropriate coverage."*

*It also has the wrong interpretation of the word "all" in paragraph 3 on page 3 of the attached Deed of Trust.*

Dear Customer,

Thank you for the recent communication regarding the account referenced above in which you requested documentation supporting the necessity of wind insurance for your property.

The determination of insurance is a state requirement that must be strictly followed. The state determines whether wind insurance is required for your property, and you must meet this requirement by obtaining the appropriate coverage.

While there may not be specific documentation mandating windstorm insurance for your property, the mortgage agreement explicitly requires the borrower to obtain insurance for **all** current and future property improvements, safeguarding against a range of risks **including hazards, casualties, and contingencies like fire.**

This insurance must be maintained in the amounts and for the periods required by the lender or the Secretary of Housing and Urban Development. This information is found in Section 3: Fire, Flood, and Other Insurance. We have enclosed the mortgage agreement for your careful review.

Should you have questions, you may contact Marcell Stewart or another default representative from the team at 866-799-7724 during their regular business hours of 8:00 a.m. – 7:00 p.m. Eastern Time Monday through Friday.

Sincerely,

Loan Servicing

reverse.mortgagequestions.com

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.

## Exhibit E

Client Id: RMS/FCAOL
Loan #: 224346-ER



*1 4 7 0 8 1 1*

# ASSIGNMENT OF DEED OF TRUST

*FOR VALUE RECEIVED*, **MORTGAGE ASSETS MANAGEMENT, LLC**, whose address is c/o PHH Mortgage Corporation d/b/a PHH Mortgage Services, 1661 Worthington Road, Ste. 100, West Palm Beach, FL 33409, does hereby assign and transfer to **BANK OF NEW YORK MELLON TRUST COMPANY, N.A. AS TRUSTEE FOR MORTGAGE ASSETS MANAGEMENT SERIES I TRUST** whose address is c/o Mortgage Assers Management, LLC, 14405 Walters Road, Suite 200, Houston, TX 77014, all its right, title and interest in and to the described Deed of Trust executed by **PAUL B CALDARERA** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., BENEFICIARY, AS NOMINEE FOR GENERATION MORTGAGE COMPANY, ITS SUCCESSORS AND ASSIGNS** for **$226,800.00**, dated **10/26/2011** of record on **11/14/2011** as Document **2011 9971-T-J1**, in the **HARRISON 2ND DISTRICT** County Clerk's Office, State of **MISSISSIPPI**.
Property Address: 105 S Seashore Ave, Long Beach, MISSISSIPPI 39560-5706
Legal description: SEE ATTACHED EXHIBIT "A"
Parcel: 0512H-02-091.000

Executed this 05/20/2024

**MORTGAGE ASSETS MANAGEMENT, LLC BY AND THROUGH ITS ATTORNEY IN FACT, PHH MORTGAGE CORPORATION D/B/A PHH MORTGAGE SERVICES**

By:    Kelley Earle
Title:    Senior Servicing Operations Specialist

**Prepared By And**
**After Recording Return To:**

**DS DocSolutionUSA**

DocSolutionUSA, LLC, dba DocSolution, Inc.

Warren E. Johnsey, Attorney at Law
2316 Southmore
Pasadena, TX 77502
713-941-4928
**DocSolutionUSA, LLC, d/b/a DocSolution, Inc. did not prepare a title search of the Property described in the document below. The Preparer of this document makes no representation as to the status and validity of, including, but not limited to, the title, loan history, boundary survey, property use, or zoning regulations of the Property assigned, transferred, conveyed, released, or any other disposition of the Property. Information herein was provided to preparer by Grantor/Grantee and/or their Agent.**

Assignor phone number is 888-918-1110
Assignee phone number is _____

# ACKNOWLEDGMENT

STATE OF FLORIDA

COUNTY OF PALM BEACH

The foregoing instrument was acknowledged before me by means ☑ physical presence ☐ online notarization, this 05/20/2024 by Kelley Earle, Senior Servicing Operations Specialist of PHH Mortgage Corporation d/b/a PHH Mortgage Services, a New Jersey Corporation, as Attorney in Fact for MORTGAGE ASSETS MANAGEMENT, LLC, ITS SUCCESSORS AND ASSIGNS, a corporation, on behalf of the corporation. He/She is personally known to me .

Given under my hand and seal of office this 20th day of May, A.D.2024.

Melisia Thompson
Notary Public in and for the State of Florida
Notary's Printed Name: **Melisia Thompson**
My Commission Expires: 02/26/2027

Notary Public State of Florida
Melisia Thompson
My Commission HH 368289
Expires 02/26/2027

For $226,800.00 dated 10/26/2011



Order No.  2301-49613
Version 3
UPDATE

EXHIBIT "A"
LEGAL DESCRIPTION

THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF MISSISSIPPI, COUNTY OF
HARRISON, AND IS DESCRIBED AS FOLLOWS:

THE FOLLOWING DESCRIBED LAND SITUATED IN THE CITY OF LONG BEACH, HARRISON
COUNTY, FIRST JUDICIAL DISTRICT, MISSISSIPPI, TO WIT:

LOTS 6, 7, 8, 9 AND 10. BLOCK 1, SEA SHORE SUBDIVISION, A SUBDIVISION ACCORDING
TO THE OFFICIAL MAP OR PLAT THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE
CHANCERY CLERK OF HARRISON COUNTY, MISSISSIPPI, FIRST JUDICIAL DISTRICT, WITH
ALL IMPROVEMENTS THEREON AND APPRUTENANCES  THEREUNTO BELONGING.

PARCEL NUMBER(S): 0S12H-02-091.000

**Exhibit F**



# MISSISSIPPI CENTER FOR LEGAL SERVICES CORPORATION

*serving* **43** *counties*

### URGENT ATTENTION REQUIRED

### CEASE AND DESIST DEMAND

August 20, 2024

"Equal Justice for All"

☐ **Administrative, VOCA**
  **& Hattiesburg Office**
  111 East Front Street (39401)
  Post Office Drawer 1728
  Hattiesburg, MS 39403-1728
  (601) 545-2950
  (800) 773-1737
  Fax: (601) 545-2935

☐ **Gulfport Office**
  520 E. Pass Road, Suite J (39506)
  Post Office Box 8691
  Gulfport, MS 39507
  (228) 896-9148
  (877) 664-0238
  Fax: (228) 896-9345

■ **Jackson, VOCA &**
  **State Initiatives Office**
  414 South State Street
  Suite 300 (39201)
  Post Office Box 951
  Jackson, MS 39205-0951
  (601) 948-6752
  (800) 959-6752
  Fax: (601) 948-6757
  Fax: (601) 948-6759

☐ **McComb Office**
  221 Main Street (39648)
  Post Office Box 575
  McComb, MS 39649-0575
  (601) 684-0578
  (800) 898-0985
  Fax: (601) 684-0575

☐ **Meridian Office**
  2305 Fifth Street
  2nd Floor (39302)
  Post Office Box 1931
  Meridian, MS 39302-1931
  (601) 693-5470
  (888) 631-9161
  Fax: (601) 693-5473

PHH Mortgage Services
P.O. Box 66002
Lawrenceville, NJ 08648

Rubin Lublin, LLC
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071

Re:   Mr. Paul Bernard Caldarera
      Loan Number: 1061101579
      105 South Seashore Ave
      Long Beach, MS 39560

To Whom It May Concern:

Our corporation represents Mr. Paul Caldarera concerning the above-referenced Reverse Mortgage Loan serviced by PHH Mortgage Services. I am writing to formally demand that PHH Mortgage Services immediately cease all foreclosure proceedings initiated against my client's property located at the above address. The pending foreclosure in illegal and invalid, in that it is based on the alleged non-payment of premiums for force-placed wind damage insurance that PHH Mortgage Services unilaterally imposed on the property.

1. Lack of Contractual Basis for Force-Placed Insurance: The Deed of Trust governing the mortgage loan in question expressly requires my client to maintain insurance for hazards, casualties, and contingencies, including fire, as do all similar deeds of trust. However, it does not explicitly mandate wind damage insurance, notwithstanding that wind damage insurance was available at the time of the origination of this mortgage.  Since wind damage is a significant and material issue for property located on the Gulf Coast, it is evident that the parties did not intend to require such coverage.  In fact, had such coverage been required of my client, he would have been financially unable to perform under the agreement. In fact, the course of conduct of the parties under the agreement over the first ten or more years was clear evidence that the parties did not intend for such coverage to be required. Therefore, the imposition of force-placed wind insurance by PHH Mortgage Services is unwarranted, not supported by the terms of the Deed of Trust and is a breach of the agreement by PHH.

PHH Mortgage Services, et. al                                        Page 2
August 20, 2024
--------------------------------

2. <u>Violation of RESPA</u>: Under the Real Estate Settlement Procedures Act (RESPA), specifically 12 C.F.R. § 1024.37, PHH Mortgage Services is prohibited from charging my client for force-placed insurance. Wind insurance was neither required by the Deed of Trust nor necessary under the broad terms of "hazards" and "contingencies."  The failure to adhere to RESPA's strict requirements regarding force-placed insurance is grounds for immediate cessation of the foreclosure.

3. <u>Bad Faith and Unjust Enrichment</u>: PHH is the successor servicer for the mortgage, which is owned by successor lender/owners. Section 15 of the Deed of Trust binds the lender to honor all covenants and agreements in the agreement. By imposing unnecessary and unauthorized force-placed insurance, PHH Mortgage Services has acted in bad faith and sought to unjustly enrich itself at my client's expense by shifting the burden of the risk that was not agreed upon by the parties to the original agreement. The subsequent attempt to foreclose on the property based on non-payment of these improper charges is both legally and morally indefensible.

### **DEMAND**

In light of the above, we hereby demand on behalf of Mr. Paul Caldarera that PHH Mortgage Services:

1. Immediately cease all foreclosure activities, including any scheduled foreclosure sales, notices, or related actions.

2. Remove any force-placed wind insurance charges from my client's account.

3. Provide written confirmation no later than 12:00 p.m. central standard time on Friday, August 23, 2024, that the foreclosure has been halted and that the account has been corrected. Time is of the essence.

Failure to comply with these demands will leave my client with no alternative but to pursue all available legal remedies, including filing a lawsuit for breach of contract, violations of RESPA, and other applicable claims. Please be advised that in such an event, my client will seek damages, attorneys' fees, and any other relief the court deems appropriate.

I trust that PHH Mortgage Services will take the necessary steps to resolve this matter promptly and avoid further legal action.

Please direct all future correspondence regarding this matter to my office.

                                        Respectfully submitted,

                                        _____
                                        W. David Watkins, Sr.

Cc:    Mr. Paul Caldarera

PHH Mortgage Services, et. al                                                              Page 3
August 20, 2024
--------------------------------

          James Wright, Esq.

Enclosures (1):  Authorization to Release Information

**_W. David Watkins, Sr._**
wwatkins@mslegalservices.org
Foreclosure Defense Staff Attorney
414 South State Street
Suite 300
Post Office Box 951
Jackson, MS 39205-0951
(601) 427-3650

# MISSISSIPPI CENTER FOR LEGAL SERVICES CORPORATION
### *Serving 43 Counties*

TO: _____

FROM: _____      SSN: __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__

### RE:      *AUTHORIZATION TO RELEASE INFORMATION*

I, __Paul B. Caldarera__ , the undersigned, do hereby attest that I have retained Mississippi Center for Legal Services Corporation (MCLSC), to represent me.

I hereby consent to and authorize the disclosure of all information contained within my files to MCLSC.  I authorize the release of this information over the telephone, by letter, or in person.

I further request and authorize that a copy of all correspondence sent to me be sent to MCLSC.

Unless revoked by me in writing, this consent shall be valid for one hundred eighty (180) days or for the life of my current application for assistance or problem, whichever is greater.

DATED this the _12_ day of __August__ , A.D., 20_24_ .


_____ Paul B. Caldarera _____
SIGNATURE

_____ 105 S. Seashore ave. _____
STREET

__Long Beach, MS   39560__
CITY        STATE        ZIP CODE

**Effective 08/06/12**

Exhibit G



# MISSISSIPPI CENTER FOR LEGAL SERVICES CORPORATION

*serving* **43** *counties*

### *URGENT ATTENTION REQUIRED*

August 20, 2024

"Equal Justice for All"

☐ **Administrative, VOCA & Hattiesburg Office**
111 East Front Street (39401)
Post Office Drawer 1728
Hattiesburg, MS 39403-1728
(601) 545-2950
(800) 773-1737
Fax: (601) 545-2935

☐ **Gulfport Office**
520 E. Pass Road, Suite J (39506)
Post Office Box 8691
Gulfport, MS 39507
(228) 896-9148
(877) 661-0238
Fax: (228) 896-9345

■ **Jackson, VOCA & State Initiatives Office**
414 South State Street
Suite 300 (39201)
Post Office Box 951
Jackson, MS 39205-0951
(601) 948-6752
(800) 959-6752
Fax: (601) 948-6757
Fax: (601) 948-6759

☐ **McComb Office**
221 Main Street (39648)
Post Office Box 575
McComb, MS 39649-0575
(601) 684-0578
(800) 898-0985
Fax: (601) 684-0575

☐ **Meridian Office**
2305 Fifth Street
2nd Floor (39302)
Post Office Box 1931
Meridian, MS 39302-1931
(601) 693-5470
(888) 631-9161
Fax: (601) 693-5473

PHH Mortgage Services
P.O. Box 66002
Lawrenceville, NJ 08648

Rubin Lublin, LLC
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071

Bank of New York Mellon Trust
Company, N.A.
as Trustee for Mortgage Assets Management Series I Trust
240 Greenwich St,
New York, NY 10286

Re:   Mr. Paul Bernard Caldarera
      Loan Number: 1061101579
      105 South Seashore Ave
      Long Beach, MS 39560

To Whom It May Concern:

Please treat this letter as a **"notice of error"** and **"request for information"** under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) ("RESPA"), and Regulation X, 12 C.F.R. §§ 1024.35, 1024.36. This letter also should be considered as notice of *Demand to Cease and Desist Foreclosure Proceedings.*

This request is made on behalf of our client, **Paul Bernard Caldarera**, based on his dispute of the amount alleged to be due and owing contained in the Attorney's Notice of Acceleration and Foreclosure on behalf of the PHH Mortgage Services.

In your letter of April 11, 2024 (attached as Exhibit "A"), to Mr. Calderara, you have represented to him that the State of Mississippi requires wind insurance coverage on the property. That is simply false and a fraudulent misrepresentation of the insurance laws of Mississippi designed to force Mr. Calderara to purchase insurance that he was not required to purchase.

You claim that Section 3 of the Deed of Trust requires Mr. Calderara to secure wind insurance coverage, at your demand. That is likewise not true and is a

PHH Mortgage Services, et. al                                             Page 2
August 20, 2024
--------------------------------

further misrepresentation by your company.  There is *no provision* in the Deed of Trust, or any other
agreement we can find, that specifically requires wind damage insurance coverage.  That is simply
your company's improper interpretation which constitutes a material substantive change in the
contractual obligations of my client under the Deed of Trust.

You have further insinuated that the insurance requirements you have are now illegally demanding
from Mr. Caldarera may be required by the Secretary of Housing and Urban Development.  That is
likewise untrue and a fraudulent misrepresentation to my client clearly asserted to induce him to bear
a risk of exposure, and to incur a substantial expense that he simply cannot afford to incur and should
not be forced to incur.

When Mr. Caldarera entered into the Reverse Mortgage Agreement (RMA) with Generation
Mortgage Company, there was *NO REQUIREMENT* that the homeowner would need to secure wind
coverage.  While that certainly could have been the case at the time that the agreement was executed,
it was not.  It was not required by the original lender, and its successors in interest continued to honor
that agreement not to require such coverage.  Quite frankly, the cost of wind coverage is such a
substantial condition that Mr. Calderara, being in a fixed low-income position, would likely not even
have considered entering into such an agreement had it been required. Not having such an insurance
requirement was a material and prerequisite consideration for entering into the agreement.

Your company has breached its obligations under the Reverse Mortgage Agreement, in an effort to
shift a risk to my client that was not agreed to in the very beginning. Recognizing that the cost of
wind coverage is material and significant, it was a risk that was undertaken by the lender at the time
of the execution of the RMA.

You cannot unilaterally change the terms of the agreement simply because you might not like the deal
that was struck by your predecessor in interest!

Respectfully, I would direct your attention to Section 15 of the Deed of Trust, which provides, in
part:

>    *The covenants and agreements of this Security Instrument shall bind and benefit the*
>    *successors and assigns of Lender.*

The consideration for entering the contract for the Reverse Mortgage Agreement was preconditioned
upon provisions not requiring wind coverage insurance, even though it was available in the
marketplace.  Any successors in interest to the lender are clearly bound to the same terms, conditions,
and consideration at the time of the execution of the original agreement.

Your actions constitute a clear violation of RESPA, 12 U.S.C. §2605(k)(1)(A), which would give rise
to an action in federal court for damages, including legal fees, actual damages to the borrow, and
noncompliance damages of $2,000.00.

PHH Mortgage Services, et. al                                         Page 3
August 20, 2024
---------------------------------

Please be advised that we intend to file a complaint on behalf of Mr. Caldarera with the Consumer
Financial Protection Bureau (CFPB) for this illegal conduct.

We demand that you **CEASE AND DESIST** any and all efforts to foreclose on Mr. Calderara's
property.  Please note that we are sending under separate communication a formal Demand to Cease
and Desist any and all foreclosure proceedings.

If this Demand is not honored, we intend to seek legal action in the Chancery Court of Harrison
County, Mississippi, and/or the United States District Court for the Southern District of Mississippi,
for injunctive relief, breach of contract, violation of RESPA, and common law fraud.

With respect to our **Request for Information (RFI)**, we are requesting the following information:

1. Documentation showing Mississippi Law requires that Mr. Calderara secure wind insurance
   coverage on his property.
2. Documentation showing the Secretary of Housing and Urban development requires that Mr.
   Calderara secure wind insurance coverage on his property
3. The complete loan history, including but not limited to the following.
4. A copy of the note, deed of trust, any assignments or other documents with respect to this
   debt.
5. A record of any communications with my client with respect to this debt.
6. A statement of the amount of the debt under the Reverse Mortgage obligation, as of this date.
   The monthly principal and interest calculations for the Reverse Mortgage debt from beginning
   of the loan to current date.
7. The amount, payment date, purpose, and recipient of all foreclosure expenses, late charges,
   appraisal fees, property inspection/preservation fees, force placed insurance charges, legal
   fees, recoverable corporate advances, and other expenses or costs that have been charged
   and/or assessed to **Paul Bernard Caldarera**'s mortgage account from beginning of the loan
   to current date.
8. The interest rate on the mortgage account.
9. The transaction codes used by creditor's electronic servicing system, if any, that will assist in
   understanding the entries for transactions listed in the information provided in response to this
   request.
10. Any notes created by personnel of creditor or any representative of the creditor reflecting
    communications with my clients about the account.

To the extent that creditor or any representative of the creditor has charged to the **Paul Bernard
Caldarera**'s mortgage account any late fees, appraisal fees, broker price opinion fees, property
inspection/preservation fees, legal fees, recoverable corporate advances, and other fees or costs in
connection with the notice of acceleration and attorney's claim that the account is in default, **Paul**

PHH Mortgage Services, et. al                                                    Page 4
August 20, 2024
--------------------------------

**Bernard Caldarera**  disputes such fees and costs and specifically requests that the account be
corrected to delete such fees and costs.

Finally, please indicate the date when you began servicing **Paul Bernard Caldarera**'s mortgage
account, and if you acquired the servicing rights in this mortgage account following a transfer of
servicing from another servicer, state the name of the prior servicer and the effective date of the
transfer of servicing to creditor or any representative of the creditor.

Thank you for taking the time to acknowledge and answer this request as required by the Real Estate
Settlement Procedures Act (§ 2605(e)).

                                             Sincerely,

                                             _____
                                             W. David Watkins, Sr.

Cc:    Mr. Paul Caldarera
       James Wright, Esq.
       Honorable Mike Chaney, Commissioner of Insurance for Mississippi

Enclosures (2):  PHH Letter dated April 11, 2024
                 Authorization to Release Information

*W. David Watkins, Sr.*
wwatkins@mslegalservices.org
Foreclosure Defense Staff Attorney
414 South State Street
Suite 300
Post Office Box 951
Jackson, MS 39205-0951
(601) 427-3650

**PHH**

**MORTGAGE**

PO Box 24606, West Palm Beach, FL 33416

April 11, 2024

Paul B Caldarera
105 S Seashore Ave.,
Long Beach, MS 39560-5706

| | |
|---|---|
| Loan Number: | 1061101579 |
| Reference Number: | 224346 |
| Mortgagor: | Paul B Caldarera |
| Property: | 105 S Seashore Ave., |
| | Long Beach, MS 39560-5706 |

Dear Customer,

Thank you for the recent communication regarding the account referenced above in which you requested documentation supporting the necessity of wind insurance for your property.

The determination of insurance is a state requirement that must be strictly followed. The state determines whether wind insurance is required for your property, and you must meet this requirement by obtaining the appropriate coverage.

While there may not be specific documentation mandating windstorm insurance for your property, the mortgage agreement explicitly requires the borrower to obtain insurance for **all** current and future property improvements, safeguarding against a range of risks **including hazards, casualties, and contingencies like fire.**

This insurance must be maintained in the amounts and for the periods required by the lender or the Secretary of Housing and Urban Development. This information is found in Section 3: Fire, Flood, and Other Insurance. We have enclosed the mortgage agreement for your careful review.

Should you have questions, you may contact Marcell Stewart or another default representative from the team at 866-799-7724 during their regular business hours of 8:00 a.m. – 7:00 p.m. Eastern Time Monday through Friday.

Sincerely,

Loan Servicing

reverse.mortgagequestions.com

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.

# MISSISSIPPI CENTER FOR LEGAL SERVICES CORPORATION
## *Serving 43 Counties*

TO: _____

FROM: _____    SSN: _____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_____

### *RE:        AUTHORIZATION TO RELEASE INFORMATION*

I, _*Paul B. Caldarera*_ , the undersigned, do hereby attest that I have retained Mississippi Center for Legal Services Corporation (MCLSC), to represent me.

I hereby consent to and authorize the disclosure of all information contained within my files to MCLSC. I authorize the release of this information over the telephone, by letter, or in person.

I further request and authorize that a copy of all correspondence sent to me be sent to MCLSC.

Unless revoked by me in writing, this consent shall be valid for one hundred eighty (180) days or for the life of my current application for assistance or problem, whichever is greater.

DATED this the _12_ day of _August_____, A.D., 20_24_.


_____*Paul B. Caldarera*_____
SIGNATURE

_____*105 S. Seashore Ave.*_____
STREET

_*Long Beach*_ , MS   39560_____
CITY        STATE        ZIP CODE

**Effective 08/06/12**

# Exhibit H

**W. David Watkins**

| | |
|---|---|
| **From:** | Michael Baringer <mbaringer@rlselaw.com> |
| **Sent:** | Friday, August 23, 2024 1:40 PM |
| **To:** | W. David Watkins |
| **Cc:** | Escalations |
| **Subject:** | [EXTERNAL Email]  RE: [EXTERNAL Email]  RE: Reverse Mortgage Foreclosure problem |

The August 28, 2024 foreclosure sale is being cancelled.

We have requested a reinstatement quote and will provide once it is received.

Respectfully,



**Michael Baringer**
**Senior Foreclosure Attorney**

| | |
|---|---|
| Rubin Lublin, LLC / Rubin Lublin TN, PLLC | Main: 770-246-3300 |
| 3145 Avalon Ridge Place, Suite 100 | Fax: 470-508-9401 |
| Peachtree Corners, Georgia 30071 | Direct: 770-246-3326 |
| www.rlselaw.com | mbaringer@rlselaw.com |
| **Serving Georgia, Mississippi, Tennessee & Alabama** | |

*It is our goal to continually provide personalized service and professional results for our valued partners.  If I have exceeded your expectations and addressed your needs in a timely manner, or if I have not met your expectations, please contact Jane Woll, Director of Client Relations (jwoll@rlselaw.com).*

**PLEASE BE ADVISED THAT THIS LAW FIRM MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED DURING OR AS A RESULT OF THIS COMMUNICATION MAY BE USED FOR THAT PURPOSE.**

IMPORTANT NOTICE: This message is intended to be received only by persons entitled to receive the confidential information it may contain. Electronic messages to clients of Rubin Lublin, LLC may contain information that is confidential and legally privileged. Please do not read, copy, forward, or store this message unless you are an intended recipient of it. If you have received this message in error, please destroy this information.

**From:** W. David Watkins <wwatkins@mslegalservices.org>
**Sent:** Friday, August 23, 2024 2:01 PM
**To:** Michael Baringer <mbaringer@rlselaw.com>
**Cc:** Escalations <Escalations@rubinlublin.com>
**Subject:** [EXTERNAL] RE: [EXTERNAL Email] RE: Reverse Mortgage Foreclosure problem

**CAUTION: This email originated from outside of Rubin Lublin. Please do not click links or open attachments unless you recognize the sender and know the content is safe.**

---

Michael,

Do you an update on the status of the foreclosure set for next week? Obviously, we will be seeking injunctive relief if the foreclosure auction is not cancelled.

Thanks.

*David*

**W. David Watkins, Sr.**
**wwatkins@mslegalservices.org**
Foreclosure Defense Staff Attorney
MS Center for Legal Services Corporation
414 South State Street, Suite 300
P.O. Box 951
Jackson, MS 39205
(601) 427-3650

CONFIDENTIALITY NOTICE

This electronic transmission (and/or the documents accompanying it) may contain certain sensitive and confidential information belonging to the sender which is protected by the attorney/client Privilege. The information is intended only for the use of the individual or entity to which it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any review, retransmission, dissemination, disclosure, copying, distribution or other use of, or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this communication in error, please contact the sender and delete the material from your computer.

**From:** Michael Baringer <mbaringer@rlselaw.com>
**Sent:** Wednesday, August 21, 2024 11:06 AM
**To:** W. David Watkins <wwatkins@mslegalservices.org>
**Cc:** Escalations <Escalations@rubinlublin.com>; James Wright <jwright@mslegalservices.org>; Tracy Rivers <trivers@mslegalservices.org>
**Subject:** [EXTERNAL Email] RE: Reverse Mortgage Foreclosure problem

We are escalating to our client and hope to have a response shortly.

Respectfully,



**Michael Baringer**
**Senior Foreclosure Attorney**

| | |
|---|---|
| Rubin Lublin, LLC / Rubin Lublin TN, PLLC | Main: 770-246-3300 |
| 3145 Avalon Ridge Place, Suite 100 | Fax: 470-508-9401 |
| Peachtree Corners, Georgia 30071 | Direct: 770-246-3326 |
| www.rlselaw.com | mbaringer@rlselaw.com |

**Serving Georgia, Mississippi, Tennessee & Alabama**

*It is our goal to continually provide personalized service and professional results for our valued partners. If I have exceeded your expectations and addressed your needs in a timely manner, or if I have not met your expectations, please contact Jane Woll, Director of Client Relations (jwoll@rlselaw.com).*

**PLEASE BE ADVISED THAT THIS LAW FIRM MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED DURING OR AS A RESULT OF THIS COMMUNICATION MAY BE USED FOR THAT PURPOSE.**

IMPORTANT NOTICE: This message is intended to be received only by persons entitled to receive the confidential information it may contain. Electronic messages to clients of Rubin Lublin, LLC may contain information that is confidential and legally privileged. Please do not read, copy, forward, or store this message unless you are an intended recipient of it. If you have received this message in error, please destroy this information.

**From:** W. David Watkins <wwatkins@mslegalservices.org>
**Sent:** Tuesday, August 20, 2024 1:42 PM
**To:** Michael Baringer <mbaringer@rlselaw.com>
**Cc:** Escalations <Escalations@rubinlublin.com>; James Wright <jwright@mslegalservices.org>; Tracy Rivers <trivers@mslegalservices.org>
**Subject:** [EXTERNAL] Reverse Mortgage Foreclosure problem
**Importance:** High

**CAUTION: This email originated from outside of Rubin Lublin. Please do not click links or open attachments unless you recognize the sender and know the content is safe.**

---

RE:   Mr. Paul Bernard Caldarera
      Loan Number: 1061101579
      105 South Seashore Ave
      Long Beach, MS 39560

Michael,

I don't know if you are handling this matter or who in your firm might be. It is a foreclosure on a Reverse Mortgage for out client listed above, for non-payment of force-placed wind damage insurance coverage.

We are challenging this action and would like to bring the matter to your attention, as the foreclosure firm, to consider cancelling the scheduled foreclosure sale, presently set for August 28, 2024.

I would appreciate the opportunity to discuss this matter with whoever in your firm might be handling this.

Thanks.

Regards,

*David*

**W. David Watkins, Sr.**
**wwatkins@mslegalservices.org**
Foreclosure Defense Staff Attorney
MS Center for Legal Services Corporation
414 South State Street, Suite 300
P.O. Box 951
Jackson, MS 39205
(601) 427-3650

CONFIDENTIALITY NOTICE

This electronic transmission (and/or the documents accompanying it) may contain certain sensitive and confidential information belonging to the sender which is protected by the attorney/client Privilege. The information is intended only for the use of the individual or entity to which it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any review, retransmission, dissemination, disclosure, copying, distribution or other use of, or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this communication in error, please contact the sender and delete the material from your computer.

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.
CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

4

# Exhibit I

## RUBIN LUBLIN, LLC
Attorneys and Counselors at Law
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071
TEL (877) 813-0992
FAX (470) 508-9401

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**Copy Via Regular Mail**

February 28, 2025

MS Center for Legal Services Corporation (Borrower Attorney for CALDARERA, PAUL B.)
414 South State Street, Suite 300
P.O. Box 951
Jackson, MS 39205

*Notice of Acceleration and Foreclosure*

| | |
|---|---|
| **File No.:** | **RMU-24-02805-5** |
| **Loan:** | **Deed of Trust from PAUL B CALDARERA to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. AS BENEFICIARY, AS NOMINEE FOR GENERATION MORTGAGE COMPANY ("Original Lender")** |
| **Property Address:** | **105 S SEASHORE AVE, LONG BEACH, MS 39560** |

Please be advised that this law firm represents Bank of New York Mellon Trust Company, N.A. as Trustee for Mortgage Assets Management Series I Trust ("Foreclosing Entity"), successor in interest to the Original Lender on the above-referenced Loan. By separate communication you may have been advised of your rights under the Fair Debt Collection Practices Act (the "FDCPA"), should that Act apply to this proceeding. Nothing in this letter shall prevent you from exercising those rights as set forth in that communication. This letter is to advise you that we have been retained to institute non-judicial foreclosure proceedings against the referenced property. Enclosed you will find a copy of the Notice of Substitute Trustee's Sale that was submitted for publication in connection with a foreclosure sale of the above property. The foreclosure sale is scheduled for **April 9, 2025** ("Sale Date").

The indebtedness secured by said Deed of Trust has been and is hereby declared due because of default under the terms of said Deed of Trust. *The total amount of the debt owed may consist of unpaid principal balance, any unpaid accrued interest, escrow/impound shortages or credits, late charges, legal fees/costs, and other charges. To find out the amount needed to either bring the Loan current or to pay off the Loan in full, please call 866-503-5559.*
**(Continued on back/next page)**



NOTICE OF SUBSTITUTE TRUSTEE'S SALE

STATE OF MISSISSIPPI
COUNTY OF 1ST DISTRICT HARRISON

WHEREAS, default has occurred in the performance of the covenants, terms and conditions of
a Deed of Trust dated October 26, 2011, executed by PAUL B CALDARERA conveying
certain real property therein described to PREMIER REVERSE CLOSINGS, LA PALMA, as
Trustee, for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. AS
BENEFICIARY, AS NOMINEE FOR GENERATION MORTGAGE COMPANY, Original
Beneficiary, to secure the indebtedness therein described, as same appears of record in the
office of the Chancery Clerk of 1st District Harrison County, Mississippi filed and recorded
November 14, 2011, at Instrument Number 2011-9971-T-J1; and
WHEREAS, the beneficial interest of said Deed of Trust was transferred and assigned to
Bank of New York Mellon Trust Company, N.A. as Trustee for Mortgage Assets
Management Series I Trust; and
WHEREAS, Rubin Lublin, LLC has been appointed as Substitute Trustee; and
NOW, THEREFORE, the holder of said Deed of Trust, having requested the undersigned so
to do, as Substitute Trustee or his duly appointed agent, by virtue of the power, duty and
authority vested and imposed upon said Substitute Trustee shall, on **April 9, 2025** within the
lawful hours of sale between 11:00AM and 4:00PM at the front door on the east side of the
Courthouse proceed to sell at public outcry to the highest and best bidder for cash or
certified funds ONLY, the following described property situated in 1st District Harrison
County, Mississippi, to wit:

THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF MISSISSIPPI,
COUNTY OF HARRISON, AND IS DESCRIBED AS FOLLOWS: THE FOLLOWING
DESCRIBED LAND SITUATED IN THE CITY OF LONG BEACH, HARRISON
COUNTY, FIRST JUDICIAL DISTRICT, MISSISSIPPI, TO WIT: LOTS 6, 7, 8, 9 AND
10, BLOCK 1, SEA SHORE SUBDIVISION, A SUBDIVISION ACCORDING TO THE
OFFICIAL MAP OR PLAT THEREOF ON FILE AND OF RECORD IN THE OFFICE OF
THE CHANCERY CLERK OF HARRISON COUNTY, MISSISSIPPI, FIRST JUDICIAL
DISTRICT, WITH ALL IMPROVEMENTS THEREON AND APPURTENANCES
THEREUNTO BELONGING. PARCEL NUMBER(S): 0512H-02-091-000

PROPERTY ADDRESS: The street address of the property is believed to be **105 S
SEASHORE AVE, LONG BEACH, MS 39560**. In the event of any discrepancy between
this street address and the legal description of the property, the legal description shall
control.

Title to the above described property is believed to be good, but I will convey only such title
as is vested in me as Substitute Trustee.

THIS LAW FIRM IS ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE.

Rubin Lublin, LLC
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071
rlselaw.com/property-listing



Case 1:25-cv-00145-HSO-BWR   Document 5-1   Filed 05/22/25   Page 167 of 193
Case 2:24-11-25-cv-00683-MAA   Document #24-1   Filed 04/07/2025   Page 160 of 386

3

Rubin Lublin, LLC
P.O. Box 502830
San Diego, CA 92150-2830

IMPORTANT INFORMATION
ENCLOSED



(11) 969 0024 8943 5096 9

**Mailed On:** 02/28/2025          **Order Number:**      0006809-01    FC
**ClientID:**   Ru_Lu000904       **Reference Number:** 24-02805

MS Center for Legal Services Corporation
414 South State Street, Suite 300
P.O. Box 951
Jackson, MS 39205





# MISSISSIPPI CENTER FOR LEGAL SERVICES CORPORATION

*serving* **43** *counties*

March 5, 2025

***VIA CERTIFIED MAIL***

"Equal Justice for All"

☐ **Administrative, VOCA & Hattiesburg Office**
111 East Front Street (39401)
Post Office Drawer 1728
Hattiesburg, MS 39403-1728
(601) 545-2950
(800) 773-1737
Fax: (601) 545-2935

☐ **Gulfport Office**
520 E. Pass Road, Suite J (39506)
Post Office Box 8691
Gulfport, MS 39507
(228) 896-9148
(877) 664-0238
Fax: (228) 896-9345

■ **Jackson, VOCA & State Initiatives Office**
414 South State Street
Suite 300 (39201)
Post Office Box 951
Jackson, MS 39205-0951
(601) 948-6752
(800) 959-6752
Fax: (601) 948-6757
Fax: (601) 948-6759

☐ **McComb Office**
221 Main Street (39648)
Post Office Box 575
McComb, MS 39649-0575
(601) 684-0578
(800) 898-0985
Fax: (601) 684-0575

☐ **Meridian Office**
2305 Fifth Street
2nd Floor (39302)
Post Office Box 1931
Meridian, MS 39302-1931
(601) 693-5470
(888) 631-9161
Fax: (601) 693-5473

PHH Mortgage Services
P.O. Box 66002
Lawrenceville, NJ 08648

Rubin Lublin, LLC
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071

Bank of New York Mellon Trust Company, N.A.
As Trustee for Mortgage Assets Management Series I Trust
240 Greenwich St.
New York, NY 10286

**Re: Notice of Error and Request for Information**
**Mr. Paul Bernard Caldarera**
**Loan Number: 1061101579**
**Property Address: 105 South Seashore Ave, Long Beach, MS 39560**

To Whom It May Concern,

Pursuant to the Real Estate Settlement Procedures Act ("RESPA"), **12 U.S.C. § 2605(e)** and **12 C.F.R. §§ 1024.35, 1024.36**, this letter serves as both a **Notice of Error (NOE)** and **Request for Information (RFI)** regarding the servicing of the above-referenced reverse mortgage loan.

**I. NOTICE OF ERROR**

This notice is submitted due to PHH Mortgage Services' imposition of a **fraudulent flood insurance requirement** and potential **false certifications made to HUD** in connection with Mr. Caldera's reverse mortgage. The specific errors are as follows:

1.     **Misrepresentation of HUD Requirements:** PHH falsely claimed that HUD requires flood insurance for Mr. Caldera's reverse mortgage, despite the waiver of such requirement at the time the original loan was closed.

2.     **False Certifications to HUD:** PHH may have submitted certifications to HUD stating that it complied with all FHA HECM servicing regulations while **imposing unauthorized insurance obligations.**

PHH Mortgage Services, et al                                              Page 2
March 5, 2025
--------------------------------

3. **Retaining Overpayments from Federal Funds:** PHH continued to receive FHA insurance benefits while imposing **unauthorized charges**, which may constitute an FCA violation under **31 U.S.C. § 3729 et seq.**

4. **Improper Force-Placed Insurance Practices:** PHH failed to provide proper disclosures and notice before imposing flood insurance, violating **RESPA, 12 U.S.C. § 2605(l) and 12 C.F.R. § 1024.37**.

5. **Failure to Properly Respond to Prior NOE and RFI:** PHH failed to fully address the August 20, 2024, NOE, which pointed out that PHH misrepresented insurance obligations.

## II. REQUEST FOR INFORMATION

Pursuant to **12 C.F.R. § 1024.36**, please provide the following documents within **30 business days**:

1. **Any and all documents or communications between PHH and HUD** regarding flood insurance requirements for reverse mortgage loans.

2. **A copy of any certifications made by PHH to HUD** regarding compliance with servicing requirements for this loan.

3. **All internal PHH policies and procedures** regarding force-placed insurance on HECM loans.

4. **Any correspondence or memos** related to PHH's decision to require flood insurance for Mr. Caldera's loan.

5. **All invoices, escrow calculations, and payment records** related to any force-placed insurance imposed on Mr. Caldera's loan.

6. **Any record of payments received from HUD** in connection with Mr. Caldera's loan from 2021 to present.

## III. DEMAND FOR CORRECTIVE ACTION

We demand that PHH immediately:

- **Cease all foreclosure proceedings** related to the improper flood insurance charge.

- **Remove all charges related to force-placed flood insurance** from Mr. Caldera's account.

- **Provide written confirmation** that PHH has not falsely certified compliance with HUD regulations.

- **Correct any records that have been submitted to HUD** with false information regarding flood insurance.

If PHH fails to respond adequately within the required timeframe, we will pursue **litigation under RESPA, the False Claims Act, and all other applicable federal and state laws**.

Please direct all future correspondence regarding this matter to my office.

PHH Mortgage Services, et al                                                      Page 3
March 5, 2025
----------------------------------

                                        Respectfully submitted,

                                        *W. David Watkins*

                                        _____

                                        W. David Watkins, Sr.

Cc:     Mr. Paul Caldarera
        C. Elise Hickman Lowery, Esq.
        Director of Litigation, MCLSC
        Telephone: 228.260.0933, ext. 2507
        celowery@mslegalservices.org

**W. David Watkins, Sr.**
wwatkins@mslegalservices.org
Foreclosure Defense Staff Attorney
414 South State Street
Suite 300
Post Office Box 951
Jackson, MS 39205-0951
(601) 427-3650

# Exhibit K

## W. David Watkins

**From:** Reverse Customer Assist <customerassist@phhreverse.com>
**Sent:** Monday, March 10, 2025 3:29 PM
**To:** W. David Watkins
**Subject:** [EXTERNAL Email]  Auto Reply: We Received Your Message


Thank you for your email to PHH Mortgage Services.  This is a confirmation that we have received your request regarding your reverse mortgage. We will promptly review your request, perform any required research and email you a detailed response.  Please contact us if you have any questions.

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.



# MISSISSIPPI CENTER FOR LEGAL SERVICES CORPORATION

*serving* **43** *counties*

March 5, 2025

***VIA CERTIFIED MAIL***

"Equal Justice for All"

**Administrative, VOCA & Hattiesburg Office**
111 East Front Street (39401)
Post Office Drawer 1728
Hattiesburg, MS 39403-1728
(601) 545-2950
(800) 773-1737
Fax: (601) 545-2935

**Gulfport Office**
520 E. Pass Road, Suite J (39506)
Post Office Box 8691
Gulfport, MS 39507
(228) 896-9148
(877) 664-0238
Fax: (228) 896-9345

**Jackson, VOCA & State Initiatives Office**
414 South State Street
Suite 300 (39201)
Post Office Box 951
Jackson, MS 39205-0951
(601) 948-6752
(800) 959-6752
Fax: (601) 948-6757
Fax: (601) 948-6759

**McComb Office**
221 Main Street (39648)
Post Office Box 575
McComb, MS 39649-0575
(601) 684-0578
(800) 898-0985
Fax: (601) 684-0575

**Meridian Office**
2305 Fifth Street
2nd Floor (39302)
Post Office Box 1931
Meridian, MS 39302-1931
(601) 693-5470
(888) 631-9161
Fax: (601) 693-5473

PHH Mortgage Services
P.O. Box 66002
Lawrenceville, NJ 08648

Rubin Lublin, LLC
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071

Bank of New York Mellon Trust Company, N.A.
As Trustee for Mortgage Assets Management Series I Trust
240 Greenwich St.
New York, NY 10286

**Re: Notice of Error and Request for Information**
**Mr. Paul Bernard Caldarera**
**Loan Number: 1061101579**
**Property Address: 105 South Seashore Ave, Long Beach, MS 39560**

To Whom It May Concern,

Pursuant to the Real Estate Settlement Procedures Act ("RESPA"), **12 U.S.C. § 2605(e)** and **12 C.F.R. §§ 1024.35, 1024.36**, this letter serves as both a **Notice of Error (NOE)** and **Request for Information (RFI)** regarding the servicing of the above-referenced reverse mortgage loan.

## I. NOTICE OF ERROR

This notice is submitted due to PHH Mortgage Services' imposition of a **fraudulent flood insurance requirement** and potential **false certifications made to HUD** in connection with Mr. Caldera's reverse mortgage. The specific errors are as follows:

1.      **Misrepresentation of HUD Requirements:** PHH falsely claimed that HUD requires flood insurance for Mr. Caldera's reverse mortgage, despite the waiver of such requirement at the time the original loan was closed.

2.      **False Certifications to HUD:** PHH may have submitted certifications to HUD stating that it complied with all FHA HECM servicing regulations while **imposing unauthorized insurance obligations**.

PHH Mortgage Services, et al                                                      Page 2
March 5, 2025
---------------------------------

3. **Retaining Overpayments from Federal Funds:** PHH continued to receive FHA insurance benefits while imposing **unauthorized charges**, which may constitute an FCA violation under **31 U.S.C. § 3729 et seq.**

4. **Improper Force-Placed Insurance Practices:** PHH failed to provide proper disclosures and notice before imposing flood insurance, violating **RESPA, 12 U.S.C. § 2605(l) and 12 C.F.R. § 1024.37**.

5. **Failure to Properly Respond to Prior NOE and RFI:** PHH failed to fully address the August 20, 2024, NOE, which pointed out that PHH misrepresented insurance obligations.

## II. REQUEST FOR INFORMATION

Pursuant to **12 C.F.R. § 1024.36**, please provide the following documents within **30 business days**:

1. **Any and all documents or communications between PHH and HUD** regarding flood insurance requirements for reverse mortgage loans.

2. **A copy of any certifications made by PHH to HUD** regarding compliance with servicing requirements for this loan.

3. **All internal PHH policies and procedures** regarding force-placed insurance on HECM loans.

4. **Any correspondence or memos** related to PHH's decision to require flood insurance for Mr. Caldera's loan.

5. **All invoices, escrow calculations, and payment records** related to any force-placed insurance imposed on Mr. Caldera's loan.

6. **Any record of payments received from HUD** in connection with Mr. Caldera's loan from 2021 to present.

## III. DEMAND FOR CORRECTIVE ACTION

We demand that PHH immediately:

- **Cease all foreclosure proceedings** related to the improper flood insurance charge.

- **Remove all charges related to force-placed flood insurance** from Mr. Caldera's account.

- **Provide written confirmation** that PHH has not falsely certified compliance with HUD regulations.

- **Correct any records that have been submitted to HUD** with false information regarding flood insurance.

If PHH fails to respond adequately within the required timeframe, we will pursue **litigation under RESPA, the False Claims Act, and all other applicable federal and state laws**.

Please direct all future correspondence regarding this matter to my office.

PHH Mortgage Services, et al                                                    Page 3
March 5, 2025
---------------------------------

                                            Respectfully submitted,


                                            *W. David Watkins*
                                            _____
                                            W. David Watkins, Sr.

Cc:     Mr. Paul Caldarera
        C. Elise Hickman Lowery, Esq.
        Director of Litigation, MCLSC
        Telephone: 228.260.0933, ext. 2507
        celowery@mslegalservices.org

**W. David Watkins, Sr.**
wwatkins@mslegalservices.org
Foreclosure Defense Staff Attorney
414 South State Street
Suite 300
Post Office Box 951
Jackson, MS 39205-0951
(601) 427-3650

## RUBIN LUBLIN, LLC

Attorneys and Counselors at Law
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071
TEL (877) 813-0992
FAX (470) 508-9401

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**Copy Via Regular Mail**

February 28, 2025

MS Center for Legal Services Corporation (Borrower Attorney for CALDARERA, PAUL B.)
414 South State Street, Suite 300
P.O. Box 951
Jackson, MS 39205

*Notice of Acceleration and Foreclosure*

| | |
|---|---|
| **File No.:** | **RMU-24-02805-5** |
| **Loan:** | **Deed of Trust from PAUL B CALDARERA to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. AS BENEFICIARY, AS NOMINEE FOR GENERATION MORTGAGE COMPANY ("Original Lender")** |
| **Property Address:** | **105 S SEASHORE AVE, LONG BEACH, MS 39560** |

Please be advised that this law firm represents Bank of New York Mellon Trust Company, N.A. as Trustee for Mortgage Assets Management Series I Trust ("Foreclosing Entity"), successor in interest to the Original Lender on the above-referenced Loan. By separate communication you may have been advised of your rights under the Fair Debt Collection Practices Act (the "FDCPA"), should that Act apply to this proceeding. Nothing in this letter shall prevent you from exercising those rights as set forth in that communication. This letter is to advise you that we have been retained to institute non-judicial foreclosure proceedings against the referenced property. Enclosed you will find a copy of the Notice of Substitute Trustee's Sale that was submitted for publication in connection with a foreclosure sale of the above property. The foreclosure sale is scheduled for **April 9, 2025** ("Sale Date").

The indebtedness secured by said Deed of Trust has been and is hereby declared due because of default under the terms of said Deed of Trust. *The total amount of the debt owed may consist of unpaid principal balance, any unpaid accrued interest, escrow/impound shortages or credits, late charges, legal fees/costs, and other charges. To find out the amount needed to either bring the Loan current or to pay off the Loan in full, please call 866-503-5559.*
**(Continued on back/next page)**



NOTICE OF SUBSTITUTE TRUSTEE'S SALE

STATE OF MISSISSIPPI
COUNTY OF 1ST DISTRICT HARRISON

WHEREAS, default has occurred in the performance of the covenants, terms and conditions of a Deed of Trust dated October 26, 2011, executed by PAUL B CALDARERA conveying certain real property therein described to PREMIER REVERSE CLOSINGS, LA PALMA, as Trustee, for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. AS BENEFICIARY, AS NOMINEE FOR GENERATION MORTGAGE COMPANY, Original Beneficiary, to secure the indebtedness therein described, as same appears of record in the office of the Chancery Clerk of 1st District Harrison County, Mississippi filed and recorded November 14, 2011, at Instrument Number 2011-9971-T-J1; and
WHEREAS, the beneficial interest of said Deed of Trust was transferred and assigned to Bank of New York Mellon Trust Company, N.A. as Trustee for Mortgage Assets Management Series I Trust; and
WHEREAS, Rubin Lublin, LLC has been appointed as Substitute Trustee; and
NOW, THEREFORE, the holder of said Deed of Trust, having requested the undersigned so to do, as Substitute Trustee or his duly appointed agent, by virtue of the power, duty and authority vested and imposed upon said Substitute Trustee shall, on **April 9, 2025** within the lawful hours of sale between 11:00AM and 4:00PM at the front door on the east side of the Courthouse proceed to sell at public outcry to the highest and best bidder for cash or certified funds ONLY, the following described property situated in 1st District Harrison County, Mississippi, to wit:

THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF MISSISSIPPI, COUNTY OF HARRISON, AND IS DESCRIBED AS FOLLOWS: THE FOLLOWING DESCRIBED LAND SITUATED IN THE CITY OF LONG BEACH, HARRISON COUNTY, FIRST JUDICIAL DISTRICT, MISSISSIPPI, TO WIT: LOTS 6, 7, 8, 9 AND 10, BLOCK 1, SEA SHORE SUBDIVISION, A SUBDIVISION ACCORDING TO THE OFFICIAL MAP OR PLAT THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE CHANCERY CLERK OF HARRISON COUNTY, MISSISSIPPI, FIRST JUDICIAL DISTRICT, WITH ALL IMPROVEMENTS THEREON AND APPURTENANCES THEREUNTO BELONGING. PARCEL NUMBER(S): 0512H-02-091-000

PROPERTY ADDRESS: The street address of the property is believed to be **105 S SEASHORE AVE, LONG BEACH, MS 39560**. In the event of any discrepancy between this street address and the legal description of the property, the legal description shall control.

Title to the above described property is believed to be good, but I will convey only such title as is vested in me as Substitute Trustee.

THIS LAW FIRM IS ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Rubin Lublin, LLC
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071
rlselaw.com/property-listing





Rubin Lublin, LLC
P.O. Box 502830
San Diego, CA 92150-2830

IMPORTANT INFORMATION
ENCLOSED

(11) 969 0024 8943 5096 9

**Mailed On:** 02/28/2025          **Order Number:**      0006809-01   FC
**ClientID:**  Ru_Lu000904         **Reference Number:** 24-02805

MS Center for Legal Services Corporation
414 South State Street, Suite 300
P.O. Box 951
Jackson, MS 39205



RECEIVED

MAR 0 4 2025

BY: ......................

# IN THE CHANCERY COURT OF HARRISON COUNTY, MISSISSIPPI
## FIRST JUDICIAL DISTRICT

PAUL B. CALDARERA,
      **Plaintiff,**

v.

PHH MORTGAGE CORPORATION and
BANK OF NEW YORK MELLON TRUST
COMPANY, N.A., AS TRUSTEE FOR
MORTGAGE ASSETS MANAGEMENT SERIES I
TRUST,
      **Defendants.**

**CIVIL ACTION NO.: 25-687 MA**

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION

**COMES NOW**, the Plaintiff, Paul B. Caldarera, by and through undersigned counsel, and files this Complaint for Declaratory Judgment, Temporary Restraining Order (TRO), Preliminary Injunction, and Permanent Injunction against PHH Mortgage Corporation and Bank of New York Mellon Trust Company, N.A., as Trustee for Mortgage Assets Management Series I Trust (collectively, "Defendants"), to prevent the wrongful foreclosure of Plaintiff's property and seek clarification of the rights and obligations under the mortgage agreement

### I. PARTIES AND JURISDICTION

1. Plaintiff, PAUL B. CALDARERA, is an adult resident citizen of Harrison County, Mississippi, residing at 105 South Seashore Avenue, Long Beach, Mississippi 39560.

2. Defendant, PHH MORTGAGE CORPORATION, is a mortgage servicing company authorized to do business in the State of Mississippi and may be served with process

1

CORPORATION SERVICE COMPANY, 109 Executive Drive, Suite 3, Madison, MS 39110.

3. Defendant, BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AS TRUSTEE FOR MORTGAGE ASSETS MANAGEMENT SERIES I TRUST, is a financial institution and may be served with process at 240 Greenwich Street, New York, New York 10286.

4. This Court has jurisdiction pursuant to Miss. Code Ann. § 9-5-81 and venue is proper in Harrison County, Mississippi, where the subject property is located.

## II. FACTS

5. On October 26, 2011, Plaintiff obtained a reverse mortgage from Generation Mortgage Company, secured by a Deed of Trust on his property located at 105 South Seashore Avenue, Long Beach, Mississippi 39560. The Reverse Mortgage Loan Agreement and the Deed of Trust are attached as Exhibits "A" and "B" respectively.

6. Paragraph 3 of the Deed of Trust is entitled "Fire, Flood and Other Hazard Insurance." It requires the borrower to insurance the property against "hazards, casualties, and contingencies, including fire," as do most all similar deeds of trust. However, absent from that paragraph is any requirement that the borrower maintain wind damage insurance, notwithstanding that wind damage insurance was available at the time of the origination of this mortgage. In fact, nowhere in the document is there a single mention of the word "wind," nor is there any express provision that would require the borrow to secure wind damage insurance. Since wind damage is a significant and material issue to be considered

2

for property located on the Gulf Coast, it becomes evident that the parties did not intend to require such coverage.

7. Section 15 of the Deed of Trust provides in part:

   ***The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender.***

8. At the time of loan origination, Plaintiff was not required to obtain wind damage insurance, nor was he asked to secure such insurance coverage. Frankly, he most likely would not have entered into the reverse mortgage agreement in the first place, had such a requirement existed due to financial constraints, being his inability to afford such insurance coverage from the very beginning of the reverse mortgage.

9. Generation Mortgage Company was certainly aware of this situation since it required financial statements from the borrow as a condition to making the loan.

10. On September 21, 2021, the Deed of Trust was assigned From Generation Mortgage Company to Mortgage Assets Management, LLC. Exhibit "C."

11. At some point in time subsequent to the assignment of the Deed of Trust, the servicing responsibility was transferred to PHH MORTGAGE CORPORATION.

12. On June 29, 2023, Mr. Calderara received a letter dated June 20, 2023 from PHH's insurance department, advising that his wind insurance had "expired," that it is required, and that PHH will purchase force-placed wind insurance coverage if Mr. Calderara did not himself secure such coverage. PHH also demanded that the coverage should be effect as of June 19, 2022.

13. On July 29, 2023, Mr. Calderara received a letter dated July 20, 2023 from PHH advising again that the wind damage insurance had "expired," and that it intends to purchase such

3

coverage for $1,213.00. Mr. Calderara called PHH and objected to the proposed action by PHH.

14. In response to Mr. Calderara's objection, PHH sent a letter dated August 17, 2023 advising that it had completed its investigation of the wind damage insurance issue, stating that wind insurance coverage is required on all loans.

15. On April 16, 2024, Plaintiff received an unsigned letter from PHH, dated April 11, 2024, regarding the wind insurance requirement. In this letter, PHH stated that the determination of insurance was a state requirement, and that Plaintiff must obtain the appropriate coverage as mandated by the state. This claim is unsupported by both the original deed of trust and the mortgage agreement, as no such provision explicitly requires wind insurance. That is simply false and a fraudulent misrepresentation of the insurance laws of Mississippi designed to force Mr. Calderara to purchase insurance that he was not required to purchase. Exhibit "D."

16. PHH further implied that the wind damage insurance may be required by the Secretary of Housing and Urban Development. That is likewise untrue and a fraudulent misrepresentation to Mr. Calderara, asserted to induce him to bear a risk of exposure, and to incur a substantial expense that he simply cannot afford to incur and should not be forced to incur.

17. On May 20, 2024, the Deed of Trust was subsequently assigned to BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AS TRUSTEE FOR MORTGAGE ASSETS MANAGEMENT SERIES I TRUST. See Exhibit "E."

18. On July 22, 2024, Mr. Calderara received a *Notice of Acceleration and Foreclosure* dated July 18, 2024 from Rubin Lublin, LLC, attorneys for Generation Mortgage Company. The letter advised that a foreclosure sale had been set for August 28, 2024.

19. After being engaged as Mr. Calderara's attorneys, our Corporation sent on August 20, 2024, a "Cease and Desist Demand" and a separate RESPA "notice of error/request for information" to PHH Mortgage and Rubin Lublin, LLC, attached as Exhibits "F" and "G," respectively.

20. On August 23, 2024, Michael Baringer, Esq., Senior Foreclosure Attorney with Rubin Lublin LLC, attorneys for defendants, sent an email to our Corporation advising that the foreclosure sale is cancelled. Exhibit "H."

21. On March 4, 2025, our Corporation received by certified mail from Rubin Lublin, LLC, dated February 28, 2025, a second *Notice of Acceleration and Foreclosure*, with respect to Mr. Calderara' mortgage. Exhibit "I."

22. On March 5, 2025, our Corporation sent, via certified mail and email, a second Qualified Written Request, including a Notice of Error and Request for Information with respect to the force-placed wind damage insurance purchased by PHH. Exhibit "J." PHH sent a confirmation of receipt of the request via email, attached as Exhibit "K."

23. Plaintiff contends that the Defendants' actions constitute a breach of the mortgage loan agreement, violations of the Real Estate Settlement Procedures Act (RESPA) and Mississippi Code Section 81-18-55, that such actions are unconscionable, and contrary to numerous tenets of Mississippi law, including the duty of good faith and fair dealing.

5

### III. CAUSES OF ACTION

## COUNT ONE: DECLARATORY JUDGMENT

11. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

12. Plaintiff seeks a declaratory judgment that Defendants have no right to require wind insurance under the original mortgage agreement, that even if there might be implied such a requirement, such requirement was knowingly and voluntarily waived, and that Defendants' attempt to impose such a requirement is invalid and contrary to law.

## COUNT TWO: TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF

13. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

14. Plaintiff will suffer immediate and irreparable harm if the foreclosure scheduled for April 9, 2025, is allowed to proceed.

15. Plaintiff has a substantial likelihood of success on the merits, as Defendants are attempting to impose a new obligation that was never part of the original agreement or has been was knowingly and voluntarily waived.

16. Plaintiff has no adequate remedy at law, and the balance of equities favors preventing foreclosure pending resolution of this matter.

## COUNT THREE: BREACH OF CONTRACT AND UNCONSCIONABILITY

17. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

18. The Defendants' actions in requiring wind insurance constitute a material and unilateral modification of the original reverse mortgage agreement. Such modification was never agreed upon by Plaintiff, and enforcing this term after more than a decade of non-enforcement is not only unconscionable but also represents a violation of Plaintiff's reasonable expectations under the original contract.

19. Plaintiff seeks a permanent injunction to prohibit defendants from requiring wind damage insurance on the property.

20. Plaintiff seeks damages, including actual damages, attorneys' fees, and statutory penalties as permitted under Mississippi law.

## COUNT FOUR: VIOLATION OF MISSISSIPPI CODE § 81-18-55

20. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

21. Defendants have imposed fees and costs that are not authorized by the original contract, in violation of the Mississippi S.A.F.E. Act, specifically, Mississippi Code § 81-18-55.

22. Plaintiff seeks damages, including actual damages, attorneys' fees, and statutory penalties as permitted under Mississippi law.

## COUNT FIVE: VIOLATION OF RESPA (12 U.S.C. § 2605, 12 C.F.R. § 1024.37)

23. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

24. Defendants improperly imposed force-placed wind insurance without compliance with RESPA's notice requirements, are contrary to state contract law and are in violation of RESPA.

25. Defendants' failure to properly respond to Plaintiff's Notice of Error and Request for Information violated RESPA, causing Plaintiff to incur significant harm, including unnecessary costs and delay. Defendants' failure to address the error compounded Plaintiff's financial and emotional distress, and Plaintiff seeks statutory damages as well as actual, consequential, and compensatory damages for these violations.

26. Plaintiff seeks statutory damages pursuant to RESPA, actual, consequential and compensatory damages, attorney's fees, and costs, and granting any other relief this Court deems just and proper.

## COUNT SIX: VIOLATION OF TILA (15 U.S.C. § 1639g)

26. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

27. Defendants included unauthorized charges for wind insurance in Plaintiff's payoff statement, violating TILA's disclosure requirements.

28. Plaintiff seeks statutory damages pursuant to TILA, actual, consequential and compensatory damages, attorney's fees, and costs, and granting any other relief this Court deems just and proper.

## COUNT SEVEN: VIOLATION OF FDCPA (15 U.S.C. § 1692e, 1692f)

28. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

29. Defendants made false representations regarding the necessity of wind insurance, since enforcement of such provisions have been waived, and engaged in unfair debt collection practices, in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692e and § 1692.

30. Defendants' actions in sending misleading letters regarding the necessity of wind insurance and their false representation of the contractual obligations under the mortgage agreement constitute violations of the **Fair Debt Collection Practices Act (FDCPA)**, specifically 15 U.S.C. § 1692e and § 1692f, which prohibit false representations and unfair practices in debt collection.

31. Plaintiff seeks statutory damages pursuant to FDCPA, actual, consequential and compensatory damages, attorney's fees, and costs, and granting any other relief this Court deems just and proper.

## COUNT EIGHT: VIOLATION OF UDAAP (12 U.S.C. § 5531)

30. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.

8

31. Defendants engaged in deceptive mortgage servicing practices by misrepresenting Mississippi law and contract terms regarding wind insurance, contrary to 12 U.S.C. § 5531, the Unfair, Deceptive, or Abusive Acts or Practices Act.

32. Plaintiff seeks statutory damages pursuant to UDAAP, actual, consequential and compensatory damages, attorney's fees, and costs, and granting any other relief this Court deems just and proper.

## IV. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court:

A. Issue a Temporary Restraining Order Enjoining Defendants from proceeding with the foreclosure sale of Plaintiff's property pending further order of the Court;

B. Enter a Preliminary and Permanent Injunction prohibiting Defendants from enforcing the wind insurance requirement and foreclosing on Plaintiff's property;

C. Declare that Defendants' actions in imposing wind insurance are unenforceable and a violation of the original mortgage agreement;

D. Award Plaintiff statutory penalties, actual damages, consequential and compensatory damages, attorneys' fees, and costs as permitted under RESPA, TILA, FDCPA, and all other applicable federal and state laws;

E. Grant such other and further relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED**, this _13th_ day of ~~March~~ May 2025.

BY: _____

**James B. Wright – Managing Attorney at Mississippi Center for Legal Services**

**James B. Wright, MSB# 8791**
Mississippi Center for Legal Services Corp.
520 East Pass Rd., Suite J
Gulfport, MS 39507
PH: 228-896-9148 Ext. 2559
Fax: 228-896-9345
jwright@mslegalservices.org

**W. David Watkins**
(MSB # 6986)
Foreclosure Defense Staff Attorney
Post Office Box 951
Jackson, MS 39205-0951
(601) 427-3650
wwatkins@mslegalservices.org

10

# EXHIBIT 2

IN THE CHANCERY COURT OF HARRISON COUNTY, MISSISSIPPI
FIRST JUDICIAL DISTRICT

PAUL B. CALDARERA,
      Plaintiff,

v.

PHH MORTGAGE SERVICES and
BANK OF NEW YORK MELLON TRUST
COMPANY, N.A., AS TRUSTEE FOR
MORTGAGE ASSETS MANAGEMENT
SERIES I TRUST,
      Defendants.

CIVIL ACTION NO.: __25-687 MA__

### RULE 4 (30 DAYS) SUMMONS

TO:    BANK OF NE YORK MELLON TRUST CO, N.A., AS
        TRUSTEE FOR MORTGAGE ASSETS MANAGEMENT SERIES I TRUST
        240 GREENWICH STREET
        NEW YORK, NEW YORK 10286

**NOTICE TO DEFENDANT THE COMPLAINT OR PETITION, WHICH IS ATTACHED TO
THIS SUMMONS, IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO
PROTECT YOUR RIGHTS.**

You are required to mail, or hand deliver a copy of written response for this Petition or
Complaint to the Honorable James B. Wright the attorney for the Plaintiff, whose address
is 520 East Pass Rd., Suite J, Gulfport, MS 39507

Your response must be mailed or delivered no later than (30) days from the date of delivery
of this summons. If your response is not mailed or delivered, a judgment by default will
be entered against you for the relief demanded in this complaint. You must also file the
original of your response with the Clerk of this Court within a reasonable time afterward.

Issued under my hand and the seal of said Court, this 8M day of TWML , 2025

BY: _____, D.C.
**ANGELA THRASH, CHANCERY CLERK
HARRISON COUNTY, MISSISSIPPI
POST OFFICE DRAWER CC
GULFPORT, MS 39502**

Prepared by:

James B. Wright, MS Bar # 8791
Attorney for Plaintiff
Mississippi Center for Legal Services Corp.
520 East Pass Rd., Suite J
Gulfport, MS 39507
Tel:   228-896-9148
Fax:  228-896-9345
jwright@mslegalservices.org

## IN THE CHANCERY COURT OF HARRISON COUNTY, MISSISSIPPI
### FIRST JUDICIAL DISTRICT

PAUL B. CALDARERA,
     Plaintiff,

v.

PHH MORTGAGE CORPORATION
and BANK OF NEW YORK MELLON
TRUST COMPANY, N.A., AS TRUSTEE
FOR MORTGAGE ASSETS
MANAGEMENT SERIES I TRUST,
     Defendants.

CIVIL ACTION NO.: **25-687 MA**

### RULE 81 SUMMONS

TO:    BANK OF NE YORK MELLON TRUST CO, N.A., AS
       TRUSTEE FOR MORTGAGE ASSETS MANAGEMENT SERIES I TRUST
       240 GREENWICH STREET
       NEW YORK, NEW YORK 10286

       You have been made a Defendant in the attached above referenced suit filed in this Court by **Paul B. Caldarera**, Plaintiff.

       You are summoned to appear and defend against the complaint or petition filed against you in this action at **9:00 a.m.**, on the **22nd day of May 2025** before the Honorable Judge Alfonso in the courtroom of the **Harrison County Chancery Courthouse in Gulfport, Mississippi**, located at 1801 23rd Ave., and in case of your failure to appear and defend a judgment will be entered against you for the money or other things demanded in the complaint or petition.

       You are not required to file an answer or other pleading, but you may do so if you desire.

       Issued under my hand and the seal of said Court, this the 13th day of May, 2025.

                ANGELA THRASH, CHANCERY CLERK
                HARRISON COUNTY, MISSISSIPPI
                PO BOX CC
                GULFPORT, MS 39502

       By _____

Prepared by:

James B. Wright, MSB# 8791
Attorney for Paul B. Caldarera
Mississippi Center for Legal Services Corp.
520 East Pass Rd., Suite J
Gulfport, MS 39507
T:  228-896-9148 Ext. 2559
F:  228-896-9345
Jwright@mslegalservices.org

JS 44 (Rev. 04/21)

Case 1:25-cv-00143-HSO-BWR   Document 1-1   Filed 05/20/25   Page 1 of 1
Case 2:24-cv-00687-MA   Document 1-2   Filed 05/20/25   page 86 of 86
1:25cv145 HSO-BWR
1:25cv145 HSO-BWR

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Paul B. Caldarera

### DEFENDANTS

PHH Mortgage Services and Bank of New York Mellon Trust Company, N.A., as Trustee, et al.

**(b)** County of Residence of First Listed Plaintiff   Harrison
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

James B Wright, Jr., MS Ctr for Legal Services Corp, 520 E Pass Rd, Ste J, Gulfport, MS 39507 (228-896-9148)

Attorneys *(If Known)*

John T. Rouse, McGlichey Stafford, 1020 Highland Colony Pkwy, Ste 406, Ridgeland, MS 39157 (769-524-2329)

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 840 Trademark | [ ] 460 Deportation |
| | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [x] 190 Other Contract | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [x] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:
Claims surrounding mortgage servicing and foreclosure

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   [ ] Yes   [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE   5/20/25

SIGNATURE OF ATTORNEY OF RECORD   /s/ John T. Rouse

**FOR OFFICE USE ONLY**

RECEIPT #  5691132   AMOUNT  $405.00   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____